# No. 24-50034

_____

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

**UNITED STATES OF AMERICA,**
**Plaintiff–Appellee,**

**v.**

**ASIA VICTOR TSATENAWA,**
**Defendant–Appellant.**

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION,
DISTRICT COURT NO. 5:21-CR-00073-1

_____

## APPELLANT'S *ANDERS* BRIEF & APPOINTED APPELLATE
## COUNSEL'S MOTION TO WITHDRAW

_____

Kimberly S. Keller
KELLER STOLARCZYK, PLLC
215 W. Bandera Rd.
No.114-800
Boerne, Texas 78006
Tele: 830.981.5000

## **CERTIFICATE OF INTERESTED PERSONS**

UNITED STATES OF AMERICA,
                Plaintiff-Appellee,

v.                                                    No. 24-50034

ASIA VICTOR TSATENAWA,
                Defendant-Appellant.

      The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

      1.  United States of America

| Trial Counsel | Appellate Counsel |
|---|---|
| Brian Nowinski<br>U.S. Attorney's Office<br>601 N.W. Loop 410, Ste. 600<br>San Antonio, TX 78216 | Joseph Gay<br>U.S. Attorney's Office<br>601 N.W. Loop 410, Ste. 600<br>San Antonio, TX 78216 |

      2. Asia Victor Tsatenawa

| Plea Counsel | Sentencing Counsel |
|---|---|
| Michael Gross<br>Federal Public Defender<br>727 E. Cesar E. Chavez Blvd.<br>San Antonio, TX 78206 | John Convery<br>Hasdorff & Convery, P.C.<br>100 NE Loop 410, Ste. 650<br>San Antonio, TX 78216 |

2

<u>Appellate Counsel</u>

Kimberly S. Keller
Keller Stolarczyk PLLC
215 W. Bandera Rd.
No. 114-800
Boerne, Texas 78006

    3. Honorable Jason Pulliam, United States District Judge

***<u>/s/ Kimberly S. Keller</u>***
Kimberly S. Keller

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Counsel for the defendant-appellant has moved to withdraw and has filed this brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). After careful review of the record and the applicable law, it is the good faith belief and professional opinion of counsel that this case presents no nonfrivolous basis for an appeal. Accordingly, oral argument is not requested.

# **TABLE OF CONTENTS**

*Page*

CERTIFICATE OF INTERESTED PERSONS ............................ 2

STATEMENT REGARDING ORAL ARGUMENT...... ................4

TABLE OF CONTENTS ..........................................................5

TABLE OF AUTHORITIES ......................................................8

STATEMENT OF JURISDICTION ..........................................17

STATEMENT OF THE ISSUES............................................. 18

      I.     APPELLANT EXECUTED A BINDING APPEAL WAIVER FORFEITING HIS RIGHT TO PURSUE A DIRECT APPEAL OF HIS CONVICTION AND SENTENCE EXCEPT FOR CERTAIN NARROWLY DEFINED CIRCUMSTANCES THAT DO NOT APPLY.

      II.    EVEN IF THIS COURT WERE TO DISREGARD THE APPEAL WAIVER EXECUTED BY APPELLANT, NO OTHER NONFRIVOLOUS ISSUES EXIST TO PRESENT ON APPEAL CONCERNING THE TAKING OF APPELLANT'S PLEA OR HIS SENTENCING.

STATEMENT OF THE CASE..................................................19

SUMMARY OF THE ARGUMENT .........................................23

ARGUMENT.......................................................................24

I.   APPELLANT EXECUTED A BINDING APPEAL WAIVER FORFEITING HIS RIGHT TO PURSUE A DIRECT APPEAL OF HIS CONVICTION AND SENTENCE EXCEPT FOR CERTAIN NARROWLY DEFINED CIRCUMSTANCES THAT DO NOT APPLY ...............................24

A.      Appellant Executed a Broad Waiver of His Appeal and Other Post-Conviction Rights ............................... 26

B.      The Appeal Waiver Executed by Appellant Appears Valid and Enforceable .......................................... 28

      1.     Appellant knowingly & voluntarily waived his appeal rights .............................................. 31

      2.     The exceptions to Appellant's appeal waiver do not apply .................................................... 36

II.    Even if This Court Were to Disregard the Appeal Waiver Executed by Appellant, No Other Nonfrivolous Issues Exist to Present on Appeal Concerning the Taking of Appellant's Plea or His Sentencing ............................. 52

A.      No Nonfrivolous Issues Exist Concerning the Taking of Appellant's Plea.............................................. 52

      1.     Standards applicable to plea hearings .......... 52

      2.     Rule 11 of the Federal Rules of Criminal Procedure .................................................... 53

      3.     The District Court substantially complied with the requirements of Rule 11 at Appellant's rearraignment.............................................. 56

B.      There are no nonfrivolous procedural issues arising from the District Court's sentencing calculations or its imposition of Appellant's sentence.................. 64

      1.     Standards of review applicable to sentencing 64

      2.     There are no non frivolous procedural issues arising from the District Court's sentencing

calculations or its imposition of Appellant's sentence .......................................................... 65

3.    There are no other nonfrivolous challenges to raise on appeal ........................................... 93

CONCLUSION ....................................................................... 93

APPOINTED COUNSEL'S MOTION TO WITHDRAW ............... 94

CERTIFICATE OF SERVICE ................................................ 95

CERTIFICATE OF COMPLIANCE ......................................... 97

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**SUPREME COURT OF THE UNITED STATES**

*Anders v. California,*
  386 U.S. 738 (1967)........................................... 10,23,94

*Blackledge v. Allison,*
  431 U.S. 63 (1977)....................................... 31,32,36,37

*Griffin v. Wisconsin,*
  483 U.S. 868 (1987)...................................................... 85

*United States v. Dominguez Benitez,*
  542 U.S. 74 (2004).............................................. 7,50,58

*United States v. Knights,*
  534 U.S. 112 (2001)...................................................... 86

*United States v. Vonn,*
  535 U.S. 55 (2002)..................................................... 7,51

**CIRCUIT COURTS OF APPEALS**

*United States v. Acquaye,*
  452 F.3d 380 (5th Cir. 2006)........................................ 25

*United States v. Alford,*
  142 F.3d 825 (5th Cir. 1998)........................................ 63

*United States v. Baty,*
  980 F.2d 977 (5th Cir.1992)..................................... 27,32

*United States v. Baymon,*
    312 F.3d 725 (5th Cir. 2002)........................................25

*United States v. Bond,*
    414 F.3d 542 (5th Cir. 2005).............................. 25,27,32

*United States v. Brantley,*
    537 F.3d 347 (5th Cir. 2008).................................. 11,64

*United States v. Burns,*
    433 F.3d at 445 (5th Cir. 2005)...................................25

*United States v. Campos-Maldonado,*
    531 F.3d 337 (5th Cir. 2008)........................................74

*United States v. Cantu,*
    185 F.3d 298 (5th Cir. 1999)........................................28

*United States v. Cantwell,*
    470 F.3d 1087 (5th Cir. 2006).................................. 9,48

*United States v. Cooks,*
    589 F.3d 173 (5th Cir. 2009)................................... 9,81

*United States v. Cudjoe,*
    634 F.3d 1163 (10th Cir. 2011)...................................82

*United States v. Cuellar,*
    339 Fed.Appx. 407 (5th Cir. 2009) ....................... 9,59,79

*United States v. Dayton,*
    604 F.2d 931 (5th Cir. 1979)........................... 9,50,53,61

*United States v. Esparza-Gonzalez,*
    268 F.3d 272 (5th Cir. 2001)...................................76,77

*United States v. Garcia,*
    483 F.3d 289 (5th Cir. 2007)...................................21,48

*United States v. Garcia-Palacios,*
364 Fed. Appx. 125 (5th Cir. 2010) ............................... 78

*United States v. Gianni,*
486 Fed. Appx. 459 (5th Cir. 2012) ............................... 85

*United States v. Gibson,*
55 F.3d 173 (5th Cir. 1995) ........................................ 48

*United States v. Gray,*
581 F.3d 749 (5th Cir. 2009) ....................................... 59

*United States v. Hidrobo,*
467 Fed. Appx. 286 (5th Cir. 2012) ............................... 78

*United States v. Higdon,*
832 F.2d 312 (5th Cir. 1987) ....................................... 47

*United States v. Johnson,*
1 F.3d 296 (5th Cir. 1993) .......................................... 60

*United States v. Johnson,*
351 Fed. Appx. 948 (5th Cir. 2009) ............................... 77

*United States v. LeBlanc,*
490 F.3d 361 (5th Cir. 2007) ....................................... 85

*United States v. Mason,*
480 Fed.Appx. 329 (5th Cir. 2012) ............................... 45

*United States v. McKinney,*
53 F.3d 664 (5th Cir. 1995) ................................... *passim*

*United States v. Mondragon-Santiago,*
564 F.3d 357 (5th Cir. 2009) ....................................... 74

*United States v. Myers,*
150 F.3d 459 (5th Cir. 1998) ....................................... 61

*United States v. Outlaw,*
        319 F.3d 701 (5th Cir. 2003)...................................... 34,60

*United States v. Peltier,*
        505 F.3d 389 (5th Cir. 2007)........................................ 80

*United States v. Rodriguez,*
        711 F.3d 541 (5th Cir. 2013)..................................... 43,80

*United States v. Ronquillo,*
        508 F.3d 744 (5th Cir. 2007)........................................ 62

*United States v. Sanders,*
        942 F.2d 894 (5th Cir. 1991)..................................... 64,66

*United States v. Scott,*
        987 F.2d 261 (5th Cir. 1993)........................................ 49

*United States v. Smith,*
        978 F.2d 171 (5th Cir. 1992)........................................ 34

*United States v. Trejo,*
        610 F.3d 308 (5th Cir. 2010)........................................ 50

*United States v. Vasquez,*
        298 F.3d 354 (5th Cir. 2002)........................................ 43

*United States v. Vega,*
        332 F.3d 849 (5th Cir. 2003)........................................ 87

*United States v. Vera,*
        436 Fed. Appx. 351 (5th Cir. 2011) ......................... 35,57

*United States v. Washington,*
        480 F.3d 309 (5th Cir. 2007)........................................ 29

*United States v. Wheaten,*
        465 Fed. Appx. 321 (5th Cir. 2012) ......................... 27,32

*United States v. Victoria,*
    877 F.2d 338, 340 (5th Cir.1989)................................. 76

*United States v. Walters,*
    418 F.3d 461 (5th Cir. 2005)........................................ 62

*United States v. Williams,*
    880 F.3d 713 (5th Cir. 2018)........................................ 84

## RULES & SECONDARY AUTHORITY

18 U.S.C. § 924 ...................................................... 16,81,82

18 U.S.C. § 3013 ................................................................ 89

18 U.S.C. § 3553 ......................................................... *passim*

18 U.S.C. § 3583 ......................................................... 83,88

18 U.S.C. § 3559 ................................................................ 83

18 U.S.C. § 3742 ................................................................ 14

21 U.S.C. § 841 ........................................................... *passim*

28 U.S.C. § 1291 ................................................................ 14

FED. R. APP. P. 4 ................................................................ 14

FED. R. CRIM. P. 11 ....................................................... *passim*

FED. R. CRIM. P. 32 ....................................................... *passim*

U.S.S.G. § 2D1.1 ......................................................... *passim*

U.S.S.G. § 3E1.1....................................................... 18,63,68

U.S.S.G. § 4A1.1 ................................................... 88,89,70,71

U.S.S.G. § 5D1.2 ....................................................... 83,86,88

U.S.S.G. Ch. 5, Pt. A....................................................... 18,71

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is sought to be invoked under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), as an appeal from a final judgment of conviction and sentence in the United States District Court for the Western District of Texas (San Antonio Division) entered by the District Court on January 19, 2024.[1] Notice of appeal was timely filed in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure. *See* ROA.316. (showing defendant's notice of appeal prematurely filed on January 17, 2024); *see also* FED. R. APP. P. 4(b)(2) ("A notice of appeal filed after the court announces a decision, sentence, or order —but before the entry of the judgment or order — is treated as filed on the date of and after the entry."); FED. R. APP. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal.").

---

[1]ROA.324. The record is cited as follows: "ROA.[page #]."

14

## STATEMENT OF THE ISSUES

I.   APPELLANT EXECUTED A BINDING APPEAL WAIVER FORFEITING HIS RIGHT TO PURSUE A DIRECT APPEAL OF HIS CONVICTION AND SENTENCE EXCEPT FOR CERTAIN NARROWLY DEFINED CIRCUMSTANCES THAT DO NOT APPLY.

II.  EVEN IF THIS COURT WERE TO DISREGARD THE APPEAL WAIVER EXECUTED BY APPELLANT, NO OTHER NONFRIVOLOUS ISSUES EXIST TO PRESENT ON APPEAL CONCERNING THE TAKING OF APPELLANT'S PLEA OR HIS SENTENCING.

## **STATEMENT OF THE CASE**

### *Appellant is Charged with Cocaine & Firearm Offenses*

On February 3, 2021, a multiple count Indictment was filed against the defendant-appellant Asia Victor Tsatenawa in the Western District of Texas (San Antonio Division). ROA.512. The Indictment charged Tsatenawa with: (a) possessing with the intent to distribute a controlled substance, which involved a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Two); and (b) possession of a firearm in furtherance of a drug trafficking offense in violation of  18 U.S.C. § 924(c). ROA.512. Based on Tsatenawa's involvement in the offense conduct, the Court appointed counsel to defend Tsatenawa against the charged offenses. ROA.130.

### *Appellant Pleads Guilty Pursuant to a Plea Agreement*

Tsatenawa's pre-trial motions to suppress the evidence seized from his apartment and an abandoned vehicle purportedly linked to him were denied by the District Court. ROA.207. Before any trial proceedings began, Tsatenawa then

notified the Court of his intent to enter a guilty plea to both counts of the Indictment pursuant to a plea bargain agreement with the Government. ROA.500. Tsatenawa's case thereafter came before the Honorable Jason Pulliam, United States District Judge for the Western District of Texas, for a plea hearing on August 30, 2023. ROA.430. Tsatenawa proceeded to enter guilty pleas to Counts Two and Five as charged in the Indictment. ROA.444. Based on Tsatenawa's in-court affirmations, the District Court accepted Tsatenawa's pleas of guilty and adjudged him guilty as to Counts Two and Five. ROA.450.

### *The District Court Enters Guideline Sentences for Appellant's Crimes*

The Probation Office subsequently prepared a Presentence Investigation Report ("PSR") for purposes of Tsatenawa's sentencing. ROA.510. The PSR prepared by the Probation Office calculated Tsatenawa's total offense level at 23 and identified Tsatenawa's criminal history category as V. ROA.542. It established Tsatenawa's base offense level at 24 pursuant to United States Sentencing Guidelines § 2D1.1(c)(8) for an offense

involving at least 100 kilograms but less than 400 kilograms of converted drug weight. ROA.515. The PSR then applied: (a) a 2-level upward adjustment for maintaining a premise for purposes of distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12); and (b) 3-level downward adjustment for Tsatenawa's full acceptance of responsibility pursuant to § 3E1.1. ROA.515-16. The PSR assigned Tsatenawa twelve criminal history points based upon his extensive prior criminal history. ROA.521. With a total offense level of 23 and a criminal history level V, the initial Guidelines range of imprisonment recommended for Tsatenawa's offenses was as follows: (a) Count Two: 84 to 105-months imprisonment; and (b) Count Five: 60-months imprisonment. ROA.530.; U.S.S.G. Ch. 5, Pt. A, Sentencing Table.

At the sentencing hearing, the District Court sentenced Tsatenawa to a 96-month term of imprisonment for his drug offense conduct (Count Two) and 60-months for his firearm offense (Count Five), sentences to run consecutively. ROA.476-77. The Court advised:

> the Court has considered the guidelines in an advisory capacity and pursuant to the Sentencing Reform Act, the policy statements including grounds for departure, United States versus Booker, and Gall versus United States, and reviewing the 18 U.S.C. Section 3553(a)factors, has considered the guidelines as an initial bench mark and frame of reference and finds that the guideline is appropriate and sentences the defendant to the custody of BOP to a term of 96 months on count two, and 60 months on count five to run consecutively for a total of 156 months of imprisonment.

ROA.476-77.

The Court further ordered Tsatenawa's term of imprisonment to be followed by concurrent 3-year and 5-year terms of supervised release. ROA.477. As for Tsatenawa's supervised release terms, the District Court stated on the record that Tsatenawa is to comply with the standard and mandatory conditions of release as set forth by the Western District of Texas. ROA.478. It also stated that Tsatenawa is to submit to the three special conditions of supervised release set forth in the PSR. ROA.478-79. Although the District Court ordered Tsatenawa to pay a $100 special assessment as part of his

punishment for each count, *i.e.*, a $200 total special assessment, it ordered no fines or restitution against Tsatenawa. ROA.477. Tsatenawa did not lodge any objections to the District Court's imposition of sentence, ROA.482-83., and he later perfected his appeal to this Honorable Court.

## **SUMMARY OF THE ARGUMENT**

Counsel has read the indictment, evaluated the sufficiency of the evidence, reviewed the adequacy of the plea and sentencing proceedings, and examined the record for any arguable violations of the United States Constitution, federal statutes, and rules of criminal procedure. Having carefully examined the facts and authority pertinent to this case, counsel concludes that this appeal presents no legally nonfrivolous questions. This brief is therefore submitted in accordance with *Anders v. California*, 386 U.S. 738 (1967), and the undersigned respectfully requests permission to withdraw as appointed counsel.

# ARGUMENT

**I.  APPELLANT EXECUTED A BINDING APPEAL WAIVER FORFEITING HIS RIGHT TO PURSUE A DIRECT APPEAL OF HIS CONVICTION AND SENTENCE EXCEPT FOR CERTAIN NARROWLY DEFINED CIRCUMSTANCES THAT DO NOT APPLY.**

As a preliminary matter, the undersigned notes that the defendant filed a notice of appeal showing that he desired to challenge the denial of his motion to suppress. ROA.316.

> NOTICE OF APPEAL
>
> COMES NOW ASIA TSATENAWA, Defendant in the above styled numbered cause, and pursuant to Rules 4 & 11(a)(2) FRAP gives his written Notice of Appeal to the United States Court of Appeals for the Fifth Circuit. Pursuant to his Plea Agreement, Defendant desires to appeal his final judgment for the purpose of obtaining appellate court review of the Court's Order (Dkt. No. 74) denying his Motion to Suppress. Defendant is indigent, and requests qualified counsel be appointed to represent him for the appeal.

Given the defendant's consent to the filing of a document evincing a desire to not challenge his guilty plea or his sentencing proceeding in any way, it appears that the defendant has waived his right to challenge any aspect of his conviction or sentence other than the denial of his motion to suppress. *See, e.g., United States v. Garcia*, 483 F.3d 289, 290-92 (5th Cir. 2007) (indicating appellate counsel may pretermit consideration of a defendant's guilty plea proceeding where there is some confirmation in the record of the defendant's request to appeal

only his sentence).

Nevertheless, the undersigned has fully analyzed Tsatenawa's guilty plea and sentencing proceedings and determined that no non-frivolous issues exist to present on appeal as to these matters. The undersigned counsel believes there are no nonfrivolous issues to present as to Tsatenawa's conviction or plea because the record demonstrates: (a) the District Court substantially complied with the dictates of Rule 11 at the defendant's rearraignment hearing; (b) the defendant's guilty plea was made knowingly and voluntarily; and (c) the defendant's guilty plea is supported by an independent basis in fact. Besides there being no nonfrivolous issues to present on appeal regarding the taking of Tsatenawa's plea, the undersigned believes there are no nonfrivolous issues to present as to his sentencing as well. As for the denial of Tsatenawa's motion to suppress, the undersigned finds no reversible error on this record.

## A.  Appellant Executed a Broad Waiver of His Appeal and Other Post-Conviction Rights

Tsatenawa entered into a Plea Agreement wherein he agreed to a broad and unequivocal waiver of his appeal and collateral relief rights. ROA.504-05. Tsatenawa's agreement indicates he agreed to waive his right to appeal both his conviction and sentence except in certain narrowly defined circumstances that include: (a) a determination of his pretrial motion to suppress; (b) a claim of prosecutorial misconduct; and (c) a claim of ineffective assistance of counsel. ROA.500, 504-05.; *see also* ROA.503-04. Tsatenawa's Plea Agreement specifically states:

> Defendant reserves the right to appeal from the judgment solely for the purposes of obtaining appellate review of the Court's August 24, 2022 and August 1, 2023 order . . . denying his Motion to Suppress. . . .

ROA.500. It further states:

**Defendant's Waiver of Right to Appeal or Challenge Sentence:**

In exchange for the concessions made by the United States in this agreement, Defendant voluntarily and knowingly waives the right to appeal the conviction or sentence on any ground, including any challenge to the constitutionality of the statute of conviction; any claim that Defendant's conduct did not fall within the scope of the statute of conviction; any challenges to the determination of any period of confinement, monetary penalty or obligation, restitution order or amount, term of supervision and conditions; and any other claim based on rights conferred by 18 U.S.C. § 3742 or 28 U.S.C. § 1291.

Defendant, knowing that the sentence has not yet been determined by the Court, waives the right to challenge the sentence imposed, including restitution. Defendant cannot challenge the sentence imposed by the District Court even if it differs substantially from any sentencing range estimated by Defendant's attorney, the attorney for the Government, or the Probation Officer.

Defendant also voluntarily and knowingly waives any right to contest the conviction or sentence (or the manner in which the sentence was determined) in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or any other provision of law. Consistent with principles of professional responsibility imposed on Defendant's counsel and counsel for the Government, nothing in this agreement precludes Defendant from raising a claim of ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension in an appropriate forum.

ROA.504-05. The undersigned has conferred with the Government about the enforcement of Tsatenawa's appeal waiver, and counsel was advised that the Government intends to enforce the appeal waiver in this case. *See United States v.*

*Acquaye*, 452 F.3d 380, 382 (5th Cir. 2006) ("It is defense counsel's obligation to ascertain and certify that the Government would rely upon the defendant's appellate waiver before moving to withdraw.").

## B.    The Appeal Waiver Executed by Appellant Appears Valid and Enforceable

The right to appeal a conviction and sentence is a statutory right — not a constitutional one — and a defendant may waive it as part of a plea agreement. *United States v. Burns*, 433 F.3d at 445 (5th Cir. 2005); *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002) (citing *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997)). This Court conducts a two-step inquiry to determine whether an appeal waiver provision in a plea agreement bars an appeal. *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).

The first step in determining whether an appeal waiver provision bars an appeal requires the Court to determine whether the appeal waiver was knowingly and voluntarily entered by the defendant. *Id.*; *see United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994) ("To be valid, a defendant's waiver

of his right to appeal must be informed and voluntary."). "For a waiver of appeal to be knowing and voluntary, a defendant must know that he had a right to appeal his sentence, that he was giving up that right, and the consequences of giving it up." *United States v. Higgins*, 739 F.3d 733, 736 (5th Cir. 2014); *see Portillo*, 18 F.3d at 292. This Court has explained that it will "enforce a waiver on appeal regardless of whether the district court addressed it directly where the record indicates the defendant has read and understood his plea agreement and has

raised no questions about the waiver."[2]

If the appeal waiver was knowingly and voluntarily entered by the defendant, this Court then proceeds to the second step of its inquiry to determine whether the appeal waiver provision bars the defendant's appeal. At this stage of the inquiry, the Court must determine whether the appeal waiver applies to the circumstances at hand based on the plain language of the agreement. *United States v. Bond*, 414 F.3d 542, 544 (5th Cir.

---

[2] *Higgins*, 739 F.3d at 736-37; *see United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) ("Because McKinney indicated that he had read and understood the plea agreement, which includes an explicit, unambiguous waiver of appeal, the waiver was both knowing and voluntary."); *Bond*, 414 F.3d at 544 ("Because [the defendant] indicated that he read and understood the agreement, which includes an explicit, unambiguous waiver of appeal, the waiver was both knowing and voluntary."); *Portillo*, 18 F.3d at 292–93 ("We hold [ ] that when the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal."); *United States v. Wheaten*, 465 Fed.Appx. 321, 323 (5th Cir.) (per curiam) (not designated for publication) ("Wheaten's response . . . indicates that he had read the plea agreement. At no time did Wheaten indicate . . . that he did not understand any of the terms set forth in the agreement. Moreover, Wheaten signed the agreement in which he attested that he had read it and understood its terms."); *cf. United States v. Baty*, 980 F.2d 977, 978–79 (5th Cir.1992) (holding that inadequate explanation of waiver-of-appeal provision specifically questioned by defendant rendered the waiver invalid); *United States v. Robinson*, 187 F.3d 516, 518 (5th Cir.1999) ("It is clear from the plea colloquy that the district court did not ask Robinson whether he had read the written plea agreement and understood it.").

2005). This Court applies normal principles of contract law in order to interpret the terms of the plea agreement. *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *United States v. Cantu*, 185 F.3d 298, 304 (5th Cir. 1999).

Importantly, in the plea context, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see United States v. Long*, 722 F.3d 257, 264 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1514 (2014). For example, a defendant's "statements that his plea was knowing and voluntary and that he understood the rights he was waiving create a presumption that in fact the plea is valid." *United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74; *United States v. Oliver*, 630 F.3d 397, 414 (5th Cir. 2011).

### 1. <u>Appellant knowingly & voluntarily waived his appeal rights</u>

Tsatenawa's waiver of his right to appeal his conviction

and sentence as set forth in the Plea Agreement appears to be a knowing and voluntary act because Tsatenawa was sufficiently informed of his rights and consciously chose to waive those rights below. ROA.442-43. (showing the defendant acknowledged on the record that he is "generally giving up your right to appeal and contest the sentence" except for retaining the right to appeal the "order denying his motion to suppress"); *see also* ROA.448-50. (showing the defendant confirmed with defense counsel and the Court on the record that the language he underlined on pages 5 and 6 of his Plea Agreement expressly bars him from appealing all matters except for the Court's "ruling with regard to the motion to suppress" as well as two other enumerated exceptions regarding ineffective assistance of counsel and prosecutorial misconduct).[3]

Tsatenawa's solemn declarations in open court carry a strong presumption of verity, *see Blackledge*, 431 U.S. at 74,

---

[3] The Plea Agreement contains the defendant's initials along with ink marks underlining the language for which the defendant asked for clarification. ROA.504-05. This underlined language expressly states that the defendant is knowingly and voluntarily waiving his right to appeal his conviction and sentence on any ground. ROA.504-05.

and they sufficiently demonstrate Tsatenawa knew about his appellate rights and that he knowingly forfeited these rights (except for the enumerated exception set forth in the Plea Agreement) by entering into the plea bargain arrangement with the Government. *See United States v. Salas-Avalos*, 459 Fed. Appx. 318, 321 (5th Cir. 2012) (rejecting defendant's claim that that the appeal waiver is unconscionable as applied to him because waivers of the statutory right to appeal, in contracts that largely mirror those by Tsatenawa, are routinely permitted by this Court); *see also United States v. Cruz-Romero*, 848 F.3d 399, 402 (5th Cir. 2017) (indicating conclusory challenges to an appeal waiver are insufficient to undermine the enforceability of an appeal waiver).

Besides Tsatenawa's in-court affirmations about his voluntary waiver of his appeal rights, the record demonstrates Tsatenawa reaffirmed the voluntary and knowing nature of his decision in writing. Tsatenawa averred in his written Plea Agreement as follows:

I, Asia Victor Tsatenawa, have carefully read and reviewed the entirety of this plea agreement, or it has been read to me (and if necessary, translated for me) and reviewed with me by my attorney. After careful consideration and discussion with my attorney, and fully understanding my rights with respect to the pending criminal charge(s), I freely and voluntarily agree to the specific term and conditions of the plea agreement.

DATE: August 19 ,2023

ASIA VICTOR TSATENAWA
Defendant

Defendant's Initials. _____d.

Plea Agreement - Asia Victor Tsnlennwn
Pnge 10 f 10

ROA.509. Tsatenawa's written statement clearly establishes that Tsatenawa reviewed the entirety of the Plea Agreement with his attorney (which included all three appeal waiver exceptions), understood the document, signed it, and reiterated that his plea of guilty is freely and voluntarily entered. ROA.509. When the District Court later gave Tsatenawa an opportunity to ask questions, seek clarification, or request further explanation as to his rights, Tsatenawa received counseling from his attorney and the Court as to the nature and scope of his appeal waiver provision. ROA.448. After receiving such counseling, Tsatenawa advised the Court that the explanation he received "ma[d]e sense" and he "understand[s] that." ROA.449.

Nowhere in the record is there any indication Tsatenawa

31

was either confused by or did not understand any provision of his Plea Agreement, including the provision which clearly delineates his waiver of his appellate rights. *See generally United States v. Baty*, 980 F.2d 977, 978-79 (5th Cir. 1992) (explaining defendant's obvious confusion regarding the waiver provision obligated the district court to insure that defendant understood her right to appeal and the consequences of waiving that right). When, as here, the record firmly establishes that the defendant's waiver of his appellate rights is a counseled, knowing, and voluntary decision, this Court has consistently held that the defendant "to the bargain to which he agreed."[4]

---

[4] *See United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) ("Because McKinney indicated that he had read and understood the plea agreement, which includes an explicit, unambiguous waiver of appeal, the waiver was both knowing and voluntary."); *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (same); *see United States v. Portillo*, 18 F.3d 290, 292-93 (5th Cir. 1994) ("We hold [ ] that when the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal."); *United States v. Wheaten*, 465 Fed.Appx. 321, 323 (5th Cir. 2012) (per curiam) (not designated for publication) ("Wheaten's response . . . indicates that he had read the plea agreement. At no time did Wheaten indicate . . . that he did not understand any of the terms set forth in the agreement. Moreover, Wheaten signed the agreement in which he attested that he had read it and understood its terms.").

Given Tsatenawa's own written and verbal affirmations to the Court, *see Blackledge*, 431 U.S. at 74, Tsatenawa should be held to the bargain to which he agreed and be barred from appealing any issues falling outside the scope of the enumerated exceptions to his appeal waiver.

## 2.    The exceptions to Appellant's appeal waiver do not apply

Turning to the plain language of the Plea Agreement, Tsatenawa waived his right to challenge his conviction or sentence except to file an appeal regarding: (a) the denial of his motion to suppress; (b) a claim of prosecutorial misconduct; and (c) a claim of ineffective assistance of counsel. ROA.504-05. On this record, the undersigned is of the opinion that the exceptions noted by Tsatenawa's appeal waiver do not apply.

### a.    *Motion to suppress*

Tsatenawa has no basis to dispute the District Court's resolution of his motion to suppress below. ROA.210-18. As the party seeking suppression, Tsatenawa "has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment

rights." *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992). "The standard of review for a motion to suppress based on live testimony at a suppression hearing is to accept the trial court's factual findings unless clearly erroneous or influenced by an incorrect view of the law." *United States v. Outlaw*, 319 F.3d 701, 704 (5th Cir. 2003). "Questions of law are reviewed *de novo*, as are the district court's ultimate conclusions of Fourth Amendment reasonableness." *United States v. Vasquez*, 298 F.3d 354, 356 (5th Cir. 2002).

On December 3, 2020, San Antonio Police Department Officers ("SAPD") responded to a call reporting that a black male in a red truck parked at the M&M Food Mart pulled a gun on a Hispanic male. ROA.207-09. As the officers pulled up to the red truck, a black male exited the vehicle and ran. ROA.207-09. Although officers pursued the suspect, they could not apprehend him. ROA.207-09. They then returned to the M&M Food Mart to secure the abandoned red truck. ROA.207-09.

Officer David Below began opening the doors of the red truck and conducting a search of the front and back seat.

ROA.207-09. The officer found a cell phone under the center console of the vehicle, which did not have any password protection activated. ROA.207-09. Officer Below proceeded to open the cell phone, finding a Facebook app so as to determine the identity of the phone owner and individual who ran from police. ROA.207-09. He ascertained that the identity of the suspect was the defendant-appellant Asia Victor Tsatenawa, a gang member with a felony record and well known to SAPD officers. ROA.207-09.

During the initial search of the vehicle by officers, several bystanders approached officers and identified the truck as belonging to Tsatenawa's brother "Pookie." ROA.207-09. A woman approached the officers and gave them the keys to the truck, confirming it belonged to Tsatenawa's brother. ROA.207-09. The woman told Officer Below "it's not his [Tsatenawa's] truck." ROA.207-09. She returned again several minutes later, handing Officer Below her phone with "Pookie" on the other end of the line. ROA.207-09. Pookie informed Officer Below that he intended to get his truck and was on his way to the M&M Food

Mart. ROA.207-09. In the meantime, SAPD officers received orders from their superiors to ticket the red truck for blocking the sidewalk and proceed with impounding the vehicle. ROA.207-09.

Officer Below began an inventory search of the truck pursuant to standard operating procedure for all impounded vehicles. ROA.207-09. During this search, Officer Below discovered a Century Arms International model RAS47 7.62 x 39mm pistol lying on the backseat, within arm's reach of the driver's seat underneath an article of clothing. ROA.207-09. Although Pookie arrived to claim his red truck, SAPD officers informed him that he could no longer take the vehicle with him due to the impounding of the vehicle. ROA.207-09. During his interaction with officers, Pookie acknowledged to officers that he did in fact give Tsatenawa the keys to his truck the night before the incident. ROA.207-09.

Based on the facts he gathered personally as well as from other law enforcement agencies and sources, Special Agent Chris Beach with the Bureau of Alcohol, Tobacco, Firearms, and

Explosives submitted an affidavit in support of an arrest warrant for Tsatenawa pursuant to 18 U.S.C. 922(g)(1) for "Felon in Possession of a Firearm." ROA.207-09. SAPD detectives subsequently located and arrested Tsatenawa on December 8, 2020 at an apartment complex in San Antonio, Texas. ROA.207-09. Officers observed Tsatenawa leave an apartment and enter a vehicle belonging to Tsatenawa with a juvenile. ROA.207-09. They quickly approached Tsatenawa in an effort to detain him, but Tsatenawa attempted to flee. ROA.207-09. SAPD officers, however, made the arrest before Tsatenawa could escape. ROA.207-09.

After arresting Tsatenawa, officers searched him and his vehicle pursuant to the arrest. ROA.207-09. Officers found 13.6 grams of marijuana and 28.6 grams of cocaine during their search. ROA.207-09. They then used Tsatenawa's apartment key to enter the apartment he had just exited to perform a protective sweep of the premises. ROA.207-09. Detective Gilbert Guerra read Tsatenawa his Miranda rights and proceeded to question him regarding the apartment he had just left.

ROA.207-09. During this conversation, Tsatenawa told the detective the name and location of his cocaine dealer. ROA.207-09. SAPD Detective Jerred Moeller obtained a search warrant for Tsatenawa's apartment using these facts and Tsatenawa's criminal history. ROA.207-09.

Prior to execution of the search warrant on the apartment, officers have Tsatenawa a second Miranda warning. ROA.207-09. This time, however, Tsatenawa chose to cooperate fully in the search of his apartment. ROA.207-09. Detectives found two pistols, 261 grams of cocaine, 33.4 grams of crack cocaine, 425 grams of marijuana, 39 grams of pills, and 5 digital scales inside Tsatenawa's apartment during the consensual search. ROA.207-09. These findings led officers to charge Tsatenawa with "Possession with Intent to Distribute Cocaine and Crack Cocaine, Felon in Possession of a Firearm, and Possession of a Firearm in Furtherance of Drug Trafficking."[5]

Following his indictment, Tsatenawa filed a motion to

---

[5] ROA.207-09. The charge of "Felon in Possession of a Firearm" was later dismissed by the District Court. ROA.207-09.

suppress "all evidence (including the pistols and drugs) and all statements, oral or written, allegedly made by the Defendant in connection with this cause." ROA.138. More specifically, Tsatenawa claimed: (a) no recognized exceptions allowed for the warrantless seizure of the pistol from the red truck, ROA.143.; (b) the probable cause affidavit provided in support of his arrest warrant contained material misrepresentations and omissions, ROA.145-46.; and (c) the search warrant for his apartment was conclusory and alleged only mere suspicion of criminal activity. ROA.146. The District Court properly rejected each of Tsatenawa's allegations in his motion to suppress. ROA.210-18.

## 1. Officer Below's initial search of the vehicle – abandonment

By fleeing the scene and leaving the truck unlocked in the parking lot, Tsatenawa effectively abandoned his vehicle and gave up any reasonable expectation of privacy in the vehicle and its contents. ROA.210-13.; *see Abel v. United States*, 362 U.S. 217, 240–241 (1960) (indicating that it is settled law that a person lacks standing to complain of a search or seizure of property he has voluntarily abandoned because he lacks a

legitimate expectation of privacy in the item); *United States v. Barlow*, 17 F.3d 85 (5th Cir. 1994) (holding that vehicle parked at end of street, unlocked, key in ignition, with a warm engine was abandoned by defendant who robbed nearby miniature golf course and search of vehicle and seizure of bullets from glove compartment was proper when looking for vehicle ownership).

This case closely resembles the facts of *United States v. Self*, wherein the defendant fled from his vehicle upon seeing the police. No. MO-09-CR-66, 2009 WL 10680655 * 3-4 (W.D. Tex. Sept. 8, 2009), *aff'd*, 414 F. App'x 611 (5th Cir. 2011). The defendant left behind an unlocked iPhone, *i.e.*, not password protected, inside the vehicle that law enforcement used to determine his identity. *Id.* There, the Court held that "… Defendant retained no reasonable expectation of privacy in the truck or its contents, including the iPhone, after jumping the motel fence and leaving the scene." *Id.* Like the circumstances in *Self*, Tsatenawa lost any reasonable expectation of privacy regarding the red truck and its contents once he fled the scene. *See id.* Officer Below's search of the red truck and use of the

phone he found inside the vehicle to identify Tsatenawa are lawful under existing circuit precedent. ROA.210-13.; ROA.274-75.

**2. <u>There is no proof of deliberate falsehoods made with reckless disregard for the truth by the affiant</u>**

In *United States v. Wake*, this Court reaffirmed that in order to be entitled to a *Franks* hearing, there must be allegations of deliberate falsehood or of reckless disregard for the truth—allegations of negligence or innocent mistake are insufficient. 948 F.2d 1422, 1428 (5th Cir. 1991). It further emphasized that *Franks* only applies when the actual affiant asserts the misrepresentations, not when the affiant reasonably relies on misrepresentations asserted by another. *Id.* "Therefore, the person whose deliberate falsehood or reckless disregard for the truth at issue is ... the affiant ...." *Id.* at 1428-29.

In this case, Agent Beach is the affiant of the December 4, 2020 affidavit submitted to the Magistrate Judge. ROA.214. Tsatenawa, however, seeks to attack the affidavit by challenging statements made by Officer Below rather than statements made by Agent Beach – the affiant. In failing to prove that the that the

41

actual affiant (Agent Beach) made false statements or that he omitted information from the affidavit, Tsatenawa failed to satisfy his burden of proof under *Wake*.    ROA.213-15.; ROA.274-75. Thus, there is no error in this regard.

### 3. <u>The search warrant for Appellant's apartment is not bare bones</u>

"Bare bones affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). "An affidavit is bare bones if it is so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable." *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997). "Whether an affidavit is a bare bones affidavit is determined by a totality of the circumstances." *United States v. Perricone*, No. 22-51127, 2024 WL 2237965, at *3 (5th Cir. May 17, 2024).

Here, the affidavit for search warrant for Tsatenawa's apartment states as follows:

Said premises are a place where a controlled substance, to wit cocaine,

Is unlawfully possessed In violation of the Texas Health and Safety Code, and that such belief of the Affiant fs founded upon the following Information:

On 12/08/2020 at approximately 2025 hours Asia Tsatenawa was observed inside of the apartment located at 11500 Huebner Rd #2007. Asia Tsatenawa was observed by SAPD Street Crimes Officers Trevino #0491 and Rodriguez #0075 from the parking lot of the apartment complex, an area accessible to all members of the public. SAPD SCU Officers previously spoke with the property management who confirmed Asla Tsatenawa had been staying at the apartment. Asia Tsatenawa was known to have a federal warrant for felon In possession of a firearm. Officers Trevino and Rodriguez observed Asisa Tsatenawa walk out of the apartment and utilize a key to lock the door behind him. A juvenile male was with Asia Tsatenawa as he exited the apartment. Asia Tsatenawa walked down the stairs to the apartment and walked out to a vehicle registered to him with TX License Plate MYK6156. Asia Tsatenawa had the vehicle keys, opened the driver's side door of the vehicle, and started to enter the vehicle. Uniformed SAPD Street Crimes Officers In fully marked SAPD patrol vehicles converged on Asia Tsatenawa as he sat in the driver's seat of the vehicle. Asia Tsatenawa saw the uniformed patrol officers approaching, exited the vehicle, and evaded arrest by running towards the apartment. SAPD

Street Crimes Officers ran after Asia Tsatenawa and caught him a short distance later. Asia Tsatenawa Intentionally and knowingly evaded arrest from SAPD Street Crimes Officers while having an active felony warrant.

Utilizing the key that was In his possession, SAPD Street Crimes Officers conducted a sweep of the apartment to remove any additional occupants and prevent the destruction of narcotics evidence.

Asia Tsatenawa was placed under arrest and searched Incident to arrest. Aslsa Tsatenawa was found to be In possession of 13.6 grams of marijuana on his person. An additional 28.6 grams of cocaine was found In the center console of the vehlcle Asia Tsatenawa was observed entering immediately after he left the apartment. The vehicle Is registered to Asia Tsatenawa. Det. Guerra #2014 read Asia Tsatenawa his rights and he acknowledged he understood his rights. Asia Tsatenawa told Oet. Guerra that was unsure If there was *any* addftional narcotics In the apartment. Asia Tsatenawa told Det. Guerra he buys his cocaine from a guy named David from the Glenwood area.

Asia Tsatenawa has been arrested multiple times In the past for Possession with Intent to Deliver Controlled Substance Penaltly Group 1, 4-200 grams. Asia Tsatenawa has been previously convicted for Possession with Intent to Deliver Controlled Substance Penalty Group 1, 4-200 grams . Asia Tsatenawa

44

> has been documented as a Denver Heights Bloods Gang member. Asia Tsatenawa has been previously investigated and surveilled for narcotics sales and distribution by TAG Detectives.
>
> Based on the facts stated above and Asia Tsatenawa being in care, custody, and control of the apartment at the time he was found to have in his possession and his immediate attempt to flee back to the apartment when approached by officers, it is believed that Asia Tsatenawa has additional narcotics, specifically cocaine and marijuana in the apartment.

ROA.487-88.

Contrary to Tsatenawa's assertions, the affidavit contained more than wholly conclusional statements. Instead, it provided specific facts and circumstances that allowed the issuing judge to make a probable cause determination regarding the search of the apartment. *See United States v. Morton*, 46 F.4th 331, 336-38 (5th Cir. 2022). The totality of the circumstances confirm that the affidavit is not bare bones. *See id.* at 337. For example, it set forth facts indicating Tsatenawa was unlawfully possessing narcotics and that those narcotics could be found in his home. *See United States v. Mason*, No. 22-51070, 2023 WL

5431624, at *1 (5th Cir. Aug. 23, 2023) (rejecting defendant's complaint that an affidavit was "bare bones" where the affidavit and accompanying exhibits supplied sufficient facts showing defendant was unlawfully possessing firearms and that those firearms could be found in his home). Additionally, Tsatenawa has not shown that the search warrant was impermissibly overbroad and has therefore failed to show that the warrant was so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers could not reasonably presume it to be valid. *See United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012). Because the executing officer's reliance on the warrant was objectively reasonable and made in good faith, this Court must uphold the District Court's rejection of Tsatenawa's challenge to the good-faith exception. ROA.215-16.

Based on the totality of the circumstances surrounding Tsatenawa, the undersigned believes that the District Court did not err in denying Tsatenawa's motion to suppress. This appeal therefore presents no legally nonfrivolous issues as to

Tsatenawa's motion to suppress.[6]

### b. *Ineffective assistance of counsel*

Tsatenawa has no basis to raise a claim of ineffective assistance of counsel on this record. This Court generally does not review claims of ineffective assistance of counsel on direct appeal. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). An exception is made if the record allows for a fair evaluation of the merits of the claim. *United States v. Higdon*, 832 F.2d 312, 313-314 (5th Cir. 1987).

The instant case does not fit into this limited exception because the record does not provide sufficient information on defense counsels' strategies, the motivations behind their decisions and tactics, or the extent of their investigations or discussions with the defendant. Without any clear instances of ineffective assistance of counsel appearing in the record, the

---

[6] To the extent that the defendant could seek to appeal the denial of his motion to reconsider the denial of his motion to suppress, ROA.240-52., 272-73., 275-76., such challenge must fail. "Motions for reconsideration should not be used … to re-urge matters that have already been advanced by a party." *Nationalist Movement v. Town of Jena*, 321 Fed. Appx. 359, 364 (5th Cir. 2009). Tsatenawa's motion to reconsider does little more than rehash the arguments that the District Court previously rejected. As such, the District Court acted within its discretion to deny the defendant's motion to reconsider. ROA.258-59.

undersigned counsel is of the opinion that any claim of ineffective assistance of counsel would fail on direct appeal as this Court cannot effectively evaluate such a claim on the record presented. *See United States v. Cantwell*, 470 F.3d 1087, 1091 (5th Cir. 2006) ("Since Cantwell's ineffective assistance claim has not been presented to the district court, we decline to review it now. This in no way prejudices Cantwell's claim should she choose to raise it in a later post-conviction proceeding."). This appeal therefore presents no legally nonfrivolous ineffective assistance of counsel claims for this Court's review.

### c. *Prosecutorial misconduct*

Lastly, there is no evidence in the record suggesting any instances of prosecutorial misconduct occurred during the proceedings below. The undersigned can find no improper acts by the prosecution in connection with the underlying proceedings. As such, Tsatenawa has no legitimate basis to raise a claim of prosecutorial misconduct on this direct appeal. *See United States v. Garcia*, 522 F.3d 597, 600 (5th Cir. 2008) (authorizing reversal where instances of prosecutorial

misconduct are plain and have an effect on the defendant's substantial rights). In sum, counsel believes Tsatenawa has no nonfrivolous grounds for an appeal given his execution of a binding, enforceable appeal waiver.

## II. EVEN IF THIS COURT WERE TO DISREGARD THE APPEAL WAIVER EXECUTED BY APPELLANT, NO OTHER NONFRIVOLOUS ISSUES EXIST TO PRESENT ON APPEAL CONCERNING THE TAKING OF APPELLANT'S PLEA OR HIS SENTENCING.

Even if this Court were to disregard the appeal waiver executed by Tsatenawa, the undersigned believes there are no other nonfrivolous issues to present on appeal regarding the taking of Tsatenawa's plea or his sentencing.

## A. No Nonfrivolous Issues Exist Concerning the Taking of Appellant's Plea

### 1. <u>Standards applicable to plea hearings</u>

Whether the requirements of Federal Rule of Criminal Procedure 11 are satisfied is a conclusion of law subject to *de novo* review. *United States v. Scott*, 987 F.2d 261, 264 (5th Cir. 1993). A district "court's acceptance of the plea [is regarded] as a positive finding on each [of the subjects of inquiry required by

Rule 11], reviewable under the clearly erroneous standard." *United States v. Dayton*, 604 F.2d 931, 940-41 (5th Cir. 1979).

When a defendant raises a claim of noncompliance with the requirements of Rule 11 for the first time on appeal, it is subject to plain error review. *United States v. Trejo*, 610 F.3d 308, 318–19 (5th Cir. 2010). If there was (1) an error below, that was (2) clear and obvious, and that (3) affected the defendant's substantial rights, a *"court of appeals has the discretion to correct it but no obligation to do so." Id.* at 319 (emphasis added). "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under [Federal Rule of Criminal Procedure 11], must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

### 2. <u>Rule 11 of the Federal Rules of Criminal Procedure</u>

"Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in

relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). More specifically, Rule 11 requires that, before accepting a defendant's plea of guilty, the court should determine:

> (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
>
> (B) the right to plead not guilty, or having already so pleaded, to persist in that plea;
>
> (C) the right to a jury trial;
>
> (D) the right to be represented by counsel — and if necessary have the court appoint counsel — at trial and at every other stage of the proceeding;
>
> (E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;
>
> (F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;
>
> (G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a); and

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

FED. R. CRIM. P. 11(b)(1). Rule 11 also requires the court, before accepting a plea of guilty, to "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises other than promises in a plea agreement." FED. R. CRIM. P. 11(b)(2). Further, before entering judgment on a guilty plea, Rule 11 requires the court

to determine that there is a factual basis for the plea. FED. R. CRIM. P. 11(b)(3).

Although Rule 11 specifies a long list of substantive and procedural requirements to be observed before a guilty plea is accepted, *see* FED. R. CRIM. P. 11(b),(c), this Court does not require "letter-perfect" compliance with all of the rule's requirements. *Dayton,* 604 F.2d at 939. This Court has held that where the three core concerns of Rule 11 are met, *i.e.,* that the guilty plea is free from coercion, that the accused understands the nature of the charges against him, and that the accused knows the direct consequences of his guilty plea, there is no violation of the body or spirit of Rule 11. *Id.* at 939-40.

### 3. <u>The District Court substantially complied with the requirements of Rule 11 at Appellant's rearraignment</u>

The chart below demonstrates the District Court substantially complied with the dictates of Rule 11 at Tsatenawa's rearraignment hearing.

| Rule | Required Admonition or Discussion | Compliance | Cite |
|---|---|---|---|
| FED. R. CRIM. P. 11(b)(1)(A) | the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath | Yes | ROA.431-32. |
| FED. R. CRIM. P. 11(b)(1)(B) | the right to plead not guilty, or having already so pleaded, to persist in that plea | Yes | ROA.438-39. |
| FED. R. CRIM. P. 11(b)(1)(C) | the right to a jury trial | Yes | ROA.438-39. |
| FED. R. CRIM. P. 11(b)(1)(D) | the right to be represented by counsel — and if necessary have the court appoint counsel — at trial and at every other stage of the proceeding | Yes | ROA.438-39. |
| FED. R. CRIM. P. 11(b)(1)(E) | the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and | *See Discussion Below* | ROA.438-39. |

| | | | |
|---|---|---|---|
| | present evidence, and to compel the attendance of witnesses | | |
| FED. R. CRIM. P. 11(b)(1)(F) | the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere | Yes | ROA.438-39. |
| FED. R. CRIM. P. 11(b)(1)(G) | the nature of each charge to which the defendant is pleading | Yes | ROA.432-33 433-38, 446-47. |
| FED. R. CRIM. P. 11(b)(1)(H) | any maximum possible penalty, including imprisonment, fine, and term of supervised release | Yes | ROA.439-41, 443. |
| FED. R. CRIM. P. 11(b)(1)(I) | any mandatory minimum penalty | Yes | ROA.439-41. |
| FED. R. CRIM. P. 11(b)(1)(J) | any applicable forfeiture | Yes | ROA.433, 439-41, 445-46. |
| FED. R. CRIM. P. 11(b)(1)(K) | the court's authority to order restitution | N/A | N/A |
| FED. R. CRIM. P. 11(b)(1)(L) | the court's obligation to impose a special assessment | Yes | ROA.439-41. |
| FED. R. CRIM. P. 11(b)(1)(M) | in determining a sentence, the court's obligation to calculate the applicable | *See Discussion Below* | ROA.441. |

| | | | |
|---|---|---|---|
| | sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a) | | |
| FED. R. CRIM. P. 11(b)(1)(N) | the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence | Yes | ROA.442-43, 448-50. |
| FED. R. CRIM. P. 11(b)(2) | the defendant's plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement) | Yes | ROA.431-32, 444. |
| FED. R. CRIM. P. 11(b)(3) | there is a factual basis for the plea | Yes | ROA.446-48.; *see* ROA.502-03. |
| FED. R. CRIM. P. 11(c)(2) | disclosure of the plea agreement in open court | Yes | ROA.438. |
| FED. R. CRIM. P. 11(c)(3)(B) | to the extent the plea is one where the Government agrees to make a non-binding recommendation | Yes | ROA.444-45. |

| | — *see* FED. R. CRIM. P. 11(c)(1)(B) — the defendant will have no right to withdraw the plea if the court does not follow the recommendation | | |
|---|---|---|---|

Although the District Court followed the majority of the requirements of Rule 11, it made several minor omissions below. The District Court's deviations from the requirements of Rule 11, however, constitute harmless error on this record and presents no nonfrivolous appellate issues.

### FED. R. CRIM. P. 11(b)(1)(E)

Although the District Court failed to advise Tsatenawa of his right to testify and present evidence, these omissions do not rise to the level of reversible plain error. It appears Tsatenawa had independent knowledge of these particular Rule 11 rights as they are clearly set out within "Defendant's Waiver of Statutory and Constitutional Rights" provision of his Plea Agreement. ROA.503. (signed plea agreement discussing the defendant's rights); *see United States v. Ferrel*, 603 F.3d 758,

763 (10th Cir. 2010) ("Thus, a defendant who receives the information omitted by the district court from other sources generally cannot demonstrate that he would not have pleaded guilty had the court also so informed him."). Because Tsatenawa received the information omitted by the District Court from other sources, Tsatenawa cannot demonstrate that he would not have pleaded guilty had the Court also so informed him.

In any event, there is no indication in the record that these Rule 11 omissions can reasonably be viewed as having been a material factor affecting Tsatenawa's decision to plead guilty. There is no "reasonable probability that, but for the error, [Tsatenawa] would not have entered [his] plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Any omission under Rule 11(b)(1)(E), therefore, did not affect Tsatenawa's substantial rights. *See United States v. Cruz-Esteban*, 426 Fed. Appx. 250, 251 (5th Cir. 2011) (not designated for publication) (holding the district court's failure to advise the defendant of five of his rights as required under Federal Rule of Criminal Procedure 11(b)(1)(B)–(F) did not constitute plain error because,

for all of the challenged omissions, the defendant could not demonstrate a reasonable probability that he would not have pleaded guilty if he had been advised of those rights).

### *FED. R. CRIM. P. 11(b)(1)(M)*

As for any omissions by the District Court regarding his explanation of its obligation to calculate the relevant Guidelines range and to consider possible departures under the Guidelines and the other sentencing factors listed in 18 U.S.C. § 3553(a), it does not rise to the level of reversible plain error. The record is devoid of any evidence suggesting Tsatenawa would have refused to plead guilty had the lower court more fully advised him about its sentencing responsibilities under Rule 11(b)(1)(M). *See United States v. Cuellar*, 339 Fed.Appx. 407, 408 (5th Cir. 2009) (not designated for publication) (holding court's noncompliance with Rule 11(b)(1)(M) did not require reversal on plain error review where the defendant did not show that, but for the error, he would not have entered his plea); *United States v. Gray*, 581 F.3d 749, 754 n.1 (8th Cir. 2009) (determining a violation of Rule 11(b)(1)(M) was harmless where "[defendant]

never complained about this violation, and there [was] no evidence [he] would have proceeded differently had the district court complied with this subsection of Rule 11"). In addition, it appears Tsatenawa received the information omitted by the District Court from his trial counsel prior to entering his guilty pleas. ROA.501. (showing defendant defense counsel discussed the Guidelines and punishment related factors with the defendant); *see generally United States v. Johnson*, 1 F.3d 296, 302–03 (5th Cir. 1993) (acknowledging that a Rule 11 omission by the District Court may nevertheless be harmless when the defendant receives the omitted information from another sufficiently reliable source). The District Court's omission thus does not constitute reversible plain error on this record.

As outlined above, the District Court substantially complied with the requirements of Federal Rule of Criminal Procedure 11. Any deviations from the requirements of Rule 11 amount to harmless error and certainly not plain error under the circumstances of this case. The District Court ensured Tsatenawa was competent and capable of entering an informed

plea, ROA.431., and that Tsatenawa's guilty pleas were made knowingly and voluntarily. Also, the District Court ensured Tsatenawa's pleas were supported by an independent basis in fact. Accordingly, there are no nonfrivolous issues to present on appeal concerning the taking of Tsatenawa's guilty plea. *See Dayton*, 604 F.2d at 939-40.

## B.    **No Nonfrivolous Issues Exist Concerning Appellant's Sentencing**

### 1.    <u>Standards of review applicable to sentencing</u>

A district court's compliance with the sentencing procedures of Federal Rule of Criminal Procedure 32 is reviewed *de novo. United States v. Myers*, 150 F.3d 459, 465 (5th Cir. 1998). This Court "review[s] the district court's interpretation or application of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. Trujiillo*, 502 F.3d 353, 356 (5th Cir. 2007). Whether a sentence is inside or outside of the Guideline range, this Court reviews the reasonableness of the sentence for an abuse of discretion. *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008).

If a defendant fails to object in the district court, this Court

reviews only for plain error. *United States v. Ronquillo*, 508 F.3d 744, 748 (5th Cir. 2007). Arguments that are properly preserved below, however, are reviewed for harmless error. *United States v. Walters*, 418 F.3d 461, 463 (5th Cir. 2005).

**2. <u>There are no non frivolous procedural issues arising from the District Court's sentencing calculations or its imposition of Appellant's sentence</u>**

**a. *The District Court properly calculated Appellant's total offense level***

The chart below summarizes the calculations made by the District Court to arrive at a total offense level of 23 for Tsatenawa:

| Calculation | Level | USSG § | Description | Cite |
|---|---|---|---|---|
| Base Offense Level | 24 | 2D1.1(a)(5) & (c)(8) | 21 U.S.C. §§ 841(a)(1), (b)(1) | ROA. 515. |
| Specific Offense Characteristic | +2 | 2D1.1(b)(12) | The defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance | ROA. 515. |
| Adjustment for Acceptance of Responsibility | -3 | 3E1.1(a), (b) | Affirmative acceptance of responsibility | ROA. 516. |
| **Total Offense Level** | 23 | | | ROA. 542. |

Under the edition of the Federal Sentencing Guidelines applicable to this case, the District Court properly calculated Tsatenawa's total offense level.

## Base Offense Level

The District Court's calculation of the quantity of drugs involved in a particular offense is a factual determination. *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998). "Factual findings regarding sentencing factors are entitled to considerable deference and will be reversed only if they are clearly erroneous." *United States v. Watson*, 966 F.2d 161, 162

(5th Cir.1992). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir. 1991). In making findings pursuant to the Sentencing Guidelines, a district court need only be convinced by a preponderance of the evidence. *United States v. McKinney*, 53 F.3d 664, 677 (5th Cir. 1995).

The District Court correctly held Tsatenawa accountable for an offense involving at least 100 kilograms but less than 400 kilograms of converted drug weight. ROA.502, 515. Tsatenawa admitted in his Factual Basis to possessing in his apartment the following types/quantities of narcotics: (a) 261 grams of powder cocaine; (b) 33.4 grams of crack cocaine; and (c) 334 grams of marijuana. ROA.502. The PSR then converted these specific narcotics to their converted drug weight ("CDW") to connect Rocha to a total of 172.63 kilograms of CDW. ROA.515. This evidence alone provides ample support for the District Court's finding that Tsatenawa is accountable for at least 100 kilograms but less than 400 kilograms of converted drug weight. *See* U.S.S.G. §§ 2D1.1(a)(5) & (c)(8).

64

In any event, Tsatenawa presented no non-conclusory sentencing evidence to establish that the PSR's final drug-quantity determination is erroneous in any way. When, as here, the defendant fails to offer credible evidence to rebut the content of the PSR, it is well-settled that the defendant cannot meet his appellate burden of showing that the information contained within the PSR is materially untrue or unreliable. *See United States v. Gianni*, 486 Fed. Appx. 459, 460 (5th Cir. 2012) (not designated for publication) ("Although Gianni objected to the drug-quantity determination, he did not offer evidence to rebut the PSR, so he failed to meet his burden of showing that the information in the PSR is materially untrue, and the court was entitled to rely on it."). Because Tsatenawa failed to offer the requisite evidence to rebut the content of the PSR, the District Court was plainly entitled to rely on the PSR's drug quantity finding and hold Rocha accountable for at least 100 kilograms but less than 400 kilograms of converted drug weight based on the drugs associated with his offense conduct. *See generally Sanders*, 942 F.2d at 897 ("A factual finding is not clearly

erroneous as long as it is plausible in light of the record as a whole.").

Under the relevant Guideline provisions, a base offense level of 24 applies to any offense involving at least 100 kilograms but less than 400 kilograms of converted drug weight. ROA.515.; *see* U.S.S.G. §§ 2D1.1(a)(5) & (c)(8). The District Court therefore correctly calculated Tsatenawa's base offense level at 24.

## Specific Offense Characteristic: Maintaining a Drug Premise

Section 2D1.1(b)(12) of the Guidelines authorizes a two-level enhancement if the defendant "maintained a premise for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). For the § 2D1.1(b)(12) enhancement to apply, the drug-related activity "need not be the sole purpose for which the premises were maintained." *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015) (quoting § 2D1.1(b)(12), cmt. n.17).

The record confirms that Tsatenawa maintained an apartment where he kept distributable quantities of a variety of

types of narcotics and pills. ROA.502. Law enforcement agents also found drug equipment and paraphernalia within the apartment used to facilitate Tsatenawa's distribution of narcotics from the apartment. ROA.502. Tsatenawa presented nothing substantive to the District Court to rebut the factual assertions within the PSR or his factual basis. *See United States v. Cervantes*, 706 F.3d 603, 620-21 (5th Cir. 2013) (noting that the defendant has the burden to demonstrate that information in the PSR is inaccurate or materially untrue). In light of these facts, the District Court had a plausible basis to apply the 2-level enhancement. *See, e.g., United States v. Carbajal-Gonzalez*, 661 Fed. Appx. 825, 827 (5th Cir. 2016) (not designated for publication) (holding no error under § 2D1.1(b)(12) because the defendant "presented no evidence to rebut the informant's statements that the house on the ranch was used to store kilogram-quantities of drugs"). Accordingly, the District Court committed no reversible error as to  its application of U.S.S.G. § 2D1.1(b)(12).

**Acceptance of Responsibility**

The District Court also acted appropriately by granting Tsatenawa a 3-level adjustment under § 3E1.1 for his acceptance of responsibility. *See* U.S.S.G. § 3E1.1. The record demonstrates Tsatenawa accepted full responsibility for his actions. ROA.516. Therefore, a downward adjustment to Tsatenawa's offense level was proper under the circumstances pursuant to § 3E1.1.

### b. *The District Court's criminal history computation is correct*

The Probation Office assessed twelve criminal history points against Tsatenawa. ROA.521. As a result, the Probation Office placed Tsatenawa within a criminal history category of V. ROA.521. With respect to Tsatenawa's criminal history score, the chart below reflects the determinations made by as to this matter:

| Date of Sentence | Offense | USSG § | Points | Cite |
|---|---|---|---|---|
| Arrested on 8-6-07 but sentenced on 11-7- | Possession of Cocaine; sentenced to 2-years confinement | 4A1.1(a) | +3 | ROA. 517. |

| 08 | | | | |
|---|---|---|---|---|
| Arrested on 9-1-11 but sentenced on 2-4-14 | Aggravated Assault with a Deadly Weapon (Repeater); sentenced to 5-years confinement | 4A1.1(a) | +3 | ROA. 518. |
| Arrested on 12-13-11 but sentenced on 2-4-14 | Evading Arrest/Detention with Motor Vehicle (Repeater); sentenced to 5-years confinement | 4A1.1(a) | +3 | ROA. 519.[7] |
| Arrested on 5-15-12 but sentenced on 3-22-13 | Felon in Possession of Firearms; sentenced to 37-months imprisonment | 4A1.1(a) | +3 | ROA. 520. |
| **Criminal History Subtotal** | | | 12 | ROA. 521. |

### U.S.S.G. § 4A1.1(a)

The undersigned believes the District Court did not plainly

---

[7] The record shows that Tsatenawa's <u>sentencing</u> dates for his "Aggravated Assault with a Deadly Weapon" and "Evading Arrest/Detention with a Motor Vehicle" offenses both occurred on the same day—February 4, 2014. Tsatenawa, however, has no basis to argue that the District Court should have treated these offenses as related offenses for criminal history computation purposes. The offenses are separated by an intervening arrest and are assigned different cause numbers by the prosecuting court. *See* U.S.S.G. § 4A1.2(a)(2); ROA.518-19. As such, no error occurred as to such matters.

err in allowing 12 total points to be added to Tsatenawa's criminal history computation under § 4A1.1(a) for the following offenses: (1) possession of cocaine; (2) aggravated assault with a deadly weapon; (3) evading arrest/detention; and (4) felon in possession of a firearm. For each of these particular offenses, the defendant received a total sentence exceeding one year and one month and the offense clearly occurred within the 15-year period during which § 4A1.1(a)(1) provides for an assessment of criminal history points. U.S.S.G. § 4A1.1(a) (instructing courts to "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month."); U.S.S.G. § 4A1.1 cmt. n.1 ("§ 4A1.1(a) . . . "A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period."); U.S.S.G. § 4A1.2(k)(1) ("In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal

history points for §4A1.1(a), (b), or (c), as applicable."). Pursuant to U.S.S.G. § 4A1.1(a), 3 points are properly added to Tsatenawa's criminal history score for each of the aforementioned offenses. *See* U.S.S.G. § 4A1.1(a).

The District Court found that the total of Tsatenawa's criminal history points is 12; therefore, the Court correctly identified Tsatenawa's criminal history category as V. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table (providing that 10, 11, or 12 criminal history points yields a criminal history category of V). There are thus no nonfrivolous issues to present on appeal concerning the calculation of Tsatenawa's criminal history computation.

### c. *The District Court's sentencing procedure had no negative impact on Appellant*

The chart below reflects the District Court's sentencing procedure:

| Rule or Requirement | Required Admonition or Discussion | Compliance | Cite |
|---|---|---|---|
| FED. R. CRIM. P. 32(h) | notice of possibility of departure on ground not | N/A | N/A |

| | identified in the PSR or prehearing submissions by the parties | | |
|---|---|---|---|
| FED. R. CRIM. P. 32(i)(1)(A) | verify that the defendant and the defendant's attorney have read and discussed the PSR and any addendum | *See Discussion Below* | ROA.454. |
| FED. R. CRIM. P. 32(i)(1)(B) | give the defendant a written summary of — or summarize *in camera* — any information excluded from the PSR on which the court will rely at sentencing and give the defendant a reasonable opportunity to comment | N/A | N/A |
| FED. R. CRIM. P. 32(i)(1)(C) | allow defendant's attorney to comment on the probation officer's | Yes | ROA.455-58, 460-62. |

| | determinations and other matters relating to an appropriate sentence | | |
|---|---|---|---|
| FED. R. CRIM. P. 32(i)(3)(B) | rule on any disputed portion of the PSR or other controverted matter, or determine that a ruling is not necessary | Yes | ROA.454, 457, 460, 463-64. |
| FED. R. CRIM. P. 32(i)(4)(A)(i) | allow defendant's attorney to speak on the defendant's behalf | Yes | ROA.465-70. |
| FED. R. CRIM. P. 32(i)(4)(A)(ii) | address the defendant personally in order to allow him to speak on his own behalf (allocution) | Yes | ROA.470-72. |
| FED. R. CRIM. P. 32(j)(1) | advise the defendant of his right to appeal his conviction and sentence, and to do so in forma pauperis if necessary | *See Discussion Below* | ROA.479-82. |

| FED. R. CRIM. P. 32(k)(1) | ensure the judgment correctly sets forth the plea or verdict, adjudication of guilt, and sentence | Yes | ROA.324-30, 476-79. |
| 18 U.S.C. § 3553(c) | state in open court the reasons for the imposition of the particular | Yes[8] | ROA.475-79. |

[8] In the event this Court determines the lower court should have done more to comply with the requirements of 18 U.S.C. § 3553(c), the undersigned nonetheless believes no reversible, plain error occurred. This Court always begins its sentencing analysis by affording great deference to sentences within the Guidelines range and infers "that the judge has considered all the factors for a fair sentence set forth in the Guidelines in light of the sentencing considerations set out in § 3553(a)." *United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008). This Court has explained: "While a district court errs by failing to explain a sentence, the effect of that error on our review for reasonableness is diminished when the sentence is within the Guidelines range." *United States v. Mondragon-Santiago*, 564 F.3d 357, 365 (5th Cir. 2009). Here, the effect of the District Court's error is clearly diminished by the fact that the defendant's sentences fall squarely within the parameters of the Guideline ranged applicable to his offenses. Besides the defendant's sentences falling within the properly calculated advisory Guideline ranges, there is nothing in the record to suggest that a detailed, oral explanation would have changed the defendant's sentences in any way. When, as here, the District Court chooses a sentence authorized by the Guidelines and there is no evidence showing the defendant's sentence would be any different had the District Court given a more detailed explanation of the reasons for its sentence, no reversible, plain error exists in the record. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 365 (5th Cir. 2009) (holding the district court's failure to adequately explain the sentence did not affect defendant's substantial rights under a plain error analysis because the defendant's sentence was within the Guidelines and defendant failed to show that an explanation would have changed his sentence). Accordingly, there are no nonfrivolous issues to present concerning this matter.

| | sentence | | |
|---|---|---|---|
| 18 U.S.C. § 3553(c)(1) | if the applicable Guideline range exceeds 24 months, state the reason for imposing a sentence at a particular point within the range | N/A | N/A |
| 18 U.S.C. § 3553(c)(2) | if a departure sentence is imposed, state the specific reason for such departure | N/A | N/A |

Although the District Court may not have strictly adhered to the mandates of Rule 32 and 18 U.S.S.C. § 3553, it omissions do not rise to the level of reversible, plain error.

### FED. R. CRIM. P. 32(j)

To the extent that the District Court did not adequately advise Tsatenawa of his right to "court appointed counsel" for purposes of an appeal, such omission does not constitute reversible error on this record. Tsatenawa is presently represented by court appointed counsel for purposes of his

appeal. Consequently, the District Court's omission had no negative impact on Tsatenawa and provides no basis to set aside his sentences.

### FED. R. CRIM. P. 32(i)(1)(A)

The record shows the District Court verified with defense counsel that he and Tsatenawa had discussed the PSR together, it failed to confirm this matter directly with the defendant. ROA.454. This Court has declined to interpret Rule 32 as creating an absolute requirement that the district court "specifically . . . ask a defendant whether he has read the [PSR]." *United States v. Victoria*, 877 F.2d 338, 340 (5th Cir.1989). Instead, the Court will "draw reasonable inferences from court documents, the defendant's statements, and counsel's statements" to determine whether the defendant has been given an opportunity to read the PSR with his counsel. *United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001).

The District Court's failure to verify with Tsatenawa that he and his attorney had read and discussed the PSR together in accordance with Rule 32(i)(1)(A) simply does not rise to the level

of reversible plain error on this record. *See United States v. Esparza–Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001) (applying plain error standard where defendant claims for the first time on appeal that the district court erred at sentencing by failing to ascertain whether defense counsel had read and reviewed the presentence report with him as required by Rule 32(i)(1)(A)). First, Tsatenawa remained silent when defense counsel advised the Court that counsel had reviewed and discussed the PSR with his client prior to the sentencing hearing. ROA.454. Second, when the District Court asked Tsatenawa whether he wanted to be heard on any matter following the Court's announcement of the PSR's recommendations, Tsatenawa made no complaints giving rise to an inference that he had not read or reviewed the PSR. ROA.470-72.

These factors clearly support an inference that Tsatenawa had satisfactorily read the PSR and discussed it with his attorney. *See United States v. Johnson*, 351 Fed. Appx. 948, 950 (5th Cir. 2009) (not designated for publication) (rejecting argument that plain error occurred when the district court failed

to inquire whether defendant and his counsel had read and discussed the PSR because defendant's "counsel submitted a sentencing memorandum addressing the PSR's findings and, at resentencing, both Johnson and his counsel made arguments with regard to the guidelines calculations contained in the PSR."). In addition, Tsatenawa cannot demonstrate the District Court's procedure at sentencing affected his substantial rights in any way. There is simply nothing in the record indicating Tsatenawa's sentence would have been any different had the District Court confirmed that he had personally read and reviewed the PSR. Because Tsatenawa cannot articulate any possible effect on his sentence from the omission, Tsatenawa cannot meet his burden under the plain error standard. *See United States v. Hidrobo*, 467 Fed. Appx. 286, 288 (5th Cir. 2012) (not designated for publication) (holding district court's failure to ascertain whether defense counsel had read and reviewed the PSR with the defendant as required by Rule 32(i)(1)(A) did not constitute plain error); *United States v. Garcia-Palacios*, 364 Fed. Appx. 125, 126 (5th Cir. 2010) (not

designated for publication) (same); *United States v. Cuellar*, 339 Fed. Appx. 407, 409 (5th Cir. 2009) (not designated for publication) (same).

### d. *Appellant had sufficient notice of the potential penalties for his offense*

The record also demonstrates Tsatenawa had sufficient notice of the potential penalties for his offense. The Plea Agreement, which is signed by Tsatenawa, specifically addresses each of the penalties he faced in connection with his crimes. ROA.501. To the extent that the District Court should have given Tsatenawa a more complete explanation of the potential penalties he faced at the time of his sentencing, such an omission does not warrant the reversal of Tsatenawa's sentences. Nothing in the record establishes that a different sentence might have been imposed had the District Court provided a more detailed explanation to Tsatenawa about his potential punishments at the time of sentencing. Tsatenawa's punishment did not exceed any statutory maximums and was well within the parameters of the relevant Guideline provisions deemed applicable by the Court. Accordingly, there are no

nonfrivolous issues to present on appeal as to this matter.

**e.** ***There are no nonfrivolous challenges to the substantive reasonableness of Appellant's sentence***

There are also no nonfrivolous issues to present on appeal with respect to the reasonableness of any aspect of Tsatenawa's sentences. Because Tsatenawa did not object to the length of his sentence or any other part of the punishment imposed, ROA.482-83., this Court reviews any challenge to the substantive reasonableness of the defendant's sentence for plain error. *See United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir. 2007). This Court reviews a sentencing decision for reasonableness regardless of whether the sentence imposed is inside or outside the Guidelines range. *United States v. Rodriguez*, 711 F.3d 541, 547 (5th Cir. 2013) (*en banc*).

### i.    <u>Terms of imprisonment</u>

The District Court sentenced Tsatenawa to consecutive sentences of 96-months imprisonment for his narcotics offense and 60-months imprisonment for his possession of a firearm offense. ROA.476-77. None of the terms of imprisonment

imposed by the District Court exceeded any of the statutory maximum punishments applicable to Tsatenawa's crimes. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (indicating statutory sentencing range of up to a maximum term of 20-years imprisonment); 18 U.S.C. § 924(c)(1)(A), (D) (indicating the defendant will be consecutively "sentenced to a term of imprisonment of not less than 5 years"). Nor do any of the sentences imposed by the District Court fall outside the correctly calculated Guideline ranges applicable to Tsatenawa's offenses. *See* ROA.530. (confirming the defendant's Guidelines range was 184 to 105-months imprisonment for his narcotics offense, while defendant's Guidelines imprisonment range was 60-months imprisonment for his firearm offense).

Nothing in the record suggests that Tsatenawa's sentences do not account for a factor that should receive significant weight, give significant weight to an irrelevant or improper factor, or represent a clear error of judgment in the balancing of the sentencing factors. *See United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009) ("The presumption is rebutted only

upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."). On these facts, Tsatenawa has no legitimate basis to challenge the reasonableness of his prison sentences. There are thus no nonfrivolous issues to present concerning the substantive reasonableness of Tsatenawa's prison sentences.

### ii.    <u>Terms of supervised release</u>

Turning to the length and conditions of supervised release imposed upon Tsatenawa, they too are reasonable. The District Court was expressly authorized by statute to subject Tsatenawa to anywhere from 3-years up to a lifetime term of supervised release for his narcotics offense, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and not more than 5-years for his possession of a firearm offense. *See United States v. Cudjoe*, 634 F.3d 1163, 1166 (10th Cir. 2011) ("For a felony conviction pursuant to § 924(c), which is a Class A felony, the maximum length of supervised release is five years."); *see also* 18 U.S.C. §§

3559(a)(1), 3583(b)(1). The supervised release terms also fall within the ranges recommended by the Guidelines. *See* U.S.S.G. § 5D1.2(c) (stating the "[t]erm of supervised release imposed shall not be less than any statutorily required term of supervised release"); U.S.S.G. § 5D1.2(a)(1) (stating the Guideline range of supervised release for a Class A felony is two to five years). Because the length of the District Court's terms of supervised release (concurrent 3-year and 5-year terms) fall within the relevant legal parameters, there is no legitimate basis for Tsatenawa to challenge the length of the District Court's terms of supervised release.

As for the specific conditions of Olivas's release, no plain errors exist with respect to any of the conditions of imposed upon Olivas. ROA.46-48. The majority of the conditions imposed by the District Court are either standard or mandatory conditions of supervised release under statute, the Guidelines, or local rule. As for the sole special condition of supervised release, it too is reasonable.

**Search & Seizure**

The undersigned believes Tsatenawa has no basis to complain about the Court's imposition of a supervised release condition requiring that he submit to search and seizures of his person, property, and residence when reasonable suspicion exists that the defendant has violated a condition of supervision and that the areas to be searched contain evidence of this violation. ROA.326. First, the condition is reasonably necessary given to assure Tsatenawa serves his supervised release as a period of genuine rehabilitation. Second, this Court has repeatedly held that such supervised release conditions are wholly proper and do not violate a defendant's Fourth Amendment rights. *See United States v. Williams*, 880 F.3d 713, 719-22 (5th Cir. 2018) (recognizing the plain text of the defendant's probation conditions requires that he "[a]gree to searches of his person, his property, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, by the probation officer ... with or without a warrant ... when the probation officer ... has reasonable suspicion to believe that

[the defendant] is engaged in or has been engaged in criminal activity."); *see also Griffin v. Wisconsin*, 483 U.S. 868, 871-74, 879 (1987) (explaining the probation agency "must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances" when conducting "reasonable" searches of probationers); *United States v. Knights*, 534 U.S. 112, 119 (2001) (upholding a warrantless non-consensual search of a probationer's home based on reasonable suspicion when the probationer agreed to searches as a condition of probation and stating "[j]ust as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."); *United States v. LeBlanc*, 490 F.3d 361, 365–66 (5th Cir. 2007) ("reasonable restrictions upon liberty and privacy are allowed and are necessary to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at

large."). As such, the District Court's decision to impose this particular supervised release condition is reasonable under the circumstances.

## **Miscellaneous Drug Treatment Conditions**

Tsatenawa has no basis to complain about the Court's supervised release terms relating to: (1) his duty to attend a substance abuse treatment program; (2) his responsibility for the costs of such treatment; (3) his obligation to comply with the substance abuse testing requirements of the treatment agency; and (4) his responsibility to abstain from all use of alcohol and other intoxicants during and after his treatment. ROA.326. The requirement that Tsatenawa attend a substance abuse treatment program is entirely reasonable given that the facts contained within the PSR indicate Tsatenawa can benefit from such a program. ROA.527-28. (showing the defendant regularly uses marijuana and cocaine); *see* U.S.S.G. § 5D1.3(d)(4) (noting that if the court has reason to believe that the defendant is an abuser of narcotics, other controlled substances or alcohol--a condition requiring the defendant to participate in a program for

substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol).

As for the drug testing term of supervised release, it is reasonable because drug testing is a likely component of any substance abuse treatment program. Likewise, the supervised release requirement that Tsatenawa bear the costs of his drug treatment is reasonable because it is consistent with the proper administration of the other terms of his supervised release. *See generally United States v. Vega*, 332 F.3d 849, 852 (5th Cir. 2003) (per curiam) (noting the requirement that a defendant bear the costs of his drug treatment and "comply with the rules and regulations of the treatment agency" are "clearly consistent" with the sentencing court's intent that the defendant attend treatment). Lastly, a requirement that Tsatenawa not use alcohol or other intoxicants during his treatment is a reasonable prohibition for someone undergoing substance abuse treatment. *See generally United States v. Escobedo-Rocha*, 489 Fed. Appx. 766, 767 (5th Cir. 2012) (upholding abstention from

87

the use of alcohol and/or all other intoxicants during and after completion of treatment because the appellant's history of alcohol and/or drug abuse substantiates the abstinence condition).

## No Contact

With respect to the special condition that prohibits Tsatenawa from having contact with any known member of the Denver Heights Street gang (a suspected Blood sect), such condition is likewise proper. The Guidelines set out as a "recommended" standard condition of supervised release that a defendant shall not associate with any persons engaged in criminal activity or any person convicted of a felony unless granted permission to do so by the probation officer. *See* U.S.S.G. § 5D1.3(c)(9). Further, the term at issue is reasonably related to the sentencing goals of deterring future criminal conduct and protecting the public from Tsatenawa's future crimes. *See* ROA.323. (showing the defendant is a confirmed member of the Denver Heights Street gang); 18 U.S.C. §§ 3583(d)(1); 3553(a)(2)(B), (a)(2)(C); *see generally United States v.*

*Wilso*n, 709 F.3d 1238, 1241 (8th Cir. 2013) (affirming condition requiring defendant not to contact victim and her family because the no-contact order is not a greater deprivation of liberty than is reasonably necessary to promote deterrence, protect the public, and advance defendant's correctional need). Thus, Tsatenawa has no legitimate basis to challenge the District Court's imposition of the Court's no contact special condition of supervised release. In sum, the undersigned believes there are thus no nonfrivolous issues to present concerning the conditions of supervised release imposed upon Tsatenawa.

### iii.  **Special assessment**

The District Court ordered Tsatenawa to pay a total $200 special assessment. ROA.329. "The court shall assess on any person convicted of an offense against the United States . . . in the case of a felony . . . the amount of $100 if the defendant is an individual." 18 U.S.C. § 3013(a)(2)(A). Because statute mandated the imposition of a $100 special assessment to Tsatenawa for each of his felony offenses, the District Court did

not commit clear or obvious error in this regard.

### iv.    **The court declined to impose any fine or restitution upon the Appellant**

The District Court declined to impose any fines or restitution upon Tsatenawa. ROA.329. Thus, there are no nonfrivolous issues to present concerning any fines or restitution in this matter. In sum, the undersigned believes there are no nonfrivolous issues to present concerning the reasonableness of Tsatenawa's sentences.

### 3.    ***There are no other nonfrivolous challenges to raise on appeal***

Lastly, the undersigned has reviewed and assessed the record for any other potential reversible errors and can find no other nonfrivolous issues Tsatenawa can present to this Court. In sum, the undersigned can find no other nonfrivolous basis for an appeal.

### CONCLUSION

In sum, this case presents no legally nonfrivolous issues on appeal. Because no issues exist that might arguably support an appeal, this Court should grant counsel's motion to withdraw

and excuse counsel from any further responsibilities in this matter.

## APPOINTED APPELLATE COUNSEL'S MOTION TO WITHDRAW

After examining the facts of this case in light of the applicable law, it is the professional opinion of counsel that there are no legally nonfrivolous grounds for an appeal in this case. Counsel hereby moves to withdraw from this case in accordance with *Anders v. California*, 386 U.S. 738 (1967), and further asks the Court to rule on this appeal in accordance therewith.

Respectfully submitted,

KELLER STOLARCZYK PLLC
215 W. Bandera Rd.
No. 114-800
Boerne, Texas 78006
Tele: 830.981.5000
Facs:888.293.8580

*/s/ Kimberly S. Keller*
Kimberly S. Keller

## **CERTIFICATE OF SERVICE**

I, Kimberly S. Keller, certify that today, June 3, 2024, a copy of Appellant's *Anders* Brief & Appointed Counsel's Motion to Withdraw was served, via this Court's e-filing system, on opposing counsel. I also certify that a hard copy of a copy of Appellant's *Anders* Brief & Appointed Counsel's Motion to Withdraw has been served on the defendant-appellant at the following address: Asia Victor Tsatenawa, No. 96844-280, Three Rivers FCI, P.O. Box 4200, Three Rivers, TX 78071.

As to Appellant's *Anders* Brief & Appointed Counsel's Motion to Withdraw, I certify that I have complied with the requirements of *United States v. Moreno-Torres*, 768 F.3d 439 (5th Cir. 2014). The undersigned has advised the defendant-appellant in a manner and language understood by the defendant: (i) that I fully examined the record and reviewed the relevant law and determined there are no meritorious issues for appeal; (ii) that I am moving to withdraw; (iii) that if granted, the motion will result in the dismissal of the appeal; and (iv) the

defendant has the right to file a response, in English, opposing my motion, within thirty days.

**_/s/ Kimberly S. Keller_**
Kimberly S. Keller

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies as follows:

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,823 words printed in a proportionally spaced typeface.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it is printed in a proportionally spaced, serif typeface using Bookman Old Style 14-point font in text and Bookman Old Style 12-point font in footnotes.

3. This brief complies with the privacy redaction requirements of 5th Circuit Rule 25.2.13.

4. This brief complies with 5th Circuit Rule 25.2.1 because it is an exact copy of the electronic submission.

5. This brief is free of viruses because it has been scanned for viruses with the most recent version of a commercial virus scanning program.

<u>*/s/ Kimberly S. Keller*</u>
Kimberly S. Keller