UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ASIA TSATENAWA
DEFENDANT-APPELLANT

v.

UNITED STATES OF AMERICA
PLAINTIFF-APPELLEE

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION
DISTRICT COURT No. 5:21-CR-00073-1

DEFENDANT'S RESPONSE TO ANDERS BRIEF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ASIA TSATENAWA, THE DEFENDANT IN THE ABOVE STYLED AND NUMBERED CAUSE, AND SUBMITS THIS RESPONSE TO THE ANDERS BRIEF AS AUTHORIZED BY THE COURT.

THE FOLLOWING FACTS ARE UNDISPUTED. THE POLICE LIED ABOUT THE FACTS OF THE CASE. THE POLICE ARRIVED AT THE M&M MART WITHOUT EMERGENCY LIGHTS OR SIREN ACTIVATED. THE RED TRUCK WAS PARKED COMPLETELY WITHIN A PARKING SPACE AT THE FOOD MART. THERE WERE TWO OCCUPANTS SITTING IN THE RED TRUCK WHEN THE POLICE VEHICLE BLOCKED IT IN. THE POLICE DID NOT KNOW THE IDENTITY OF THE PERSON WHO WAS SITTING IN THE DRIVER'S SEAT AND WHO FLED FROM THE TRUCK. THE TWO PEOPLE INVOLVED WITH THE TRUCK WHEN THE POLICE ARRIVED DID NOT INCLUDE THE HISPANIC MALE WHO ALLEGEDLY HAD A GUN POINTED AT HIM. THE EVENTS ALL OCCURED DURING THE DAYTIME.

ACCORDING THE SAPD REPORT # SAPD 20229882 BY OFFICER DAVID BELOW #0400, REGARDING THE DECEMBER 3, 2020 INCIDENT INVOLVED THREE SAPD OFFICERS BODY CAMERAS: DAVID BELOW, JAMES VAN KIRK, AND LEVON HARRISON. THE FOLLOWING FACTS ARE TAKEN FROM THESE BODY CAMS. BELOW AND VAN KIRK WERE RIDING TOGETHER IN A POLICE VEHICLE. BELOW SAID THEY WERE LOOKING FOR A BLACK MALE, IN A BLACK HOODIE, IN A RED TRUCK WHO PULLED A GUN ON A "HISPANIC DUDE." SEE BELOW VIDEO AT 15:25:30. BELOW SAID "IF ITS NOT PARKED IN FRONT OF THE M&M MART, ITS PROBABLY ON SANDERS." SEE BELOW VIDEO AT 15:26:30. BELOW SAID "OH IS THAT A FUCKING TRUCK? OH DUDE ITS STILL HERE." AT THAT POINT BELOW DROVE TO THE M&M MART AND PARKED IN FRONT OF THE TRUCK BLOCKING IT IN AND PREVENTING THE OCCUPANTS FROM LEAVING FREELY.

I. WHETHER REASONABLE SUSPICION JUSTIFIED THE SEIZURE

"THE SEMINAL SUPREME COURT CASE THAT CONTROLS THE COURT'S FOURTH AMENDMENT ANALYSIS IS TERRY V. OHIO, [392 U.S. 1 (1968)]." UNITED STATES V. MCKINNEY, 980 F.3RD 485 WHENEVER A POLICE OFFICER ACCOSTS AN INDIVIDUAL AND RESTRAINS HIS FREEDOM TO WALK AWAY, HE HAS SEIZED THAT PERSON. EVEN IF ARTICULATED REASONS FAIL, THE TEST TO BE APPLIED REGARDING WHETHER A STOP WAS JUSTIFIED IS OBJECTIVE, MEANING IT DOES NOT DEPEND ON WHAT THE OFFICERS CLAIMED AS REASONS. AN INVESTIGATIVE STOP ITSELF MUST BE LAWFUL. UNITED STATES V. WALI, 811 F. SUPP. 2d 1276 (N.D. TEX. 2011). "THAT CASE HOLDS THAT AN INVESTIGATORY STOP IS PERMISSIBLE WHEN THE POLICE OFFICER HAS REASONABLE SUSPICION THAT CRIMINAL ACTIVITY MAY BE AFOOT." Id., CITING TERRY, 392 U.S. AT 30. FIFTH CIRCUIT AUTHORITY, INCLUDING ROCH AND MARTINEZ, HOWEVER HOLDS THAT AN INVESTIGATORY STOP IS PERMISSIBLE ONLY WHEN THE POLICE OFFICER HAS REASONABLE SUSPICION THAT 'CRIMINAL ACTIVITY IS AFOOT.'" WALI CITING UNITED STATES V. MARTINEZ 486 F.3RD 855, 859 (5th Cir. 2007); UNITED STATES V. ROCH, 5 F.3d 894, 897 (5th Cir. 1993). "ALTHOUGH THE CHOSEN LANGUAGE IN TERRY CONTRASTS WITH THE CHOSEN LANGUAGE IN ROCH AND MARTINEZ, THE OUTCOME IS THE SAME FOR THE PURPOSES OF THE COURT'S ANALYSIS." WALI, SUPRA "AS DISCUSSED ABOVE, REASONABLE SUSPICION AS TO CRIMINAL ACTIVITY CAN EXIST ONLY WHEN THE POLICE OFFICER HAS AN INDIPENDENT BASIS OF BELIEF, RISING ABOVE THE LEVEL OF A "MERE HUNCH OR UNPARTICULARIZED" SUSPICION, THAT ALL ELEMENTS NECESSARY FOR A CRIMINAL ACT ARE PRESENT Id. CITING UNITED STATES V. JAQUEZ F.3d 338, 340-341 (5th Cir. 2005) THE DEFENDANT ALSO IN THIS CASE WAS STOPPED ONLY BECAUSE HE WAS DRIVING A RED CAR IN THE VICINITY OF AN INCIDENT REPORTED FIFTEEN MINUTES EARLIER IN AN AREA KNOWN FOR ITS HIGH CRIME RATE. THE OFFICER LIKE BELOW DID NOT HAVE REASONABLE SUSPICION TO MAKE AN INVESTIGATIVE STOP AND THAT THE STOP AND SUBSEQUENT SEARCH WERE IN VIOLATION OF THE FOURTH AMENDMENT. THE SPARSE AND BROADLY GENERIC INFORMATION PROVIDED BY THE DISPATCHER, WITHOUT MORE WAS INSUFFICIENT TO SUPPORT A DETERMINATION OF REASONABLE SUSPICION AS REQUIRED IN TERRY." WITHOUT SOME FORM OF INDIPENDENT BASIS OF BELIEF ARISING OUT OF EITHER A REPORTED TIP, A POLICE -D

OFFICER'S VISUAL OBSERVATION, OR ANOTHER SOURCE - TO ESTABLISH THAT ALL NECESSARY ELEMENTS TO A CRIMINAL ACTIVITY ARE PRESENT, THERE CAN BE NO REASONABLE SUSPICION JUSTIFYING A WARRANTLESS SEARCH OR SEIZURE." WALI, SUPRA. "WITHOUT SUCH A BASIS, THERE IS NO REASONABLE SUSPICION THAT CRIMINAL ACTIVITY MAYBE AFOOT, AND THERE IS NO REASONABLE SUSPICION THAT CRIMINAL ACTIVITY IS AFOOT." (EMPHASIS IN ORIGINAL). "EVEN IF THERE IS A PRACTICAL DISTINCTION BETWEEN THE TWO STANDARDS, THE COURT REACHES THE SAME RESULT BECAUSE THE EVIDENCE PROVIDED BY THE GOVERNMENT IS TOO TENUOUS, WITHOUT FURTHER INQUIRY, TO SHOW THAT CRIMINAL ACTIVITY "WAS" AFOOT OR "MAY HAVE BEEN" AFOOT." Id. NOTHING WAS DONE BY OFFICER BELOW PRIOR TO THE STOP TO SHOW THAT THE TIP WAS RELIABLE IN ITS ASSERTION OF ILLEGALITY.

IN THIS CASE, THE 911 CALLER PROVIDED INFORMATION ON THE COLOR OF THE VEHICLE "A RED TRUCK" AND THE OCCUPANT BEING A BLACK MALE IN A BLACK HOODIE. BODY CAM VIDEO SHOWS THAT OFFICER BELOW OBSERVED A RED TRUCK IN THE VICINITY DESCRIBED BY THE 911 CALLER FROM DOWN THE STREET AT THE FOUR WAY STOP SIGN A BLOCK AWAY. ACCORDINGLY, THE ONLY VERIFIED INFORMATION THAT OFFICER BELOW HAD AT THE TIME HE EFFECTED THE SEIZURE OF THE TRUCK CONCERNED THE COLOR OF THE TRUCK AND PHYSICAL PROXIMITY TO MIM FOOD MART. NOTABLY ABSENT HOWEVER, WAS ANY VERIFIED INFORMATION THAT "CRIMINAL ACTIVITY WAS AFOOT." (MARTINEZ, SUPRA, 486 F.3d AT 862; JAQUEZ, SUPRA 421 F.3d AT 340-41) SEE BELOW VIDEO AT 15:26:40 VAN KIRK TELLS BELOW, "WELL WE DON'T HAVE A COMPLAINANT OR ANYTHING." BELOW RESPONDS, "YEAH BUT WE'RE STILL GONNA FIND OUT WHAT THE FUCKS GOING ON HERE." SEE BELOW VIDEO AT 15:29:15 AND 15:30:03, VAN KIRK REITERATES A SECOND AND THIRD TIME "WE DON'T HAVE A COMPLAINANT." SEE BELOW VIDEO AT 15:31:48 BELOW RETRIEVES DEFENDANT'S NAME FROM HIS PERSONAL PHONE. SEE BELOW VIDEO AT 15:32:48 BELOW TELLS AN UNKNOWN BLACK MALE "MMHHMM, IT'S ALRIGHT THOUGH, HE'S GONNA GET HIS." REFERRING TO THE DEFENDANT. SEE BELOW VIDEO AT 15:35:45, VAN KIRK TELLS BELOW "WE DON'T HAVE ANYTHING. WE HAVE A REFUSED PERSON WHO SAID THAT A BLACK MALE PULLED A GUN

on a Hispanic male who left. We didn't see any of those things. What the f*%k do you wanna do? Its a parked car that somebody left. You have no authority to check anybodies anything. You have no authority to run after anybody, or go find somebody, or kick anybodies door down at 316 Cactus. We don't have anything. We don't have a crime, we don't have a victim. We didn't tell him he was stopped. We didn't have a light on. He got out of his car and he ran." Below asked if they should tow the truck, and Van Kirk said, "I am not going to tow it either. I have no authority to do it. Its on private property." Officer Below did not see a Hispanic or Black male wearing a black hoodie or anything that resembled the criminal activity that the 911 caller claimed in his tip, except the color of a truck parked at the M&M Food Mart. There was no indication that anything illegal ever happened. "An officer's mere hunch or unparticularized suspicion is not sufficient; rather, a minimal level of objective justification for the stop must be present." Wali, supra, citing Jaquez, supra, 421 F.3d at 340-41. Prior to the stop, there was nothing about the truck to indicate that there was a Black male wearing a black hoodie inside it or that there was a weapon inside the truck. To make such a determination, further inquiry would have been necessary, inquiry that did not transpire until after Below blocked the truck and preventing the occupants from leaving freely and seeing the driver flee. However, after acquired evidence or information cannot be used to establish reasonable suspicion for the initial stop.

This case is a classic example of "putting the cart before the horse." In this instance, Officer Below quite literally jumped the gun. While a police officer's right to effect a Terry stop necessarily authorizes the use of force to secure a suspect, such a stop must be predicated on reasonable suspicion of criminal activity. See United States v. Campbell, 178 F.3d 345, 348-49 (5th Cir. 1999)

IN THE REVIEW OF VIDEO EVIDENCE, THE COURT SAW NOTHING TO INDICATE THAT THE OCCUPANTS OF THE TRUCK POSED AN OBSERVABLE THREAT TO ANYONE. THE DRIVER DID GET STARTLED BY THE WAY THE OFFICERS CUT OFF THE ROAD IN THEIR APPROACH AND RAN AWAY, BUT THAT CANNOT BE REASONABLY INTERPRETED THAT A CRIME WAS BEING COMMITTED OR HAD BEEN COMMITTED. AS THERE WAS NO REASONABLE SUSPICION TO DETAIN THE OCCUPANTS OF THE TRUCK, NO AUTHORITY EXISTED TO EFFECT A TERRY STOP. FOR EXAMPLE, IF BELOW HAD OBSERVED A BLACK MALE IN A BLACK HOODIE ACTUALLY HOLDING A GUN OR WHAT APPEARED TO BE A WEAPON, OR A HISPANIC MALE, INSTEAD OF JUST A RED TRUCK AT THE M&M FOOD MART, HIS APPROACH WOULD HAVE BEEN JUSTIFIED.

IN THE CASE AT BAR, AS IN WALI, SUPRA, THE POLICE CONDUCT RESULTING IN THE SEIZURE OF THE TRUCK AND WEAPON "IS AT ODDS WITH THE TEACHINGS OF" FLORIDA V. J.L. 529 U.S. 266 (2000), AND ROCH. WALI, SUPRA. "THE FACTS OF THIS CASE ARE NEARLY IDENTICLE TO THE FACTS OF J.L., AND THERE IS "NO APPRECIABLE DISTINCTION" BETWEEN THESE FACTS AND THOSE OF ROCH WITH RESPECT TO THE SEIZURE." WALI, SUPRA. "IN THIS CASE, LIKE IN J.L., THE 911 CALLER GAVE A DESCRIPTION AS TO THE SUSPECT'S AGE, RACE, CLOTHING, AND LOCATION." WALI, SUPRA. NONE OF THE IDENTIFYING INFORMATION REGARDING THE CALLER WAS KNOWN TO OFFICER BELOW AT THE TIME HE SEIZED THE TRUCK. "THE CALLERS COMPLAINT IN THIS CASE WAS THE FUNCTIONAL EQUIVALENT OF AN ANONYMOUS TIP." Id. "ACCORDINGLY, THE OUTCOME OF THIS CASE NECESSARILY ALIGNS WITH THE OUTCOME IN J.L." Id.

IN ROCH, THE FIFTH CIRCUIT HELD "A TIP FROM A KNOWN INFORMANT, WHO HAD PROVIDED RELIABLE INFORMATION IN THE PAST, DID NOT GIVE POLICE OFFICERS REASONABLE SUSPICION TO EFFECT AN INVESTIGATORY STOP. WALI, SUPRA (EMPHASIS IN ORIGINAL). "THE TIPSTER TOLD POLICE THAT THE SUSPECT WAS IN POSSESSION OF FIREARMS AND DESCRIBED THE SUSPECT AS A BLONDE, WHITE MALE WITH BODY TATTOOS, AND FURTHER STATED THAT THE SUSPECT DROVE AN ORANGE AN WHITE PICK UP TRUCK AND WAS STAYING AT A LOCAL MOTEL ROOM WITH HIS GIRLFRIEND." Id. "POLICE OFFICERS SHORTLY AFTER SET UP SURVEILLANCE ON THE LOCAL MOTEL ROOM AND EVENTUALLY SAW AN ORANGE AND WHITE PICKUP TRUCK PULL UP OUT OF THE PARKING LOT WITH A MALE

officers moved in immediately." Id. "A Houston police officer 'drew down' on the suspect and ordered him to the ground." Id. "The suspect was then handcuffed, and a federal agent observed the butt of a ▮▮▮ firearm sticking out of a bag in the truck." Id. citing Roch, 5 F.3d at 896.

In the case at bar as in Roch, "the police officers in Roch actually had more descriptive information to work with" than Officer Below did in this case, "and that information came from a known informant who had provided reliable information to officers in the past, unlike the 911 caller in this case." Wali, supra, citing Roch, supra. "In Roch, the informant gave police officers a description of race and other identifying personal features including blonde hair and body tattoos." Id. "The informant further provided officers with a vehicle description, a location, and notification that the suspect would be accompanied by his girlfriend." Id. "The officers were able to verify the informant's reported information identifying the suspect from their surveillance of the local motel." Id. "The Fifth Circuit nevertheless held in Roch that all of this was insufficient to amount to 'reasonable suspicion' and justify an investigatory stop, principally because the officers did not observe any criminal activity from their surveillance." Id.

In the case at bar, as was held in the above cited cases, the court should determine the 911 caller's complaint in this case was the functional equivalent of an anonymous tip. As the above cited cases, this court simply cannot square the search and seizure of the truck and the weapon in this case with the holdings of J.L. and Roch. Although the type of approach used by Officer Below appears to occur with some frequency with respect to some officers of the San Antonio Police Department, such an approach is clearly contrary to the Supreme Court and Fifth Circuit precedent. Allowing this conduct to stand would eviscerate the holdings of J.L. and Roch and render them bereft of any legal significance. Roch continues to enjoy vitality and widespread application in this circuit. See, e.g. United States v. Gomez, 623 F.3d 265, 270 n.2 (5th Cir. 2010); Martinez, 486 F.3d 855, 859-64;

BASIS TO DEPART FROM THIS CLEARLY ESTABLISHED LAW.

THE CRITICAL ISSUE IN THIS CASE, AS WAS THE ISSUE IN ROCH, IS WHETHER OFFICER BELOW HAD REASONABLE SUSPICION TO SEIZE THE TRUCK AND ITS OCCUPANTS FOR ILLEGALLY POSSESSING A FIREARM. "EVEN AN INVESTIGATORY STOP WOULD BE PROPER ONLY IF BASED ON REASONABLE SUSPICION THAT CRIMINAL ACTIVITY IS AFOOT." WALI, SUPRA, CITING ROCH AND TERRY V. OHIO, BOTH SUPRA. " IF AN OFFICER OBSERVES SUSPICIOUS ACTIVITY, THE FOURTH AMENDMENT REQUIREMENT IS SATISFIED IF THERE IS A MINIMAL LEVEL OF OBJECTIVE JUSTIFICATION FOR THE OFFICER'S ACTIONS, MEASURED IN THE LIGHT OF THE TOTALITY OF THE CIRCUMSTANCES.'" Id. CITING UNITED STATES V. RIDEAU, 969 F.2d 1572 (5th CIR. 1999).

HERE OFFICER BELOW DID NOT OBSERVE ANYTHING OTHER THAN A RED TRUCK PARKED AT THE M&M FOOD MART. OFFICER BELOW DID NOT OBSERVE A CRIMINAL OFFENSE BEING COMMITTED OR ANY QUESTIONABLE BEHAVIOR BEFORE HE MADE THE INVESTIGATORY STOP IN FRONT OF THE TRUCK BLOCKING IT IN SO THE OCCUPANTS OF THE TRUCK COULD NOT LEAVE FREELY. "THE REASONABLE SUSPICION REQUIRED FOR EFFECTING A SEIZURE, HOWEVER, DOES NOT ALWAYS REQUIRE PERSONAL OBSERVATION." WALI, SUPRA. " IT CAN BE BASED ON INFORMATION PROVIDED BY A TIPSTER IF THE INFORMATION POSSESSES AN INDICIA OF RELIABILITY." Id. " RELEVANT FACTORS TO CONSIDER WITH RESPECT TO WHETHER AN INDICIA OF RELIABILITY IS PRESENT INCLUDE THE CREDIBILITY AND RELIABILITY OF THE INFORMANT, THE SPECIFICITY OF INFORMATION CONTAINED IN THE TIP OR REPORT, THE EXTENT TO WHICH THE INFORMATION IN THE TIP OR REPORT CAN BE VERIFIED BY OFFICERS IN THE FIELD, AND WHETHER THE TIP OR REPORT CONCERNS ACTIVE OR RECENT ACTIVITY, OR HAS INSTEAD GONE STALE." Id., CITING MARTINEZ, SUPRA, 486 F.3d AT 861 (QUOTING UNITED STATES V. GONZALEZ, 190 F.3d 668, 672 (5th CIR. 1999)).

## II. ABANDONMENT

ABANDONMENT IS PRIMARILY A QUESTION OF INTENT, WHICH MAY BE INFERRED FROM OBJECTIVE FACTS, TO DETERMINE IF THE SUSPECT VOLUNTARILY DISCARDED OR RELINQUISHED INTEREST IN THE PROPERTY IN QUESTION. SEE BELOW VIDEO AT 16:07:33 THE POLICE DID NOT LOOK INSIDE THE M&M FOOD MART OR ADJACENT HOUSES FOR THE DEFENDANT. THE POLICE DID NOT ASK THE FOOD MART OWNER/MANAGER IF THE DEFENDANT HAD PERMISSION TO LEAVE THE TRUCK PARKED IN THE FOOD MART PARKING LOT. THE FOOD MART OWNER/MANAGER NEVER TOLD THE POLICE THE TRUCK NEEDED TO BE MOVED FROM THE FOOD MART PARKING LOT. THE POLICE

ACTIVATED THE CELL PHONE INSIDE THE TRUCK AND TAPPED ON THE FACEBOOK APP BEFORE CLAIMING THAT IT WAS THE DEFENDANT'S PROFILE THAT HE FOUND IN THE CELL PHONE. UNITED STATES V. SCRIVNER, 680 F.2d 1099 (5th CIR. 1982). IN SCRIVNER, IT WAS THE EARLY MORNING HOUR WHEN THE SUSPECT LEFT TWO LOADED TRUCKS, LEASED BY THE SUSPECT, UNLOCKED AND WITH KEYS IN THE IGNITION, ON WAREHOUSE PREMISES ALSO LEASED BY THE SUSPECT. Id. THE FIFTH CIRCUIT HELD THAT THESE FACTS MAY BE CARELESS AND IMPRUDENT, BUT SUCH FACTS DO NOT "SUPPORT A CONCLUSION THAT [THE SUSPECT] HAS CAST THE VEHICLES ASIDE, RELINQUISHING HIS INTEREST IN THEM." Id. THE FIFTH CIRCUIT DISTINGUISHED THESE FACTS FROM THOSE IN CONFIRMED ABANDONMENT CASES TO INCLUDE PERSONS LEAVING BRIEFCASES ON A PUBLIC SIDEWALK, AIRPLANE LEFT ON TAXIWAY OF AIRPORT, SHIPS LEFT BY CREWS WHEN IN TROUBLE AND AGROUND OR ON HIGH SEAS, AND UNLOCKED TRAILER LEFT IN REST AREA BESIDE PUBLIC HIGHWAY. SEE UNITED STATES V. COLBERT, 474 F.2d 174 (5th CIR. 1973) (EN BANC); UNITED STATES V. HUNTER, 647 F.2d 566 (5th CIR. 1981); UNITED STATES V. EDWARDS, 644 F.2d 1 (5th CIR. 1981); UNITED STATES V. BYERS, 600 F.2d 1130 (5th CIR. 1979); UNITED STATES V. WILLIAMS, 569 F.2d 823 (5th CIR. 1978).

IN THE CASE AT BAR, THE TRUCK WAS PARKED DURING DAYLIGHT HOURS IN A CLEARLY MARKED PARKING SPACE AT THE FOOD MART. THERE WAS NO CRIME BEING COMMITTED OR ANYTHING ILLEGAL TO INVESTIGATE EVEN AFTER ONE OF THE OCCUPANTS FLED FROM THE CAR. THE FOOD MART OWNER/MANAGER WAS PRESENT WHEN THE POLICE ARRIVED AND DID NOT TELL THE POLICE THE TRUCK WAS ~~PARKED~~ IMPROPERLY PARKED IN THE PARKING LOT OR THAT HE WANTED THE TRUCK MOVED FROM THE PARKING LOT. THE KEYS WERE NOT IN THE IGNITION. ALL OF THE DOORS WERE SECURED. THERE IS NO PROOF THAT THE DEFENDANT IS THE PERSON WHO RAN FROM THE TRUCK WHEN THE POLICE ARRIVED. AS IN SCRIVNER, THESE FACTS MAY BE CARELESS AND IMPRUDENT, BUT SUCH FACTS DO NOT SUPPORT A CONCLUSION THAT THE DEFENDANT CAST THE TRUCK ASIDE, THEREBY RELINQUISHING HIS INTEREST IN THE TRUCK. Additionally, THERE IS NO SUPPORT FOR A CONCLUSION THAT THE DEFENDANT ABANDONED HIS PHONE INSIDE THE TRUCK. MERELY BECAUSE AN UNKNOWN PERSON RAN FROM THE TRUCK DOES NOT LEAD TO THE CONCLUSION THAT THE DEFENDANT ABANDONED HIS PHONE INSIDE TRUCK ESPECIALLY GIVEN THE POLICE AT THE SCENE SAID

HE SAID TWO PEOPLE INSIDE THE TRUCK AT ON POINT. SEE BELOW VIDEO AT 16:11:44 BELOW ASKED "WHO WAS YOUR BROTHER WITH? THERE WAS TWO OF THEM IN THE CAR. NO IDEA?" A CONCLUSION OF ABANDONMENT UNDER THESE FACTS WOULD MEAN THAT ANYONE WHO IS GIVEN A RIDE TO A STORE, LEAVES THERE PHONE IN THE CAR WHILE INSIDE THE STORE, AND THE DRIVER LATER LEAVES THE CAR, MEANS THE PHONE OWNER ABANDONED THE PHONE AND ITS NOW SUBJECT TO SEARCH BY THE POLICE. SUCH A CONCLUSION IS NOT BASED UPON ANY CASELAW REGARDING ABANDONMENT.

WHAT IS MOST CONCERNING ABOUT THIS CASE IS THE LYING BY THE POLICE ABOUT THE FACTS OF THE CASE. OFFICER BELOW CLAIMED THAT THE SUSPECT WHO FLED FROM THE TRUCK "IS KNOWN TO OFFICERS AS A NARCOTICS DEALER IN THE AREA" AND "ALWAYS FLEES FROM POLICE SOMETIMES ON FOOT, IN A VEHICLE OR BOTH." Id. BELOW ADMITTED AT THE SUPPRESSION HEARING THAT HE COULD NOT IDENTIFY THE PERSON WHO FLED. SEE BELOW VIDEO AT 15:25:30 BELOW SAID "IF ITS NOT PARKED IN FRONT OF m&m FOOD MART, ITS PROBABLY ON SANDERS." BELOW ADMITTED AT THE SUPPRESSION HEARING THAT PRIOR TO ARRIVING AT THE m&m FOOD MART, THAT HE HAD "SPECULATION" THAT THE DEFENDANT WAS THE SUSPECT INVOLVED AND THAT "HE MIGHT BE ON SANDERS." BELOW CLAIMED THE SUSPECT "LEFT THE WINDOWS AND DOORS TO THE VEHICLE OPEN AND UNSECURED WHEN HE FLED." ALL OF THE DOORS TO THE TRUCK WERE CLOSED. BELOW CLAIMED THE SUSPECT "LEFT HIS CELL PHONE, WHICH HE WAS USING AND WAS IN HIS HANDS WHEN OFFICERS ARRIVED ON THE DRIVER'S SEAT." Id. BELOW COULD NOT SEE THESE THINGS AS THE SUN WAS IN BELOWS' EYES WHEN HE ARRIVED AT THE FOOD MART. BELOW CLAIMED THE "PHONE WAS OPEN TO [SUSPECT'S] PERSONAL FACEBOOK PAGE." Id. BELOW ADMITTED AT THE HEARING THAT HE PULLED THE PHONE FROM UNDER THE CENTER CONSOLE AND ACTIVATED THE PHONE AND THE FACEBOOK BEFORE FINDING WHAT HE CLAIMED WAS THE DEFENDANTS INFORMATION. BELOW ALSO ADMITTED TO LYING TO ANOTHER OFFICER AT THE SCENE ABOUT FINDING THE PHONE ON THE DRIVER'S SEAT AND OPEN TO THE DEFENDANT'S FACEBOOK PAGE. BELOW CLAIMED THE "VEHICLE WAS LEFT PARKED STICKING OUT INTO THE PUBLIC ROADWAY AND BLOCKING THE ENTIRETY OF A PUBLIC SIDEWALK." BELOW ADMITTED AT THE HEARING AND VIDEO ESTABLISHED THAT THE TRUCK WAS NOT IN THE

roadway. Below claimed, "An inventory of the vehicle was performed due to apparently valuable property left in plain view." Id. It is noteworthy that the weapon discovered by Below during this search of the truck was the basis for a count in the indictment which was later dismissed by the government after the defendant filed his motion to suppress. What is also telling is that, during the hearing, Below attempted to justify his search of the truck as a protective sweep but could not state any fact at all that would even remotely establish an articuable and reasonable suspicion authorizing such a search. Indeed, the government did not even attempt to argue at the hearing that a protective sweep justified the search of the truck. How should this type of police misconduct be considered by the court in ruling on the suppression motion?

A violation of 18 U.S.C. 1001(a) occurs if a person knowingly and willfully (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or misrepresentation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the government of the United States. See United States v. Moyer, 674 F.3d 192 (3rd Cir. 2012); United States v. Brackenridge, 782 F.2d 1317 (5th Cir. 1986). "In looking at the language of the statute, [18 U.S.C.] 1519 'rather plainly criminalizes the conduct of an individual who (1) knowingly (2) makes a false entry in a report or document (3) with the intent to impede or influence a federal investigation.'" Moyer, supra. "A person of ordinary intelligence would understand a police report to be a 'record' or 'document,' and also read the language 'any matter within the jurisdiction of [a] department... of the United States' to include an FBI investigation."

In United States v. Berry, 468 F.Supp. 2d 870 (N.D. Tex. 2006), the district judge was confronted with a situation very similar to the case at bar. A search warrant affidavit was tainted by evidence that was earlier obtained in violation of the Fourth Amendment. Id. The judge held that the government "is attempting to use the good faith exception in United States v. Leon after the fact to justify the admission of evidence ultimately obtained through an initial warrantless and unlawful search...." Id. The judge further held that, "if the court were to apply the good faith exception here, any police misconduct relating to a warrantless search under the circumstances presented by this case could be excused, which would make a mockery of the Fourth Amendment." The Appellant in the case at bar respectfully requests the court to grant the motion to suppress for the reasons stated above. Police misconduct such as what occured in this case should not be countenanced by the court.

### III. THE ARREST WARRANT

A Fourth Amendment violation occurs if a probable cause affidavit in support of an arrest warrant included misrepresentations or omissions. Franks v. Delaware, 483 U.S. 154 (1978); Terwilliger v. Reyna, 4 F.4th 270 (5th Cir. 2021) ("the Franks case arose in the context of a search warrant but its rationale extend to arrest warrants."). Terwilliger stated if the warrant affidavit contains materially false statements or omissions, "Franks requires the court to determine whether, excluding such errors and omissions, the remaining 'corrected affidavit' establishes probable cause for the warrants issuance." (citing Winfrey v. Rogers, 882 F.3d 187 (5th Cir. 2018). Citing Franks, supra. "The warrant requirement is meant 'to allow the magistrate to make an indipendent evaluation of the matter.'" Id. "It requires affiants 'to set particular facts and circumstances underlying the existence of probable cause, including those that concern the reliability of the information and the credibility of the source to avoid 'deliberately or reckless false statements.'" Id.

The critical inquiry is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that

illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471 (1963). To aid in this inquiry, the Fifth Circuit has established guidelines to determine whether the connection between the illegal arrest and the discovery of the evidence has become so attenuated as to dissipate the taint and insure the admissibility of the evidence." United States v. Tookes, 633 F.2d 712 (5th Cir. 1980). Among these factors are: (1) the proximity of the illegal arrest to the procurement of the challenged evidence; (2) the presence of intervening circumstances between the arrest and the discovery of the evidence; and (3) the circumstances under which the arrest was made." Id. citing United States v. Namer, 680 F.2d 1088, 1094 (5th Cir. 1982)." If a search warrant affidavit contains a false, material statement made intentionally or with reckless disregard for the truth, the reviewing court must excise the offensive language from the affidavit and determine whether the remaining portion establishes probable cause."

The court in Leon "emphasized that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." Reilly, supra, citing Leon; Franks ("evidence seized pursuant to a warrant based on materially false and misleading information is inadmissible at trial.") The court in Reilly stated that, "We have previously held that recklessness may be inferred when omitted information was clearly critical to assessing the legality of a search." Id. When evidence is obtained as a result of illegal police conduct, not only must that evidence be suppressed, but also all evidence that is the fruit of the illegal conduct. Id. Cf. Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed. 2d 697. To hold that officer may act on his own, unchecked discretion upon information too vague and from too untested a source to permit a judicial officer to accept it as probable cause for an arrest warrant, would subvert this fundamental policy. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before court but that it shall not be used at all. Id. The Supreme Court's decision in Franks v. Delaware outlines the consequences flowing from a misrepresentation in an application for a search or arrest warrant. The court held that if a "defendant makes a

substancial preliminary showing that a false statement knowing and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause...(and that if) with the affidavit's false material set to one side, the affidavits remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Franks, supra.

In the case at bar, the December 4, 2020 Agent Beach affidavit in support of the arrest warrant for the defendant being in possession of a weapon contained the following false statemen (1) SAPD arrived at the food mart and saw a black male, identified as Tsatenawa, as the only occupant of the vehicle seated in the driver's seat- there was two occupants in the vehicle- there is no evidence the person was the defendant; (2) as SAPD arrived, Tsatenawa exited the vehicle and fled leaving the vehicle unattended and unsecured with windows and door open- there is no evidence the person was the defendant and the body cams clearly show only one window was open and no doors were open; (3) Tsatenawa left his cell phone open to his personal facebook and was seen on his phone before he ran from the area there is no evidence that the person was the defendant and the body cam shows the officer manipulated the cell phone to a facebook page, and there's no evidence that the facebook was the defendants; (4) the vehicle was left in park blocking the roadway and sidewalk- the truck was not blocking the roadway; (5) during an inventory, the police found a gun within arms reach of the driver; and (6) Tsatenawa's brother arrived at the location and stated he gave the keys to his brother, the night before and allowed him to take the vehicle- there is no evidence the person was the defendant and his brother repeatedly told the officer that he did not give the truck to the defendant and did not know how the defendant obtained the truck or the keys to the truck. Without these facts, the affidavit merely state an unidentified black male at the food mart in a red pickup truck pointed a firearm at another person at a location and a century arms pistol was found in the truck. This is insufficient to establish probable cause that the defendant possessed the pistol.

Under the Fourth Amendment, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States District Court, Eastern District of Michigan, 407 U.S. 297, 313 (1972). Warrantless entry of a home is presumptively invalid under the Fourth Amendment. Payton v. New York, 445 U.S. 573, 586 (1980). When a suspect is arrested in the suspect's home, "a 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie, U.S. 325 (1990) it is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. "Incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Id. "Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id.

If a person is arrested in a vehicle, "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332 (2009) "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." Id. In determining the Fourth Amendment scope of a search incident to arrest, the court stated that, "the right without a search warrant contemporaneously to search person lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." Chimel v. California, 395 U.S. 752 (1969). "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape." Id.

"and the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule." Id. "There is no comparable justification, however, for routinely searching any room other than in which an arrest occurs or, for that matter, for searching through all the desk drawers or other closed or concealed area in that room itself." Id. If the search, however, goes far beyond the arrestees "person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him... there was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area." United States v. United States District Court, Eastern Michigan, 407 U.S. 297 313 (1972). A protective sweep would bring within police purview virtually all personal possessions within the house not hidden from view in a small enclosed space. Police officers searching for potential ambushers might enter every room including basements and attics, open up closets, lockers, chests, wardrobes, and cars, and peer under beds and behind furniture. The officers will view letters, documents, and personal effects that are on tables or desks or are visible inside open drawers; books, records, tapes, and pictures on shelves, and clothing, medicines, and other paraphernalia not carefully stored in dresser drawers or bathroom cupboards. While perhaps not a "full-blown" or "top to bottom" search, ante at 336, a protective sweep is much closer to it than a limited "pat-down" for weapons or a "frisk" of an automobile ante at 332) in light of the special sanctity of a private residence and the highly intrusive nature of a protective sweep, I firmly believe that police officers must have probable cause to fear that their personal safety is threatened by a hidden confederate of an arrestee before they may sweep through the entire home. However high the governments interest in protecting its officers, there must be some legitimate purpose for which officers secure themselves. A search that does nothing more than allow the officers safely to remain in a place where they have no reason or right to be will of necessity be unreasonable in all but the rarest circumstance. The officers had no reason to enter the apartment once the defendant was already arrested in handcuffs in the back of the patrol car in the parking lot. An empty apartment serves no investigative purpose where the entire focus of the investigation was to serve an arrest warrant, inasmuch the sweep serve no purpose other

than to secure a home in which the officers had nothing to, it was unreasonable under and in violation of the Fourth Amendment.

In the case at bar, the protective sweep of the apartment after the defendant was arrested in his parked car in the parking lot went far beyond the defendant's person and area in the car where he might have obtained either a weapon or evidence that could be used against him. There was no constitutional justification, in the absence of a search warrant for the apartment, for extending the search and protective sweep, beyond the car in the parking lot to the apartment. The scope of the search away from the parked car in the parking lot to include the apartment was unreasonable under the Fourth Amendment.

Additionally, the defendant was in custody, so the warrantless apartment search should not have been undertaken without a warrant given there were no exigencies of the situation to render such a warrantless search objectively reasonable. Because the court has shown neither exigent circumstances to immediately enter defendants' house nor an unforeseen danger that arose once they arrested the defendant, there is no excuse for the failure to obtain a warrant to search for a dangerous person believed to be in the apartment. United States v. Morales 171 F.3d 978 (5th Cir. 1999) "Factors that may be considered in determining whether exigent circumstances exist include: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) information that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." Id. Even if the warrant requirement is inapplicable, there is no justification for relaxing the probable cause standard. If something less than probable cause is sufficient, respondent argues that it is no less than individualized suspicion - specific, articulable facts supporting a reasonable belief that there are persons on the premises who are a threat to the officers. There were no such specific, articulable facts to justify the warrantless search of the

apartment. Possessing an arrest, the officers were entitled to search anywhere the actual arrest took place; being the parking lot near the defendants vehicle. Once he was found, however, the search for him was over and there was no longer particular justification for entering the apartment and any rooms that had not yet been searched. That strategy is sensible if one wishes to search the apartment, but it is a surprising choice for an officer worried about safety, who need not risk entering the apartment at all.

## V. THE SEARCH WARRANT

A reviewing court looks to the totality of the circumstances to determine if probable cause existed to support issuance of a warrant. Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause exists if, under the totality of the circumstances, "there is a fair probability that contraband or evidence will be found in a particular place." United States v. Newman, 472 F.3d 233, 237 (5th Cir. 2006) quoting Gates, 462 U.S. at 238. Probable cause "means something more than mere suspicion." United States v. Froman, 335 F.3d 882, 889 (5th Cir. 2004), quoting United States v. Gordon, 580 F.2d 827, 832-33 (5th Cir. 1978). "Probable cause requires the existence of facts sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and the person to be arrested (or searched) committed it." Froman, 355 F.3d at 889.

In the case at bar, the warrant affidavit states SAPD was executing the above invalid arrest warrant on the defendant after the defendant exited an apartment and entered a car in a parking lot an unknown distance from the apartment. The defendant fled the car and was arrested with "a short distance." The affidavit makes the general conclusion without stating any facts that the defendant made an "immediate attempt to flee back to the apartment." The affidavit did not state law enforcement stated, "My gut tells me there's contraband inside. But maybe there isn't shit in there -- I don't know -- I think there's something in that apartment." This is insufficient evidence to provide probable cause to believe weapons or drugs were in the apartment.

WHEREFORE, PREMISES CONSIDERED, THE DEFENDANT RESPECTFULLY REQUEST THE COURT AFTER CONSIDERING THE POINTS RAISED IN THIS RESPONSE TO THE ANDERS BRIEF ~~[struck]~~ SUPPRESS ALL EVIDENCE.

RESPECTFULLY SUBMITTED,

ASIA TSATENAWA

ASIA ISATENAWA 96844-280
THREE RIVERS FEDERAL CORRECTIONAL FACILITY
P.O. Box 4200
THREE RIVERS, TX 78071

LEGAL MAIL

96844-280
Fifth Circ U S Appeals Court
600 S Maestri Pl
NEW Orleans, LA 70130-3408
United States

F. EDWARD HEBERT BLDG.

FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 4000
THREE RIVERS, TEXAS 78071 DATE 7/11/24

THE ENCLOSED LETTER WAS PROCESSED THROUGH
SPECIAL MAILING PROCEDURES FOR FORWARDING
TO YOU. THE LETTER HAS BEEN NEITHER OPENED
NOR INSPECTED. IF THE WRITER RAISES A QUESTION
[illegible]
CORRESPONDENCE FOR FORWARDING TO
ANOTHER ADDRESSEE, PLEASE RETURN THE
ENCLOSURE TO THE ABOVE ADDRESS.