IN THE
SUPREME COURT OF THE UNITED STATES

U. S. COURT OF APPEALS
RECEIVED
DEC 10 2025
FIFTH CIRCUIT

Asia Tsatenawa                    v.              United States of America
PETITIONER - APPELANT                            RESPONDENTS - APPELLEE

ON PETITION FOR WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT No. 5:21 - CR - 00073-1

## DEFENDANTS PETITION FOR WRIT OF CERTIORARI

TO THE HONORABLE JUDGES OF SAID COURT:

COMES NOW ASIA TSATENAWA, THE DEFENDANT IN THE ABOVE STYLED AND NUMBERED CAUSE, AND SUBMITS THIS PETITION FOR WRIT OF CERTIORARI:

THE FOLLOWING FACTS ARE UNDISPUTED. THE POLICE LIED ABOUT THE CASE. THE POLICE ARRIVED AT THE M&M MART WITHOUT EMERGENCY LIGHTS OR SIREN ACTIVATED. THE TRUCK WAS PARKED COMPLETELY WITHIN A PARKING SPACE AT THE FOOD MART. THERE WERE TWO OCCUPANTS SITTING IN THE RED TRUCK WHEN THE POLICE VEHICLE BLOCKED IT IN. THE POLICE DID NOT KNOW THE IDENTITY OF THE PERSON WHO WAS SITTING IN THE DRIVER'S SEAT AND WHO FLED FROM THE TRUCK. THE TWO PEOPLE INVOLVED WITH THE TRUCK WHEN THE POLICE ARRIVED DID NOT INCLUDE THE HISPANIC MALE WHO ALLEGEDLY HAD A GUN POINTED AT HIM. THE EVENTS ALL OCCURED DURING THE DAYTIME.

ACCORDING TO THE SAPD REPORT # SAPD 20229802 BY OFFICER DAVID BELOW #0400, REGARDING THE DECEMBER 3, 2020 INCIDENT INVOLVED THREE SAPD OFFICERS' BODY CAMERAS: DAVID BELOW, JAMES VAN KIRK, AND LEVON HARRISON. THE FOLLOWING FACTS ARE TAKEN FROM THESE BODY CAMS. BELOW AND VAN KIRK WERE RIDING TOGETHER IN A POLICE VEHICLE. BELOW SAID THEY WERE LOOKING FOR A BLACK MALE, IN A BLACK HOODIE, IN A RED TRUCK WHO PULLED A GUN ON A HISPANIC MALE. SEE BELOW VIDEO AT 15:25:30. BELOW SAID "OH IS THAT A FUCKING TRUCK? OH DUDE ITS STILL HERE." AT THAT POINT BELOW DROVE TO THE M&M MART AND PARKED IN FRONT OF THE TRUCK BLOCKING IT IN AND PREVENTING THE OCCUPANTS FROM LEAVING FREELY.

### i. WHETHER REASONABLE SUSPICION JUSTIFIED THE SEIZURE

"THE SEMINAL SUPREME COURT CASE THAT CONTROLS THE COURTS FOURTH AMENDMENT ANALYSIS IS TERRY V. OHIO, [392 U.S. 1 (1968)." UNITED STATES V. McKINNEY, 980 F.3RD 485 WHENEVER A POLICE OFFICER ACCOSTS AN INDIVIDUAL AND RESTRAINS HIS FREEDOM TO WALK AWAY, HE HAS SEIZED THAT PERSON. EVEN IF ARTICULATED REASONS FAIL, THE TEST TO BE APPLIED REGARDING WHETHER A STOP WAS JUSTIFIED IS OBJECTIVE, MEANING IT DOES NOT DEPEND ON WHAT THE OFFICERS CLAIMED AS REASONS. AN INVESTIGATIVE STOP MUST BE LAWFUL. UNITED STATES V. WALI, 811 F. SUPP. 2d 1276 (N.D. TEX 2011). "THAT CASE HOLDS THAT AN INVESTIGATORY STOP IS PERMISSIBLE WHEN THE POLICE OFFICER HAS REASONABLE SUSPICION THAT CRIMINAL ACTIVITY MAY BE AFOOT." Id, CITING TERRY, 392 U.S. AT 30. FIFTH CIRCUIT AUTHORITY, INCLUDING ROCH AND MARTINEZ, HOWEVER HOLDS THAT AN INVESTIGATORY STOP IS PERMISSIBLE ONLY WHEN THE POLICE OFFICER HAS REASONABLE SUSPICION THAT CRIMINAL ACTIVITY IS AFOOT." WALI CITING UNITED STATES V. MARTINEZ 486 F. 3RD 855, 859 (5th CIR. 2007); UNITED STATES V. ROCH, 5 F.3d 894, 897 (5th CIR. 1993) "ALTHOUGH THE CHOSEN LANGUAGE IN TERRY CONTRASTS WITH THE CHOSEN LANGUAGE IN ROCH AND MARTINEZ, THE OUTCOME IS THE SAME FOR THE PURPOSES OF THE COURTS ANALYSIS." WALI, SUPRA. "AS DISCUSSED ABOVE, REASONABLE SUSPICION AS TO CRIMINAL ACTIVITY CAN EXIST ONLY WHEN THE POLICE HAS AN INDIPENDENT BASIS OF BELIEF, RISING ABOVE THE LEVEL OF A 'MERE HUNCH OR UNPARTICULARIZED SUSPICION,' THAT ALL ELEMENTS NECESARRY FOR A CRIMINAL ACT ARE PRESENT." Id. CITING UNITED STATES V JAQUEZ F. 3d 338, 340-341 (5th CIR. 2005) THE DEFENDANT ALSO IN THIS CASE WAS STOPPED ONLY BECAUSE HE WAS DRIVING A RED CAR IN THE VICINITY OF AN INCIDENT REPORTED 15 MINUTES EARLIER IN AN AREA KNOWN FOR ITS HIGH CRIME RATE. THE OFFICER LIKE BELOW DID NOT HAVE REASONABLE SUSPICION TO MAKE AN INVESTIGATIVE STOP. AND THAT THE STOP AND SUBSEQUENT SEARCH WERE IN VIOLATION OF THE FOURTH

AMENDMENT. THE SPARSE AND BROADLY GENERIC INFORMATION PROVIDED BY THE DISPATCHER, WITHOUT MORE INSUFFICIENT TO SUPPORT A DETERMINATION OF REASONABLE SUSPICION AS REQUIRED IN TERRY." WITHOUT SOME FORM OF INDEPENDENT BASIS OF BELIEF - ARISING OUT OF EITHER A REPORTE TIP, A POLICE OFFICER'S VISUAL OBSERVATION, OR ANOTHER SOURCE - TO ESTABLISH THAT ALL NECESARRY ELEMENTS TO A CRIMINAL ACTIVITY ARE PRESENT, THERE CAN BE NO REASONABLE SUSPICION JUSTIFYING A WARRANTLESS SEARCH OR SEIZURE." WALI, SUPRA, " WITHOUT SUCH A BASIS, THERE IS NO REASONABLE SUSPICION THAT CRIMINAL ACTIVITY MAYBE AFOOT, AND THERE IS NO REASONABLE SUSPICION THAT CRIMINAL ACTIVITY IS AFOOT," (EMPHASIS IN ORIGINAL). " EVEN IF THERE IS A PRACTICAL DESTINCTION BETWEEN THE TWO STANDARDS. THE COURT REACHES THE SAME RESULT BECAUSE THE EVIDENCE PROVIDED BY THE GOVERNMENT IS TOO TENUOUS, WITHOUT FURTHER INQUIRY, TO SHOW THAT CRIMINAL ACTIVITY " WAS" AFOOT OR " MAY HAVE BEEN AFOOT." Id. NOTHING WAS DONE BY OFFICER BELOW PRIOR TO THE STOP TO SHOW THAT THE TIP WAS RELIABLE IN ITS ASSERTION OF ILLEGALITY.

IN THIS CASE, THE 911 CALLER PROVIDED INFORMATION ON THE COLOR OF THE VEHICLE " A RED TRUCK" AND THE OCCUPANT BEING A BLACK MALE IN A BLACK HOODIE. BODY CAM VIDEO SHOWS THAT OFFICER BELOW OBSERVED A RED TRUCK IN THE VICINITY DESCRIBED BY THE 911 - CALLER FROM DOWN THE STREET AT THE FOUR - WAY STOP SIGN A BLOCK AWAY. ACCORDINGLY, THE ONLY VERIFIED INFORMATION THAT OFFICER BELOW HAD AT THE TIME HE EFFECTED THE SEIZURE OF THE TRUCK AND ITS OCCUPANTS CONCERNED THE COLOR OF THE TRUCK AND PHYSICAL PROXIMITY TO M&M MART. NOTABLY, ABSENT HOWEVER, WAS ANY VERIFIED INFORMATION THAT "CRIMINAL ACTIVITY WAS AFOOT." (MARTINEZ, SUPRA 468 F.3d AT 862; JAQUEZ, SUPRA 421 F.3d AT 340-41) SEE BELOW VIDEO AT 15:26:40 VAN KIRK TELLS BELOW, "WELL WE DON'T HAVE A COMPLAINANT OR ANYTHING." BELOW RESPONDED "YEAH BUT WERE STILL GONNA FIND OUT WHAT THE FUCK IS GOING ON HERE." SEE BELOW VIDEO AT 15:29:15 AND 15:30:03, VAN KIRK REITERATES A SECOND AND THIRD TIME "WE DON'T HAVE A COMPL AINANT." SEE BELOW AT 15:31:48 BELOW TELLS AN UNKNOWN BLACK MALE "MMHHM, ITS ALL RIGHT THOUGH, HE'S GONNA GET HIS." REFERRING TO THE DEFENDANT. SEE BELOW VIDEO AT 15:35:45, VAN KIRK TELLS BELOW " WE DON'T HAVE ANYTHING. WE HAVE A REFUSED PERSON WHO SAID THAT A BLACK MALE PULLED A GUN ON A HISPANIC MALE WHO LEFT. WE DIDN'T SEE ANY OF THOSE THINGS. WHAT THE FUCK DO YOU WANNA DO? ITS A PARKED CAR THAT SOMEBODY LEFT. YOU HAVE NO AUTHORITY TO CHECK ANYBODIES ANYTHING. YOU HAVE NO AUTHORITY TO RUN AFTER ANYBODY, OR GO FIND SOMEBODY, OR KICK ANYBODIES DOOR DOWN AT 316 CACTUS. WE DON'T HAVE ANYTHING. WE DON'T HAVE A CRIME, WE DON'T HAVE A VICTIM. WE DIDN'T TELL HIM HE WAS STOPPED. WE DIDN'T HAVE A LIGHT ON. HE GOT OUT OF HIS CAR AN HE RAN." BELOW ASKED IF THEY SHOULD TOW THE TRUCK, AND VAN KIRK SAID, " I AM NOT GOING TOW IT EITHER. I HAVE NO AUTHORITY TO DO IT. ITS ON PRIVATE PROPERTY." OFFICER BELOW DID NOT SEE A HISPANIC OR BLACK MALE WEARING A BLACK HOODIE OR ANYTHING THAT RESEMBLED THE CRIMINAL ACTIVITY THAT THE 911 CALLER CLAIMED IN HIS TIP, EXCEPT THE COLOR OF A TRUCK PARKE AT THE M&M FOOD MART. THERE WAS NO INDICATION THAT ANYTHING ILLEGAL EVER HAPPENED. " AN OFFICER'S MERE HUNCH OR UNPARTICULARIZED SUSPICION IS NOT SUFFICIENT; RATHER, A MINIMAL LEVEL OF OBJECTIVE JUSTIFICATION FOR THE STOP MUST BE PRESENT." WALI, SUPRA, CITING JAQUE SUPRA, 421 F.3d AT 340-41. PRIOR TO THE STOP THERE WAS NOTHING ABOUT THE TRUCK TO INDICATE THAT THERE WAS A BLACK MALE WEARING A BLACK HOODIE INSIDE IT OR THAT THERE WAS A WEAPON INSIDE THE TRUCK, TO MAKE SUCH A DETERMINATION, FURTHER INQUIRY WOULD HAVE BEEN NECESARRY. INQUIRY THAT DID NOT TRANSPIRE UNTIL AFTER BELOW BLOCKED THE TRUCK AND PREVENTED THE OCCUPANTS FROM LEAVING FREELY AND SEEING THE DRIVER FLEE. HOWEVER AFTER ACQUIRED EVIDENCE OR INFORMATION CANNOT BE USED TO ESTABLISH REASONABLE SUS PICION FOR THE INITIAL STOP.

THIS CASE IS A CLASSIC EXAMPLE OF "PUTTING THE CART BEFORE THE HORSE." IN THIS INSTANCE, OFFICER BELOW QUITE LITERALLY JUMPED THE GUN. WHILE A POLICE OFFICER'S RIGHT TO EFFECT A TERRY STOP NECESSARILY AUTHORIZES THE USE OF FORCE TO SECURE A SUSPECT, SUCH A STOP MUST BE PREDICATED ON REASONABLE SUSPICION OF CRIMINAL ACTIVITY. SEE UNITED STATES V. CAMPBELL, 178 F.3d 345, 348 - 49 (5th CIR. 1999) IN THE REVIEW OF VIDEO EVIDENCE, THE COU SAID NOTHING TO INDICATE THAT THE OCCUPANTS OF THE TRUCK POSED AN OBSERVABLE THREAT TO ANYONE. THE DRIVER DID GET STARTLED AND RAN AWAY, BUT THAT CANNOT BE REASONAB

INTERPRETED THAT A CRIME WAS BEING COMMITTED. AS THERE WAS NO REASONABLE SUSPICION TO DETAIN THE OCCUPANTS OF THE TRUCK, NO AUTHORITY EXISTED TO EFFECT A TERRY STOP. FOR EXAMPLE, IF BELOW HAD OBSERVED A BLACK MALE IN A BLACK HOODIE ACTUALLY HOLDING A GUN OR WHAT APPEARED TO BE A WEAPON, OR A HISPANIC MALE, INSTEAD OF JUST A RED TRUCK AT THE M&M FOOD MART, HIS APPROACH WOULD HAVE BEEN JUSTIFIED.

IN THE CASE AT BAR, AS IN WALI, SUPRA, THE POLICE CONDUCT RESULTING IN THE SEIZURE OF THE TRUCK AND WEAPON "IS AT ODDS WITH THE TEACHINGS OF" FLORIDA V. J.L. 529 U.S. 266 (2006) AND ROCH. WALI, SUPRA. "THE FACTS OF THIS CASE ARE NEARLY IDENTICLE TO THE FACTS OF J.L." AND THERE IS "NO APPRECIABLE DISTINCTION BETWEEN THESE FACTS AND THOSE OF ROCH WITH RESPECT TO THE SEIZURE." WALI, SUPRA, "IN THIS CASE LIKE IN J.L., THE 911 CALLER GAVE A DESCRIPTION AS TO THE SUSPECTS AGE, RACE, CLOTHING, AND LOCATION." WALI, SUPRA, NONE OF THE IDENTIFYING INFORMATION REGARDING THE CALLER WAS KNOWN TO OFFICER BELOW AT THE TIME HE SEIZED THE TRUCK. "THE CALLER'S COMPLAINT IN THIS CASE WAS THE FUNCTIONAL EQUIVALENT OF AN ANONYMOUS TIP." Id. "ACCORDINGLY, THE OUTCOME OF THIS NECESSARILY ALIGNS WITH THE OUTCOME IN J.L." Id. IN ROCH, THE FIFTH CIRCUIT HELD "A TIP FROM AN UNKNOWN INFORMANT, WHO HAD PROVIDED RELIABLE INFORMATION IN THE PAST, DID NOT GIVE POLICE OFFICERS REASONABLE SUSPICION TO EFFECT AN INVESTIGATORY STOP. WALI, SUPRA (EMPHASIS IN ORIGINAL). THE TIPSTER TOLD POLICE THAT THE SUSPECT WAS IN POSSESSION OF FIREARMS AND DESCRIBED THE SUSPECT AS A BLONDE, WHITE MALE WITH BODY TATTOOS, AND FURTHER STATED THAT THE SUSPECT DROVE AN ORANGE AND WHITE PICK UP TRUCK AND WAS STAYING AT A LOCAL MOTEL ROOM WITH HIS GIRLFRIEND." Id. "POLICE OFFICERS SHORTLY AFTER SET UP SURVEILLANCE ON THE LOCAL MOTEL ROOM AND EVENTUALLY SAW AN ORANGE AND WHITE PICKUP TRUCK PULL OUT OF THE PARKING LOT WITH A MALE DRIVER AND A FEMALE PASSENGER." Id. "THE TRUCK SOON PULLED INTO A GAS STATION, AND LAW ENFORCEMENT OFFICERS MOVED IN IMMEDIATELY." Id "A HOUSTON POLICE OFFICER "THREW DOWN" ON THE SUSPECT AND ORDERED HIM TO THE GROUND." Id. "THE SUSPECT WAS THEN HANDCUFFED, AND A FEDERAL AGENT OBSERVED THE BUTT OF A FIREARM STICKING OUT OF A BAG IN THE TRUCK." Id CITING ROCH, 5 F.3d AT 876

IN THE CASE AT BAR AS IN ROCH, "THE POLICE OFFICERS IN ROCH ACTUALLY HAD MORE DESCRIPTIVE INFORMATION TO WORK WITH" THAN OFFICER BELOW DID IN THIS CASE, "AND THAT INFORMATION CAME FROM A KNOWN INFORMANT WHO HAD PROVIDED RELIABE INFORMATION TO OFFICERS IN THE PAST, UNLIKE THE 911 CALLER IN THIS CASE." WALI, SUPRA, CITING ROCH, SUPRA. "IN ROCH, THE INFORMANT GAVE POLICE OFFICERS A DESCRIPTION OF RACE AND OTHER IDENTIFYING PERSONAL FEATURES INCLUDING BLOND HAIR AND BODY TATTOOS." Id. "THE INFORMANT FURTHER PROVIDED OFFICERS WITH A VEHICLE DESCRIPTION, A LOCATION, AND NOTIFICATION THAT THE SUSPECT WOULD BE ACCOMPANIED BY HIS GIRLFRIEND." Id. "THE OFFICERS WERE ABLE TO VERIFY THE INFORMANTS REPORTED INFORMATION IDENTIFYING THE SUSPECT FROM THEIR SURVEILLANCE OF THE MOTEL." Id. "THE FIFTH CIRCUIT NEVERTHELESS HELD IN ROCH THAT ALL OF THIS WAS INSUFFICIENT TO AMOUNT TO 'REASONABLE SUSPICION' AND JUSTIFY AN INVESTIGATORY STOP, PRINCIPALLY BECAUSE THE OFFICERS DID NOT OBSERVE ANY CRIMINAL ACTIVITY FROM THEIR SURVEILLANCE." Id.

IN THE CASE AT BAR AS WAS HELD IN THE ABOVE CITED CASES, THE COURT SHOULD DETERMINE THE 911 CALLERS COMPLAINT IN THIS CASE WAS THE FUNCTIONAL EQUIVALENT OF AN ANONYMOUS TIP. AS THE ABOVE CITED CASES WITH THE HOLDINGS OF J.L. AND ROCH. ALTHOUGH THE TYPE OF APPROACH USED BY OFFICER BELOW APPEARS TO OCCUR WITH SOME FREQUENCY WITH RESPECT TO SOME OFFICERS OF THE SAN ANTONIO POLICE DEPARTMENT, SUCH AN APPROACH IS CLEARLY CONTRARY TO THE SUPREME COURT AND FIFTH CIRCUIT PRECEDENT. ALLOWING THIS CONDUCT TO STAND WOULD EVISCERATE THE HOLDINGS OF J.L. AND ROCH AND RENDER THEM BEREFT OF ANY LEGAL SIGNIFICANCE. ROCH CONTINUES TO ENJOY VITALITY AND WIDESPREAD APPLICATION IN THIS COURT. SEE, e.g. UNITED STATES V. GOMEZ, 623 F.3d 265, 270 N. 2 (5th CIR. 2010); MARTINEZ, 486 F.3d 855, 859-64; UNITED STATES V. HERNANDEZ, 477 F.3d 210, 214 N. 12 (5th CIR. 2001). THIS COURT SHOULD HAVE NO BASIS TO DEPART FROM THIS CLEARLY ESTABLISHED LAW.

THE CRITICAL ISSUE IN THIS CASE, AS WAS THE ISSUE IN ROCH, IS WHETHER BELOW HAD REASONABLE SUSPICION TO SEIZE THE TRUCK AND ITS OCCUPANTS FOR ILLEGALY POSSESSING A FIREARM. "EVEN AN INVESTIGATORY STOP WOULD BE PROPER ONLY IF BASED ON REASONABLE SUSPICION THAT CRIMINAL ACTIVITY IS AFOOT." WALI, SUPRA, CITING ROCH AND TERRY V. OHIO, BOTH SUPRA. IF AN OFFICER OBSERVES SUSPICIOUS ACTIVITY, THE FOURTH AMENDMENT IS SATISFIED IF THERE IS A MINIMAL LEVEL OF OBJECTIVE JUSTIFICATION FOR THE OFFICERS' ACTIONS, MEASURED IN THE LIGHT

OF THE TOTALITY OF THE CIRCUMSTANCES." Id. CITING UNITED STATES V. RIDEAU, 969 F.2d 1572 (5th CIR. 1992)

HERE OFFICER BELOW DID NOT OBSERVE ANYTHING OTHER THAN A RED TRUCK PARKED AT THE M&M FOOD MART. OFFICER DID NOT OBSERVE A CRIMINAL OFFENSE BEING COMMITTED OR ANY QUESTIONABLE BEHAVIOR BEFORE HE MADE THE INVESTIGATORY STOP IN FRONT OF THE TRUCK BLOCKING IT IN SO THE OCCUPANTS OF THE TRUCK COULD NOT LEAVE FREELY. "THE REASONABLE SUSPICION REQUIRED FOR EFFECTING A SEIZURE, HOWEVER, DOES NOT ALWAYS REQUIRE PERSONAL OBSERVATION." WALI, SUPRA. "IT CAN BE BASED ON INFORMATION PROVIDED BY A TIPSTER IF THE INFORMATION POSSESSES 'AN INDICIA OF RELIABILITY." Id. "RELEVANT FACTORS TO CONSIDER WITH RESPECT TO WHETHER 'AN INDICIA OF RELIABILITY IS PRESENT INCLUDE: THE CREDIBILITY AND RELIABILITY OF THE INFORMANT, THE SPECIFITY OF INFORMATION CONTAINED IN THE TIP OR REPORT, THE EXTENT TO WHICH THE INFORMATION IN THE TIP OR REPORT CAN BE VERIFIED BY OFFICERS IN THE FIELD, AND WHETHER THE TIP OR REPORT CONCERNS ACTIVE OR RECENT ACTIVITY, OR HAS INSTEAD GONE STALE." Id., CITING MARTINEZ, SUPRA, 486 F.3d AT 861 (QUOTING UNITED STATES V. GONZALEZ, 190 F.3d 668, 672 (5th CIR. 1999)). THE SEIZURE VIOLATED THE FOURTH AMENDMENTS PROHIBITION ON UNREASONABLE SEARCHES AND SEIZURES. THEREFORE ALL EVIDENCE RECOVERED ON DECEMBER 3, 2020 AND DECEMBER 8, 2020 BY THE OFFICERS AND ANY OTHER EVIDENCE SEIZED OR STATEMENTS MADE BY TSATENAWA WHILE IN CUSTODY SHOULD BE SUPPRESSED AND EXCLUDED FROM THE RECORD.

WHAT IS MOST CONCERNING ABOUT THIS CASE IS THE LYING BY THE POLICE ABOUT THE FACTS OF THE CASE. OFFICER BELOW CLAIMED THAT THE SUSPECT WHO FLED FROM "IS KNOWN TO OFFICERS AS A NARCOTICS DEALER IN THE AREA" AND "ALWAYS FLEE FROM POLICE SOMETIMES ON FOOT, IN A VEHICLE OR BOTH." BELOW CLAIMED THAT SAPD ARRIVED AT THE FOOD MART AND SAW A BLACK MALE, IDENTIFIED AS TSATENAWA, AS THE ONLY OCCUPANT OF THE VEHICLE SITTING IN THE DRIVERS SEAT. THERE WAS TWO OCCUPANTS IN THE VEHICLE. THERE WAS NO EVIDENCE THAT THE PERSON WAS THE DEFENDANT. BELOW ADMITTED AT THE SUPPRESSION HEARING THAT HE COULD NOT IDENIFY THE PERSON WHO FLED. SEE BELOW VIDEO AT 15:25:30 BELOW SAID "IF ITS NOT PARKED AT THE M&M FOOD MART, ITS PROBABLY ON SANDERS" BELOW ADMITTED AT THE SUPPRESSION HEARING THAT PRIOR TO ARRIVING AT THE M&M FOOD MART, THAT HE HAD "SPECULATION" THAT THE DEFENDANT WAS THE SUSPECT INVOLVED AND THAT HE MIGHT BE ON SANDERS." BELOW CLAIMED THE SUSPECT "LEFT THE WINDOWS ANDS DOORS TO THE VEHICLE OPEN AND UNSECURED WHEN HE FLED." ALL OF THE DOORS TO THE TRUCK WERE CLOSED. BELOW CLAIMED THE SUSPECT "LEFT HIS PHONE, WHICH HE WAS USING AND WAS IN HIS HANDS WHEN OFFICERS ARRIVED ON THE DRIVERS SEAT." Id. BELOW COULD NOT SEE THESE THINGS AS THE SUN WAS IN BELOWS EYES WHEN HE ARRIVED AT THE FOOD MART. BELOW CLAIMED THE "PHONE WAS OPEN TO [SUSPECTS] PERSONAL FACEBOOK PAGE." Id. THERE IS NO EVIDENCE THAT THE FACEBOOK BELONGED TO TSATENAWA. BELOW RETRIEVED THE SUSPECTS NAME FROM HIS PERSONAL PHONE. BELOW ADMITTED AT THE HEARING THAT HE PULLED THE PHONE FROM UNDER THE CENTER CONSOLE AND ACTIVATED THE PHONE AND THE FACEBOOK BEFORE FINDING WHAT HE CLAIMED WAS THE DEFENDANTS INFORMATION. BELOW ALSO ADMITTED TO LYING TO ANOTHER OFFICER AT THE SCENE ABOUT FINDING THE PHONE ON THE DRIVERS SEAT AND OPEN TO THE DEFENDANT'S FACEBOOK PAGE. BELOW CLAIMED THE VEHICLE WAS LEFT PARKED STICKING OUT INTO THE PUBLIC ROADWAY AND BLOCKING THE ENTIRETY OF A PUBLIC SIDEWALK." BELOW ADMITTED AT THE HEARING AND VIDEO ESTABLISHED THAT THE TRUCK WAS NOT IN THE ROADWAY. BELOW CLAIMED, "AN INVENTORY OF THE VEHICLE WAS PERFORMED DUE TO APPARENTLY VALUABLE PROPERTY LEFT IN PLAIN VIEW. IT IS NOTEWORTHY THAT THE WEAPON DISCOVERED BY BELOW DURING THIS SEARCH OF THE TRUCK WAS THE BASIS FOR A COUNT IN THE INDICTMENT WHICH WAS LATER DISMISSED BY THE GOVERNMENT AFTER THE DEFENDANT FILED HIS MOTION TO SUPPRESS. WHAT IS ALSO TELLING IS THAT DURING THE HEARING, BELOW ATTEMPTED TO JUSTIFY HIS SEARCH OF THE TRUCK AS A PROTECTIVE SWEEP BUT COULD NOT STATE ANY FACT AT ALL THAT WOULD EVEN REMOTELY ESTABLISH AN ARTICULABLE AND REASONABLE SUSPICION AUTHORIZING SUCH A SEARCH OF THE TRUCK. HOW SHOULD THIS TYPE OF POLICE MISCONDUCT BE CONSIDERED BY THE COURT IN RULING ON THE SUPPRESSION MOTION?

IN UNITED STATES V. BERRY, 468 F.SUPP. 2d 870 (N.D. TEX 2006), THE DISTRICT JUDGE WAS CONFRONTED WITH A SITUATION VERY SIMILAR TO THE CASE AT BAR. A SEARCH WARRANT AFFIDAVIT WAS TAINTED BY EVIDENCE THAT WAS EARLIER OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT. Id. THE JUDGE HELD THAT THE GOVERNMENT "IS ATTEMPTING TO USE THE GOOD FAITH EXCEPTION IN UNITED STATES V. LEON AFTER THE FACT TO JUSTIFY THE ADMISSION OF EVIDENCE ULTIMATELY OBTAINED THROUGH AN INITIAL WARRANTLESS AND UNLAWFUL SEARCH." Id. THE JUDGE

FURTHER HELD THAT "IF THE COURT WERE TO APPLY THE GOOD FAITH EXCEPTION HERE, ANY POLICE MISCONDUCT RELATING TO A WARRANTLESS SEARCH UNDER THE CIRCUMSTANCES PRESENTED BY THIS CASE COULD BE EXCUSED, WHICH WOULD MAKE A MOCKERY OF THE FOURTH AMENDMENT."

## II. THE ARREST WARRANT

A FOURTH AMENDMENT VIOLATION OCCURS IF A PROBABLE CAUSE AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT INCLUDED MISREPRESENTATIONS OR OMISSIONS. FRANKS V. DELAWARE, 483 U.S. 154 (1978); TERWILLIGER V. REYNA, 4 F.4th (5th CIR. 2021) ("THE FRANKS CASE AROSE IN THE CONTEXT OF A SEARCH WARRANT, BUT ITS RATIONALE EXTENDS TO ARREST WARRANTS.") TERWILLIGER STATED IF THE WARRANT AFFIDAVIT CONTAINS MATERIALLY FALSE STATEMENTS OR OMISSIONS, "FRANKS REQUIRES THE COURT TO DETERMINE WHETHER, EXCLUDING SUCH ERRORS AND OMISSIONS, THE REMAINING 'CORRECTED AFFIDAVIT' ESTABLISHES PROBABLE CAUSE FOR THE WARRANTS ISSUANCE." CITING WINFREY V. RODGERS 882 F.3d 187 (5th CIR. 2018). CITING FRANKS, SUPRA. "THE WARRANT REQUIREMENT IS MEANT 'TO ALLOW THE MAGISTRATE TO MAKE AN INDEPENDENT EVALUATION OF THE MATTER." Id. "IT REQUIRES AFFIANTS' TO SET PARTICULAR FACTS AND CIRCUMSTANCES UNDERLYING THE EXISTENCE OF PROBABLE CAUSE; INCLUDING THOSE THAT CONCERN THE RELIABILITY OF THE INFORMATION AND THE CREDIBILITY OF THE SOURCE TO AVOID 'DELIBERATELY OR RECKLESS FALSE STATEMENTS."

THE CRITICAL INQUIRY IS "WHETHER, GRANTING ESTABLISHMENT OF THE PRIMARY ILLEGALITY, THE EVIDENCE TO WHICH INSTANT OBJECTION IS MADE HAS BEEN COME AT BY EXPLOITATION OF THAT ILLEGALITY OR INSTEAD BY MEANS SUFFICIENTLY DISTINGUISHABLE TO BE PURGED OF THE PRIMARY TAINT." WONG SUN V. UNITED STATES, 371 U.S. 471 (1963). TO AID IN THIS INQUIRY, THE FIFTH CIRCUIT "HAS ESTABLISHED GUIDELINES TO DETERMINE WHETHER THE CONNECTION BETWEEN THE ILLEGAL ARREST AND THE DISCOVERY OF THE EVIDENCE HAS BECOME SO ATTENUATED AS TO DISSIPATE THE TAINT AND ENSURE THE ADMISSIBILITY OF THE EVIDENCE." UNITED STATES V. TOOKES, 633 F.2d 712 (5th CIR. 1980). AMONG THESE FACTORS ARE: (1) THE PROXIMITY OF THE ILLEGAL ARREST TO THE PROCUREMENT OF THE CHALLENGED EVIDENCE; (2) THE PRESENCE OF INTERVENING CIRCUMSTANCES BETWEEN THE ARREST AND THE DISCOVERY OF THE EVIDENCE; AND (3) THE CIRCUMSTANCES UNDER WHICH THE ARREST WAS MADE." Id. CITING UNITED STATES V. NAMER, 680 F.2d 1088, 1094 (5th CIR. 1982) "IF A SEARCH WARRANT AFFIDAVIT CONTAINS A FALSE MATERIAL STATEMENT MADE INTENTIONALLY OR WITH RECKLESS DISREGARD FOR THE TRUTH, THE REVIEWING COURT MUST EXCISE THE OFFENSIVE LANGUAGE FROM THE AFFIDAVIT AND DETERMINE WHETHER THE REMAINING PORTION ESTABLISHES PROBABLE CAUSE."

THE COURT IN LEON "EMPHASIZED THAT 'THE DEFERENCE ACCORDED TO A MAGISTRATES FINDING OF PROBABLE CAUSE DOES NOT PRECLUDE INQUIRY INTO THE KNOWING OR RECKLESS FALSITY OF THE AFFIDAVIT ON WHICH THAT DETERMINATION WAS BASED." REILLY, SUPRA, CITING LEON: FRANKS (EVIDENCE SEIZED PERSUANT TO A WARRANT BASED ON MATERIALLY FALSE AND MISLEADING INFORMATION IS INADMISSIBLE AT TRIAL") THE COURT IN REILLY STATED THAT, "WE HAVE PREVIOUSLY HELD THAT RECKLESSNESS MAYBE INFERRED WHEN OMITTED INFORMATION WAS 'CLEARLY CRITICAL' TO ASSESSING LEGALITY OF A SEARCH." Id. WHEN EVIDENCE IS OBTAINED AS A RESULT OF ILLEGAL POLICE CONDUCT, NOT ONLY MUST THAT EVIDENCE BE SUPPRESSED, BUT ALSO ALL EVIDENCE THAT IS THE FRUIT OF THE ILLEGAL CONDUCT. Id. C.F. JONES V. UNITED STATES, 362 U.S. 257, 270, 80 S.CT. 725, 4 L.Ed. 2d 697. TO HOLD THAT AN OFFICER MAY ACT IN HIS OWN, UNCHECKED DISCRETION UPON INFORMATION TOO VAGUE AND FROM TOO UNTESTED A SOURCE TO PERMIT A JUDICIAL OFFICER TO ACCEPT IT AS PROBABLE CAUSE FOR AN ARREST WARRANT, WOULD SUBVERT THIS FUNDAMENTAL POLICY. SILVER-THORNE LUMBER CO. V. UNITED STATES, 251 U.S. 385, 40 S.CT. 182, 64 L.Ed. 319. THE ESSENCE OF A PROVISION FORBIDDING THE AQUISITION OF EVIDENCE IN A CERTAIN WAY IS THAT NOT MERELY EVIDENCE SO ACQUIRED SHALL NOT BE USED BEFORE COURT BUT THAT IT SHALL NOT BE USED AT ALL. Id. THE SUPREME COURTS DECISION IN FRANKS V. DELAWARE OUTLINES THE CONSEQUENCES FLOWING FROM A MISREPRESENTATION IN AN APPLICATION FOR A SEARCH OR ARREST WARRANT. OFFICER BELOLO'S ACTIONS WERE INTENTIONAL. HE PURPOSELY TURNED HIS BODY CAMERA WHILE SEARCHING THROUGH THE CELL PHONE THAT HE INITIALLY LIED ABOUT BEING ON THE DRIVERS SEAT AND ALREADY OPEN TO TSATENAWAS' FACEBOOK. HE DELIBERATELY TRIED TO MISLEAD THE INVESTIGATION WHEN HE TOLD VAN KIRK TO PUT THAT THE SUSPECT WAS THE ONLY OCCUPANT IN THE VEHICLE, WHEN BODY CAM FOOTAGE SHOWS BELOLO STATING TO TSATENAWA'S BROTHER POOKIE THAT HE SAW TWO PEOPLE

IN THE VEHICLE, BELOW SHOWED RECKLESS DISREGARD FOR THE TRUTH WHEN HE LIED TO ANOTHER OFFICER AT THE SCENE ABOUT FINDING THE PHONE ON THE DRIVER'S SEAT AND OPEN TO THE DEFENDANT'S FACEBOOK PAGE. ALTHOUGH BELOW IS NOT THE AFFIANT, HE IS STILL AN OFFICER OF THE LAW, AND THE OFFICER ON THIS CASE WHO VIOLATED THE FOURTH AMENDMENT IN VARIOUS WAYS THROUGH HIS ACTIONS AND THE THINGS WRITTEN IN HIS POLICE REPORT THAT WAS LATER USED IN AN ARREST WARRANT AFFIDAVIT FOR THE DEFENDANT. WITHOUT BELOW THERE IS NO ARREST WARRANT AFFIDAVIT CONTAINING MISREPRESENTATIONS. THE SUPREME COURTS DECISION IN FRANKS V. DELAWARE OUTLINES THE CONSEQUENCES FLOWING FROM A MISREPRESENTATION IN AN APPLICATION FOR A SEARCH WARRANT OR ARREST WARRANT. THE COURT HELD THAT IF A "DEFENDANT MAKES A SUBSTANCIAL PRELIMINARY SHOWING THAT A FALSE STATEMENT KNOWING AND INTENTIONALLY, OR WITH RECKLESS DISREGARD FOR THE TRUTH, WAS INCLUDED BY THE AFFIANT IN THE WARRANT AFFIDAVIT, AND IF THE ALLEGEDLY FALSE STATEMENT IS NECESSARY TO THE FINDING OF PROBABLE CAUSE,... (AND THAT IF) WITH THE AFFIDAVIT'S FALSE MATERIAL SET TO ONE SIDE, AND THE AFFIDAVITS REMAINING CONTENT IS INSUFFICIENT TO ESTABLISH PROBABLE CAUSE, THE SEARCH WARRANT MUST BE VOIDED AND THE FRUITS OF THE SEARCH EXCLUDED TO THE SAME EXTENT AS IF PROBABLE CAUSE WAS LACKING ON THE FACE OF THE AFFIDAVIT." FRANKS, SUPRA

IN THE CASE AT BAR, THE DECEMBER 4, 2020 AGENT BEACH AFFIDAVIT IN SUPPORT OF THE ARREST WARRANT FOR THE DEFENDANT BEING IN POSSESSION OF A WEAPON CONTAINED THE FOLLOWING FALSE STATEMENTS. (1) SAPD ARRIVED AT THE FOOD MART AND SAW A BLACK MALE, IDENTIFIED AS TSATENAWA, AS THE ONLY OCCUPANT OF THE VEHICLE SEATED IN THE DRIVER'S SEAT, — THERE WAS TO OCCUPANTS IN THE VEHICLE, — THERE IS NO EVIDENCE THE PERSON WAS THE DEFENDANT; (2) AS SAPD ARRIVED, TSATENAWA EXITED THE VEHICLE AND FLED LEAVING THE VEHICLE UNATTENDED AND UNSECURED WITH WINDOWS AND DOORS OPEN. — THERE IS NO EVIDENCE THE PERSON WAS THE DEFENDANT AND THE BODY CAMS CLEARLY SHOW ONLY ONE WINDOW WAS OPEN AND NO DOORS WERE OPEN; (3) TSATENAWA LEFT HIS CELL PHONE OPEN TO HIS PERSONAL FACEBOOK AND WAS SEEN ON HIS PHONE BEFORE HE RAN FROM THE AREA, — THERE IS NO EVIDENCE THAT THE PERSON WAS THE DEFENDANT AND THE BODY CAM SHOWS THE OFFICER MANIPULATED THE CELL PHONE TO A FACEBOOK PAGE; AND THERE IS NO EVIDENCE THAT THE FACEBOOK WAS THE DEFENDANTS: (4) THE VEHICLE WAS LEFT IN PARK BLOCKING THE ROADWAY AND SIDEWALK, — THE TRUCK WAS NOT BLOCKING THE ROADWAY; (5) DURING AN INVENTORY, THE POLICE FOUND A GUN WITHIN ARMS REACH OF THE DRIVER; AND (6) TSATENAWA'S BROTHER ARRIVED AT THE LOCATION AND STATED HE GAVE THE KEYS TO HIS BROTHER, THE NIGHT BEFORE AND ALLOWED HIM TO TAKE THE VEHICLE — THERE IS NO EVIDENCE THE PERSON WAS THE DEFENDANT AND HIS BROTHER REPEATEDLY TOLD THE OFFICER THAT HE DID NOT GIVE THE TRUCK TO THE DEFENDANT AND DID NOT KNOW HOW THE DEFENDANT OBTAINED THE TRUCK OR THE KEYS TO THE TRUCK BECAUSE HE WAS INEBRIATED FROM DRINKING THE NIGHT BEFORE, WITHOUT THESE FACTS, THE AFFIDAVIT MERELY STATES AN UNIDENTIFIED BLACK MALE AT THE FOOD MART IN A RED PICKUP TRUCK POINTED A FIREARM AT ANOTHER PERSON AT A LOCATION AND A CENTURY ARMS PISTOL WAS FOUND IN THE TRUCK. THIS IS INSUFFICIENT TO ESTABLISH PROBABLE CAUSE THAT THE DEFENDANT POSSESSED THE PISTOL.

IN THIS THE DISTRICT COURT INCORRECTLY DENIED TSATENAWAS MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH AN UNCONSTITUTIONAL WARRANTLESS SEARCH. THE CENTRAL ISSUE IS THAT LAW ENFORCEMENT OFFICERS, AFTER ARRESTING TSATENAWA OUTSIDE THE APARTMENT, ENTERED AND SEARCHED THE HOME WITHOUT A WARRANT. THIS ENTRY AND SEARCH WENT BEYOND ANY REASONABLE PROTECTIVE MEASURES SINCE TSATENAWA WAS ALREADY IN CUSTODY AND POSED NO IMMEDIATE THREAT FROM WITHIN THE APARTMENT,

THE PRINCIPLES GOVERNING PROTECTIVE SEARCHES MAKE IT CLEAR THAT SUCH ACTIONS MUST BE LIMITED TO ENSURE OFFICER SAFETY WITHOUT ENCROACHING ON PRIVACY RIGHTS, IN TSATENAWA'S CASE, OFFICERS LACKED ANY SPECIFIC OR IMMEDIATE SAFETY CONCERNS JUSTIFYING ENTRY INTO THE APARTMENT, AS NO CREDIBLE INFORMATION SUGGESTED THAT ANYONE POSED A DANGER TO THEM. FURTHERMORE, NO CIRCUMSTANCES WERE PRESENT THAT WOULD HAVE JUSTIFIED A WARRANTLESS SEARCH UNDER EMERGENCY CONDITIONS, MAKING THEIR ENTRY AND SUBSEQUENT SEARCH AN UNREASONABLE INTRUSION UNDER CONSTITUTIONAL PROTECTIONS. THE DISTRICT COURT ALSO OVERLOOKED THAT THERE WERE NO EXIGENT CIRCUMSTANCES NECESSITATING ENTRY WITHOUT A WARRANT. ONCE TSATENAWA WAS ARRESTED

IN A SECURED LOCATION AWAY FROM THE APARTMENT, THERE WAS NO REMAINING JUSTIFICATION TO ENTER HIS RESIDENCE, WITHOUT ANY VALID REASONS RELATED TO OFFICER SAFETY OR EVIDENCE PRESERVATION, THE SEARCH EXCEEDED THE BOUNDARIES OF REASONABLE, CONSTITUTIONALLY PERMITTED ACTIONS.

THEREFORE TSATENAWA RESPECTFULLY REQUESTS THAT THIS COURT REVERSE THE DISTRICT COURT'S DENIAL OF HIS MOTION TO SUPPRESS AND EXCLUDE ANY EVIDENCE OBTAINED FROM THE UNAUTHORIZED SEARCH OF HIS APARTMENT. THIS REMEDY UPHOLDS CONSTITUTIONAL LIMITS ON SEARCHES AND REINFORCES THE PROTECTIONS AFFORDED TO INDIVIDUALS AGAINST UNREASONABLE GOVERNMENT INTRUSION.

THE DISTRICT COURT ERRED IN DENYING TSATENAWA'S MOTION FOR RECONSIDERATION OF ITS PRIOR ORDER DENYING THE MOTION TO SUPPRESS EVIDENCE, WHERE THE NEWLY PRESENTED FACTS AND LEGAL ARGUMENTS DEMONSTRATED A VIOLATION OF HIS FOURTH AMENDMENT RIGHTS WARRANTING RECONSIDERATION AND SUPPRESSION OF THE UNLAWFULLY OBTAINED EVIDENCE.

IN EVALUATING A DISTRICT COURTS DENIAL OF A DEFENDANT'S MOTION TO SUPPRESS, THE FIFTH CIRCUIT REVIEWS FACTUAL FINDINGS, INCLUDING CREDIBILITY DETERMINATIONS FOR CLEAR ERROR, AND REVIEWS LEGAL CONCLUSIONS DE NOVO. SEE UNITED STATES V. BASS, 996 F.3d 729 (5th CIR. 2021)

THE DISTRICT COURT'S MISAPPLICATION OF THE GOOD-FAITH EXCEPTION UNDERMINES THE FOURTH AMENDMENTS CORE PROTECTIONS. THE DISTRICT COURTS RELIANCE ON THE GOOD FAITH EXCEPTION IN DENYING TSATENAWA'S MOTION TO SUPPRESS LACKS SUFFICIENT LEGAL FOUNDATION UNDER THE FOURTH AMENDMENT. THE LOWER COURTS FINDING THAT LAW ENFORCEMENT ACTED WITH OBJECTIVE GOOD FAITH RESTS ON AN ERRONEOUS PRESUMPTION THAT THE OFFICER'S RELIANCE ON THE WARRANT WAS REASONABLE. HOWEVER, FIFTH CIRCUIT PRECEDENT REQUIRES A RIGOROUS ANALYSIS TO ENSURE THAT RELIANCE ON SUCH WARRANTS IS OBJECTIVELY REASONABLE AND NOT BASED ON VAGUE OR OVERLY BROAD INFERENCES. SEE UNITED STATES V. WOERNER, 709 F.3d 527, 535 (5th CIR. 2013). IN UNITED STATES V. LEON, 468 U.S. 897, 922-923 (1984), THE SUPREME COURT ESTABLISHED THAT THE GOOD FAITH EXCEPTION DOES NOT EXTEND TO CASES WHERE THE WARRANT IS SO LACKING IN INDICIA OF PROBABLE CAUSE THAT BELIEF IN ITS EXISTENCE WOULD BE ENTIRELY UNREASONABLE. HERE TSATENAWA ASSERTS THAT ANY OBJECTIVE OFFICER WOULD HAVE RECOGNIZED THE SIGNIFICANT FACTUAL OMISSIONS AND MISREPRESENTATIONS CONTAINED WITHIN THE WARRANT AFFIDAVIT, WHICH FAIL TO MEET THE PROBABLE CAUSE THRESHOLD. WITHOUT A VALID BASIS FOR PROBABLE CAUSE, THE OFFICERS' ACTIONS ARE IN VIOLATION OF THE FOURTH AMENDMENT. RENDERING THE WARRANT UNREASONABLE ON ITS FACE.

<u>MISREPRESENTATION OF PROBABLE CAUSE AND RESULTING FOURTH AMENDMENT VIOLATIONS</u>

THE DISTRICT COURT'S ACCEPTANCE OF THE WARRANT'S PROBABLE CAUSE DETERMINATION DISREGARDS CRITICAL OMISSIONS FROM THE WARRANT APPLICATION THAT UNDERMINE ITS VALIDITY. UNDER FIFTH CIRCUIT PRECEDENT, PROBABLE CAUSE MUST BE BASED ON A "TOTALITY OF THE CIRCUMSTANCES" APPROACH THAT CONSIDERS NOT JUST THE ALLEGATIONS WITHIN THE WARRANT BUT ALSO ANY MATERIAL OMISSIONS THAT COULD ALTER A MAGISTRATE'S DECISION. SEE FRANKS V. DELAWARE, 438 U.S. 154, 155-56 (1978). THE DISTRICT COURT'S FAILURE TO APPLY FRANKS ADEQUATELY, PARTICULARLY IN LIGHT OF OMITTED DETAILS THAT SUGGEST A LACK OF DIRECT EVIDENCE LINKING TSATENAWA TO CRIMINAL ACTIVITY, CONSTITUTES REVERSIBLE ERROR.

<u>LACK OF OBJECTIVELY REASONABLE GROUNDS FOR WARRANT EXECUTION</u>

AN OFFICER'S GOOD FAITH RELIANCE ON A SEARCH WARRANT IS DEFENSIBLE ONLY WHEN IT IS OBJECTIVELY REASONABLE. SEE HERRING V. UNITED STATES, 555 U.S. 135, 145 (2009). THE FIFTH CIRCUIT HAS CONSISTENTLY APPLIED THIS STANDARD TO ENSURE THAT THE GOOD FAITH EXCEPTION DOES NOT ERODE FOURTH AMENDMENT PROTECTIONS BY ALLOWING SEARCHES BASED ON VAGUE OR UNSUPPORTED ASSUMPTIONS. SEE UNITED STATES V. SHUGART, 117 F.3d 838, 843 (5th CIR. 1997). IN TSATENAWA'S CASE, THE OFFICERS' RELIANCE ON THE WARRANT CAN NOT BE DEEMED OBJECTIVELY REASONABLE BECAUSE OF THE LACK OF A CONCRETE, SPECIFIC LINK BETWEEN THE ALLEGED CRIMINAL ACTIVITY AND THE PLACE TO BE SEARCHED. THIS DEFICIENCY IN THE AFFIDAVIT MEANS

8

THAT A REASONABLE WELL TRAINED OFFICER WOULD HAVE RECOGNIZED THE LACK OF PROBABLE CAUSE MAKING THE RELIANCE ON THE WARRANT UNREASONABLE UNDER THE CIRCUMSTANCES.

### THE DISTRICT COURTS ERROR IN APPLYING THE GOOD FAITH EXCEPTION NECESSITATES REVERSAL

THE SUPREME COURT AND FIFTH CIRCUIT HAVE ARTICULATED THE GOOD FAITH EXCEPTION SHOULD NOT EXCUSE RELIANCE ON A DEFICIENT WARRANT WHERE THE AFFIDAVIT INCLUDES MATERIAL MISSTATEMENTS OR OMITS EXCULPATORY INFORMATION. TSATENAWA ASSERTS THAT THE OFFICERS FAILED TO PROVIDE THE MAGISTRATE WITH A FULL AND ACCURATE ACCOUNT OF THE CIRCUMSTANCES SURROUNDING THE SEARCH, A VIOLATION THAT THE FIFTH CIRCUIT HAS PREVIOUSLY FOUND WARRANTS SUPPRESSION OF EVIDENCE. SEE UNITED STATES V. CAVAZOS, 288 F.3d 706, 710 (5th CIR. 2002). ALLOWING THIS SEARCH TO STAND WOULD SIGNAL AN UNACCEPTABLE EROSION OF FOURTH AMENDMENT PROTECTIONS, INCENTIVIZING LAW ENFORCEMENT TO CUT CORNERS ON THE ACCURACY AND RELIABILITY OF WARRANT AFFIDAVITS

IN SUM, IN LIGHT OF THE ABOVE, TSATENAWA RESPECTFULLY SUBMITS THAT THE DISTRICT COURT ERRED IN DENYING THE MOTION TO SUPPRESS, AS THE OFFICERS LACKED A CONSTITUTIONALLY VALID BASIS FOR PROBABLE CAUSE AND COULD NOT RELY ON THE DEFECTIVE WARRANT. THE FIFTH CIRCUIT SHOULD REVERSE THE DISTRICT COURTS DENIAL, REINFORCING THAT ADHERENCE TO FOURTH AMENDMENT STANDARDS IS NON-NEGOTIABLE AND THAT THE GOOD FAITH EXCEPTION IS INAPPLICABLE WHEN AN OFFICER'S RELIANCE ON A WARRANT IS UNREASONABLE. THE COURT SHOULD REMAND FOR PROCEEDINGS CONSISTENT WITH THIS APPROACH TO SAFEGUARD THE CONSTITUTIONAL RIGHTS PROTECTED BY THE FOURTH AMENDMENT.

### III. PROTECTIVE SWEEP

UNDER THE FOURTH AMENDMENT, THE "PHYSICAL ENTRY OF A HOME IS THE CHIEF EVIL AGAINST WHICH THE WORDING OF THE FOURTH AMENDMENT IS DIRECTED." UNITED STATES V. UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF MICHIGAN, 407 U.S. 297, 213 (1972) IN GENERAL, WARRANTLESS ENTRY INTO A HOME IS PRESUMPTIVELY UNREASONABLE AND THUS INVALID. SEE PAYTON V. NEW YORK, 445 U.S. 573, 586 (1980). IN THE NARROW CONTEXT OF A LAWFUL IN-HOME ARREST, POLICE MAY CONDUCT A "PROTECTIVE SWEEP" SOLELY AS A PRECAUTIONARY MEASURE FOR OFFICER SAFETY. THIS SWEEP IS STRICTLY LIMITED TO AREAS WHERE A PERSON COULD REASONABLY HIDE AND WHICH AN ATTACK COULD BE LAUNCHED. SEE MARYLAND V. BUIE, 494 U.S. 325, 327 (1990). THIS EXCEPTION, HOWEVER, IS VERY LIMITED IN SCOPE AND DOES NOT EXTEND TO WARRANTLESS ENTRIES INTO UNRELATED PREMISES WITHOUT IMMEDIATE SAFETY JUSTIFICATIONS.

AS ESTABLISHED IN BUIE, OFFICERS ARE AUTHORIZED TO CONDUCT A CURSORY SEARCH INCIDENT TO ARREST OF "CLOSETS AND OTHER SPACES IMMEDIATELY ADJOINING THE PLACE OF ARREST" SOLELY TO IDENTIFY ANY INDIVIDUALS WHO MAY POSE A RISK TO OFFICER SAFETY. Id. AT 334, TO EXTEND THIS SEARCH BEYOND IMMEDIATELY ADJOINING AREAS, LAW ENFORCEMENT MUST DEMONSTRATE SPECIFIC, ARTICULABLE FACTS THAT WOULD LEAD A REASONABLY PRUDENT OFFICER TO BELIEVE A POTENTIALLY DANGEROUS INDIVIDUAL MAY BE HIDING IN THOSE AREAS. Id. WITHOUT SUCH A SHOWING, SEARCHES ARE PROHIBITED BY THE FOURTH AMENDMENT AS THEY EXCEED THE LIMITED SCOPE OF A PROTECTIVE SWEEP AND LACK REASONABLE, INDIVIDUALIZED SUSPICION.

### (A) THE SCOPE OF THE PROTECTIVE SWEEP EXTENDED UNREASONABLY BEYOND THE ARREST LOCATION

IN THIS CASE, TSATENAWA WAS ARRESTED IN A PARKING LOT NEAR HIS VEHICLE, NOT INSIDE HIS RESIDENCE. CONSEQUENTLY, THE PROTECTIVE SWEEP SHOULD HAVE BEEN CONFINED TO THE VEHICLE OR ANY IMMEDIATE AREAS WITHIN HIS REACH AS STATED IN ARIZONA V. GANT, 556 U.S. 332 (2009), WHEN A SUSPECT IS APPREHENDED IN A VEHICLE, OFFICERS MAY SEARCH ONLY IF THE ARRESTEE IS WITHIN REACHING DISTANCE OF THE VEHICLES PASSENGER COMPARTMENT AT THE TIME OF THE SEARCH, OR IF IT IS REASONABLE TO BELIEVE THE VEHICLE CONTAINS EVIDENCE RELATED TO THE OFFENSE OF ARREST. HERE, TSATENAWA WAS ALREADY IN CUSTODY AND BEYOND REACHING DISTANCE OF HIS VEHICLE, RENDERING ANY SEARCH OF HIS RESIDENCE UNJUSTIFIED AND UNREASONABLE UNDER THE FOURTH AMENDMENT

### (B) LACK OF EXIGENT CIRCUMSTANCES OR ARTICULABLE FACTS JUSTIFYING WARRANTLESS ENTRY

THE OFFICERS NEITHER POSSESSED NOR ARTICULATED ANY INDIVIDUALIZED SUSPICION OR REASONABLE SUSPICION OR REASONABLE BELIEF THAT THE APARTMENT HARBORED AN IMMINENT THREAT OR CONTAINED

INDIVIDUALS LIKELY TO ENDANGER LAW ENFORCEMENT. THE FIFTH CIRCUIT HAS CONSISTENTLY EMPHASIZED THAT THE PROTECTIVE SWEEP EXCEPTION REQUIRES NOT JUST A GENERALIZED CONCERN FOR SAFETY BUT CONCRETE ARTICULABLE FACTS POINTING TO A REAL SPECIFIC DANGER. SEE UNITED STATES V. MATA, 517 F.3d 279, 287 (5th CIR. 2008) (FINDING THAT AN OFFICER'S PROTECTIVE SWEEP MUST BE BASED ON SPECIFIC FACTS THAT REASONABLY SUGGEST DANGER).

WITHOUT SUCH SPECIFIC ARTICULABLE FACTS, OFFICERS CAN NOT JUSTIFY AN EXPANSIVE SEARCH OF A LOCATION THAT WAS NOT IN THE IMMEDIATE AREA OF ARREST. THE PROTECTIVE SWEEP EXCEPTION DOES NOT ~~XXXXXXXXXXXXX~~ APPLY SIMPLY BECAUSE OFFICERS WANT TO ENSURE THE SAFETY OF THE ENTIRE PREMISES OR IN HOPES OF FINDING ADDITIONAL EVIDENCE. TSATENAWA WAS ARRESTED OUTSIDE HIS RESIDENCE, MEANING THE RATIONALE FOR ANY POTENTIAL SEARCH OF THE APARTMENT DID NOT MEET THE "REASONABLY PRUDENT OFFICER" STANDARD ARTICULATED IN BUIE, NOR DID IT SATISFY THE HEIGHTENED STANDARD OF "EXIGENT CIRCUMSTANCES" NECESSARY TO JUSTIFY WARRANTLESS ENTRY INTO A HOME. SEE KENTUCKY V. KING, 563 U.S. 452, 462 (2011) (EMPHASIZING THAT WARRANT-LESS SEARCHES ARE PERMISSIBLE ONLY WHEN EXIGENT CIRCUMSTANCES RENDER THE INTRUSION ABSOLUTELY NECESSARY).

(C) ABSENCE OF CONSTITUTIONAL JUSTIFICATION FOR EXTENDING THE SEARCH BEYOND TSATENAWA'S VEHICLE.

THE FUNDAMENTAL PRINCIPAL IN FOURTH AMENDMENT JURISPRUDENCE IS THAT WARRANTLESS SEARCHES ARE PER SE UNREASONABLE UNLESS JUSTIFIED BY AN EXCEPTION, WHICH WAS CLEARLY ABSENT HERE. THE OFFICERS' DECISION TO ENTER AND SEARCH THE APARTMENT WITHOUT A WARRANT VIOLATES THE FOURTH AMENDMENT, AS THE DEFENDANT WAS ALREADY IN CUSTODY AND OUTSIDE HIS RESIDENCE. THE FIFTH CIRCUIT HAS MADE CLEAR THAT IN THE ABSENCE OF ANY REAL TIME THREAT TO OFFICER SAFETY OR REASONABLE SUSPICION THAT ANOTHER INDIVIDUAL MAY BE HIDING AND POSING A RISK, PROTECTIVE SWEEPS MUST REMAIN LIMITED AND NARROWLY FOCUSED. SEE UNITED STATES V. SILVA, 865 F.3d 238, 241 (5th CIR. 2017) (INVALIDATING A PROTECTIVE SWEEP THAT EXTENDED BEYOND IMMEDIATE AREAS FOR LACK OF SPECIFIC SAFETY THREATS)

(D) CONCLUSION: THE WARRANTLESS SEARCH OF THE APARTMENT LACKS JUSTIFICATIONS AND ~~XX~~ VIOLATES FOURTH AMENDMENT RIGHTS

IN SUM, THE PROTECTIVE SWEEP DOCTRINE DID NOT JUSTIFY THE OFFICERS' ENTRY AND SEARCH OF TSATENAWA'S APARTMENT. THE FOURTH AMENDMENTS CORE PROTECTIONS MANDATE A STRICT ADHERENCE TO WARRANT REQUIREMENTS, AND NONE OF THE RECOGNIZED EXCEPTIONS - SUCH AS EXIGENT CIRCUM-STANCES OR THE PRESENCE OF ARTICULABLE ~~XXXX~~ SPECIFIC THREATS - WERE PRESENT. THE DIST-RICT COURT'S DENIAL OF THE MOTION TO SUPPRESS THEREFORE STANDS IN DIRECT CONFLICT WITH ESTABLISHED CONSTITUTIONAL PRINCIPLES. CHIMEL V. CALIFORNIA, 395 U.S. 752 (1969). "WHEN AN ARREST IS MADE IT IS REASONABLE FOR THE ARRESTING OFFICER TO SEARCH THE PERSON ARRESTED IN ORDER TO REMOVE ANY WEAPONS THAT THE LATTER MIGHT SEEK TO USE IN ORDER TO RESIST ARREST OR EFFECT HIS ESCAPE." Id. "AND THE AREA WHICH AN ARRESTEE MIGHT REACH IN ORDER TO GRAB A WEAPON OR EVIDENTIARY ITEMS MUST, OF COURSE, BE GOVERNED BY A LIKE RULE." Id. "THERE IS NO COMPARABLE JUSTIFICATION, HOWEVER, FOR ROUTINELY SEARCHING ANY ROOM OTHER THAN IN WHICH AN ARREST OCCURS OR, FOR THAT MATTER, FOR SEARCHING THROUGH ALL THE DESK DRAWERS OR OTHER CLOSED OR CONCEALED AREA IN THAT ROOM ITSELF." Id. IF THE SEARCH HOWEVER, GOES FAR BEYOND THE ARRESTEES "PERSON AND THE AREA FROM WITHIN WHICH HE MIGHT HAVE OBTAINED EITHER A WEAPON OR SOMETHING THAT COULD HAVE BEEN USED AS EVIDENCE HIM... THERE WAS NO CONSTITUTIONAL JUSTIFICATION, IN THE ABSENCE OF A SEARCH WARRANT, FOR EXTENDING THE SEARCH BEYOND THAT AREA." UNITED STATES V. UNITED STATES DISTRICT, EASTERN ~~XXXXXXXXXXXXX~~ MICHIGAN, 407 U.S. 297, 313 (1972). A PROTECTIVE SWEEP WOULD BRING WITHIN POLICE PURVIEW VIRTUALLY ALL PERSONAL POSSESSIONS WITHIN THE HOUSE NOT HIDDEN FROM VIEW IN A SMALL ENCLOSED SPACE. POLICE OFFICERS SEARCHING FOR POTENTIAL AMBUSHERS MIGHT ENTER EVERY ROOM INCLUDING ~~XXX~~ BASEMENTS AND ATTICS; OPEN UP CLOSETS, LOCKERS, CHEST, WARDROBES, AND CARS; AND PEER UNDER BEDS AND BEHIND FURNITURE. THE OFFICERS WILL VIEW LETTERS, DOCUMENTS, AND PICTURES ON SHELVES, AND CLOTHING, MEDICINES, AND OTHER PARAPHERNALIA NOT CAREFULLY STORED IN DRESSER DRAWERS OR BATHROOM ~~XXX~~ CUPBOARDS. WHILE PERHAPS NOT A "FULL BLOWN" OR "TOP TO BOTTOM" SEARCH, ANTE AT 336, A PROTECTIVE SWEEP IS MUCH CLOSER TO IT THAN A "LIMITED PAT DOWN" FOR WEAPONS OR A "FRISK" OF

AN AUTOMOBILE, ANTE, AT 332) IN LIGHT OF THE SPECIAL SANCTITY OF A PRIVATE RESIDENCE AND THE HIGHLY INTRUSIVE NATURE OF A PROTECTIVE SWEEP, I FIRMLY BELIEVE THAT POLICE OFFICERS MUST HAVE PROBABLE CAUSE TO FEAR THAT THEIR PERSONAL SAFETY IS THREATENED BY A HIDDEN CONFEDERATE OF AN ARRESTEE BEFORE THEY MAY SWEEP THROUGH THE ENTIRE HOME. HOWEVER HIGH THE GOVERNMENTS INTEREST IN PROTECTING ITS OFFICERS, THERE MUST BE SOME ▨▨▨ LEGITIMATE PURPOSE FOR THAN ALLOW THE OFFICERS ▨▨▨ SAFELY TO REMAIN IN A PLACE WHERE THEY HAVE NO RIGHT OR REASON TO BE WILL OF NECESSITY, BE UNREASONABLE IN ALL BUT THE RAREST CIRCUMSTANCE. THE OFFICERS HAD NO REASON TO ENTER THE APARTMENT ONCE THE DEFENDANT WAS ALREADY ARRESTED IN HANDCUFFS IN BACK OF THE PATROL CAR IN THE PARKING LOT, AN EMPTY APARTMENT SERVES NO INVESTIGATIVE PURPOSE WHERE THE ENTIRE FOCUS OF THE INVESTIGATION WAS TO SERVE AN ARREST WARRANT, INASMUCH THE SWEEP SERVED NO PURPOSE OTHER THAN TO SECURE A HOME IN WHICH THE OFFICERS HAD NOTHING TO. IT WAS UNREASONABLE UNDER AND IN VIOLATION OF THE FOURTH AMENDMENT. UNITED STATES V. MCRALES 171 F.3d 978 (5th CIR. 1999) FACTORS THAT MAY BE CONSIDERED IN DETERMINING WHETHER EXIGENT CIRCUMSTANCES EXIST INCLUDE; "(1) THE DEGREE OF URGENCY INVOLVED AND THE AMOUNT OF TIME NECESSARY TO OBTAIN A WARRANT; (2) THE REASONABLE BELIEF THAT CONTRABAND IS ABOUT TO BE REMOVED; (3) THE POSSIBILITY OF DANGER TO THE POLICE OFFICERS GAURDING THE SITE OF CONTRABAND WHILE A SEARCH WARRANT IS SOUGHT; (4) INFORMATION THAT THE POSSESSORS OF THE CONTRABAND ARE AWARE THAT THE POLICE ARE ON THEIR TRAIL; AND (5) THE READY DESTRUCTIBILITY OF THE CONTRABAND AND THE KNOWLEDGE THAT EFFORTS TO DISPOSE OF NARCOTICS AND TO ESCAPE ARE CHARACTERISTIC BEHAVIOR OF PERSONS ENGAGED IN THE NARCOTICS TRAFFIC." Id. POSSESSING AN ARREST WARRANT OFFICERS WERE ENTITLED TO SEARCH ANYWHERE THE ACTUAL ARREST TOOK PLACE; BEING THE PARKING LOT NEAR THE DEFENDANTS VEHICLE. ONCE HE WAS FOUND, HOWEVER, THE SEARCH FOR HIM WAS OVER AND THERE WAS NO LONGER PARTICULAR JUSTIFICATION FOR ENTERING THE APARTMENT AND ANY ROOMS THAT HAD NOT YET BEEN SEARCED. THAT STRATEGY IS SENSIBLE IF ONE WISHES TO SEARCH THE APARTMENT, BUT IT IS SURPRISING CHOICE FOR AN OFFICER WORRIED ABOUT SAFETY, WHO NEED NOT ▨▨ RISK ENTERING THE APARTMENT AT ALL, ▨▨▨▨▨ ACCORDINGLY, TSATENAWA RESPECTFULLY REQUEST THAT THIS COURT REVERSE THE DENIAL OF HIS MOTION TO SUPPRESS AND HOLD THAT ANY EVIDENCE OBTAINED FROM THE UNLAWFUL SEARCH OF HIS RESIDENCE IS INADMISSIBLE, UPHOLDING THE FOURTH AMENDMENTS GUARANTEE AGAINST UNREASONABLE ▨▨▨ SEARCHES AND SEIZURES.

## IV. THE SEARCH WARRANT

A REVIEWING COURT LOOKS TO THE TOTALITY OF THE CIRCUMSTANCES TO DETERMINE IF PROBABLE CAUSE EXISTED TO ▨▨ SUPPORT ISSUANCE OF A WARRANT. ILLINOIS V. GATES, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed 2d 527 (1983) PROBABLE CAUSE EXISTS, IF UNDER THE TOTALITY OF THE CIRCUMSTANCES, "THERE IS A FAIR PROBABILITY THAT CONTRABAND OR EVIDENCE WILL BE FOUND IN A PARTICULAR PLACE." UNITED STATES V. NEWMAN, 472 F.3d 233, 237 (5th CIR. 2006). QUOTING UNITED STATES V. GORDON, 580 F.2d 827, 832-33 (5th CIR. 1978). "PROBABLE CAUSE REQUIRES THE EXISTENCE OF FACTS SUFFICIENT IN THEMSELVES TO WARRANT A MAN OF REASONABLE CAUTION IN THE BELIEF THAT AN OFFENSE HAS BEEN OR IS BEING COMMITTED AND THE PERSON TO BE ARRESTED (OR SEARCHED) COMMITTED IT." FROMAN, 355 AT 889.

IN THE CASE AT BAR, THE WARRANT AFFIDAVIT STATES SAPD WAS EXECUTING THE ABOVE INVALID ARREST WARRANT ON THE DEFENDANT AFTER THE DEFENDANT EXITED AN APARTMENT AND ENTERED A CAR IN A PARKING LOT AN UNKNOWN DISTANCE FROM THE APARTMENT. THE DEFENDANT FLED THE CAR AND WAS ARRESTED WITHIN A "SHORT DISTANCE." THE AFFIDAVIT DID NOT STATE THAT LAW ENFORCEMENT STATED ▨▨▨ WHILE TALKING AMONGST EACH OTHER, ▨▨▨ ST AMOUR BRUCE D BODY CAM AT 23:08, OFFICER BOURCIER SAYS "MY GUT TELLS ME THERE'S CONTRABAND INSIDE. MAYBE THERE ISN'T SHIT IN THERE- I DON'T KNOW. I ▨▨ THINK THERE'S SOMETHING IN THAT APARTMENT." THIS IS INSUFFICIENT TO PROVIDE PROBABLE CAUSE TO BELIEVE WEAPONS OR DRUGS WERE IN THE APARTMENT.

## V. 924 CONVICTION

COMES NOW ASIA TSATENAWA, THE DEFENDANT IN THE ABOVE STYLED AND NUMBERED CAUSE, AND SUBMITS THIS MOTION TO APPEAL A DECISION OF THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS, IN WHICH HE WAS CONVICTED, CHALLENGING THE FACTUAL BASES OF HIS CONVICTION, FOR A VIOLATION OF 18 U.S.C. 924(C)(1) USE OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME.

ON AUGUST 30, 2023 THE DEFENDANT, WHILE ACCEPTING HIS GUILTY PLEA ELOCUTED FOR THE RECORD THAT HE DID NOT USE OR POSSESS ANY FIREARM IN FURTHERANCE OF THE DRUG TRAFFICKING CRIME. THE DEFENDANT STATED THAT HE DID NOT HAVE ACTUAL POSSESSION BUT WAS GUILTY OF CONSTRUCTIVE POSSESSION. THE DEFENDANTS ATTORNEY MADE IT CLEAR TO THE COURT THAT THE DEFENDANT MERELY POSSESSED THE FIREARM BUT DID NOT USE IT IN FURTHERANCE. THE DEFENDANT WAS SPECIFIC WHEN DENYING CRITICAL ELEMENTS OF THE CHARGE AND EXPRESSED TO THE COURT THAT HE DID NOT KNOW WHAT TO DO AT THAT POINT BECAUSE HE WAS NOT TRYING TO ANTAGONIZE THE COURT. THE DEFENDANT STATED THAT HE WANTED TO PLEAD GUILTY TO HIS ROLE IN THE CRIME WHICH WAS CONSTRUCTIVE POSSESSION OF THE FIREARM: THE DISTRICT JUDGE PROCEEDED WITH GUILTY PLEA IN FAVOR OF THE PROSECUTION AND NOT WHAT THE DEFENDANT STATED HE WAS GUILTY OF. THE DEFENDANT WAS NEVER AFFORDED COLLOQUIES BY THE JUDGE.

THE DEFENDANTS CONVICTION UNDER 924(C)(1) SHOULD BE VACATED BECAUSE OF TSATENAWA'S ADMISSIONS REGARDING THE GUN DURING HIS PLEA ALLOCUTIONS. THEY INDICATE DENIAL OF TSATE-NAWA'S POSSESSION OF THE PISTOL IN FURTHERANCE OF DRUG TRAFFICKING, AND CANNOT BE ACCEPTED AS A GUILTY PLEA OF THAT CHARGE. COUNT FIVE OF THE DEFENDANTS STATES " TSATENAWA DID KNOWINGLY USE AND CARRY A FIREARM, TO WIT: A BERETTA, MODEL P.X4 STORM, 9mm PISTOL, AND A SMITH & WESSON, MODEL SW9VE, 9mm PISTOL, DURING AND IN RELATION TO, AND DID POSSESS SAID FIREARM IN FURTHERANCE OF, A DRUG TRAFFICKING CRIME. THE POSSESSION OF THE FIREARM EXISTED ONLY BY VIRTUE AND NOT ACTUAL POSSESSION. THE TWO CANNOT BE CONSTRUED. THE FIREARM WAS NOT AN OPERATIVE FACTOR IN RELATION TO THE PREDICATE OFFENSE AND DID NOT FURTHER, ADVANCE, OR HELP TO MOVE FORWARD ANY DRUG TRAFFICKING CRIME. ALTHOUGH THE DEFENDANT DID COMMIT A DRUG OFFENSE THERE WAS NO EVIDENCE TO INDICATE THAT THERE WAS TRAFFICKING OR A TRAFFICKING INVESTIGATION. THE DEFENDANTS GUILTY PLEA LACKED A FACTUAL BASES BECAUSE NEITHER "EVIDENCE" NOR THE "THE PLEA ALLOCUTION" SHOWED A CONNECTION BETWEEN THE FIREARMS IN THE CLOSET OR ANY DRUG TRAFFICKING. THE RECORD IS DEVOID OF ANY EVIDENCE THAT TSATENAWA CARRIED ANY WEAPON. TSATENAWA APPEARED TO UNDERSTAND POSSESSION UNRELATED TO HIS DRUG OFFENSE - CONSTRUCTIVE POSSESSION - AS THE PUNISHABLE OFFENSE.

IN UNITED STATES V. PALMER, 456 F.3d 484, (5th CIR. 2006) IT STATES THAT A DENIAL OF A CRITICAL ELEMENT OF A CHARGE CANNOT CONSTITUTE A GUILTY PLEA. SEE McCARTHY V. UNITED STATES, 394 U.S. 459, 461, 89 S.Ct. 1166, 22 L. Ed. 2d 418 (1969). THE SUBSTANCE OF A GUILTY PLEA HAS A SPECIAL CHARACTER. THE PLEA IS "MORE THAN A MERE CONFESSION; IT IS AN ADMISSION THAT THE DEFENDANT COMMITTED THE CHARGED OFFENSE." TAYLOR V. WHITLEY, 933 F.2d 325, 327 (5th CIR. 1991). THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT CONSIDERS PLEA COLLOQ-UIES "SOLEMN DECLARATION IN OPEN COURT" WHICH " CARRY A PRESUMPTION OF VERITY." UNITED STATES V. ADAM, 296 F.3d 327, 333 (5th CIR. 2002) (QUOTING UNITED STATES V. LAMPAZIANIE, 251 F.3d 519, 524 (5th CIR. 2001)) ITS WILLINGNESS TO ACCEPT PLEA AGREEMENTS AND COLLOQUIES AS THE FACTUAL BASES FOR CONVICTIONS DEMANDS A COROLLARY RESPECT FOR THE INTEGRITY OF THEIR CONTENTS. THE QUESTION IS NOT ONE OF THE DISTRICT COURTS BELIEF OF CREDIBILITY BUT THE PLEA WORDS THEMSELVES. A "PLAIN" ERROR IS ONE WHICH IS CLEAR UNDER CURRENT LAW. RUSSELL V. PLANO BANK & TRUSTEE, 130 F.3d 715, 722 (5th CIR. 1997). A DISTRICT COURTS ACCEPTANCE OF A DENIAL OF GUILT AS A GUILTY PLEA RUNS CONTRARY TO THE UNDERSTANDING THE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT DEMANDS IN DEFENDANTS OF THE CHARGES AGAINST THEM. "A DEFENDANT MUST POSSESS AN UNDERSTANDING OF THE LAW IN RELATION TO THE FACTS." UNITED STATES V. GUICHARD, 779 F.2d 1139, 1144 (5th CIR. 1986) FOR AN ERROR TO AFFECT SUBSTANTIAL RIGHTS," THE DEFENDANT MUST SHOW THE ERROR 'AFFECTED THE OUTCOME OF THE DISTRICT COURT PROCEEDINGS." HARRIS, 434 F.3d AT 774 (QUOTING MARES, 402 F.3d AT 521) THE DEFENDANT MUST SHOW A "PROBABILITY" SUFFICIENT TO UNDERMINE CONFIDENCE IN THE OUTCOME." THE ERROR HERE LED TO TSATENAWA'S CONVICTION ON A CHARGE OTHERWISE INAPPLICABLE, AND IT ADDED 60 MONTHS TO HIS SENTENCE, AFFECTING TSATENAWA'S SUBSTANCIAL RIGHTS. 18 USCS 924(C)(1)(A) PROVIDES

AN ADDITIONAL PENALTY FOR THE POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME. THE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT, EXAMINING THE STATUTORY LANGUAGE AND THE LEGISLATIVE HISTORY UNDERLYING IT, HAS CONCLUDED THAT, FOR 924 (c)(1)(A) PURPOSES, POSSESSION OF A FIREARM IS IN FURTHERANCE OF A DRUG TRAFFICKING CRIME WHEN IT FURTHER, ADVANCES, OR HELPS FORWARD THAT OFFENSE. "MERE PRESENCE" OF THE WEAPON, BY CONTRAST, IS NOT ENOUGH. APPLYING THE SUPREME COURT DECISION IN UNITED STATES V. BAILEY, 133 L.Ed. 2d 472, 116 S.Ct.501 (1995) THE INERT PRESENCE OF A FIREARM, WITHOUT MORE, IS NOT ENOUGH TO TRIGGER 924 (c)(1)... A DEFENDANT CANNOT BE CHARGED UNDER 924 (c)(1) MERELY FOR STORING A WEAPON NEAR DRUGS OR DRUG PROCEEDS. STORAGE OF A FIREARM, WITHOUT ITS MORE ACTIVE EMPLOYMENT, IS NOT REASONABLY DISTINGUISHABLE FROM POSSESSION. IN UNITED STATES V. DICKEY 102 F.3d 157; (5th CIR.1996) THE COURT VACATED HIS CONVICTIONS UNDER 924 (c)(1) BECAUSE THERE WAS NO EVIDENCE THAT THE FIREARMS FOUND IN THE DEFENDANTS HOME WERE USED IN THE DRUG TRADE. ACCORDING TO CASELAW PROVIDED AND THE EVIDENCE OF THE CASE, DEFENDANT TSATENAWA IS ACTUALLY AND FACTUALLY INNOCENT OF COUNT 5, 924 (c)(1). IN U.S. V. CABELLOS-TORRES 218 F.3d 409 (5th CIR.2000) THE FIFTH CIRCUIT OVERTURNED A CONVICTION FOR POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME UNDER 18 U.S.C. 924 (c)(1), HOLDING THAT THE EVIDENCE WAS INSUFFICIENT TO PROVE THE "IN FURTHERANCE" ELEMENT. THIS CASE ILLUSTRATES THE KEY DESTINCTION BETWEEN SIMPLE CONSTUCTIVE POSSESSION OF A FIREARM AND THE DEMAND 924 (c) CONVICTION.

   CONSTRUCTIVE POSSESSION: A DEFENDANT HAS "CONSTRUCTIVE POSSESSION" IF THEY HAVE "OWNERSHIP, DOMINION, OR CONTROL OVER THE PREMISES IN WHICH THE ITEM IS FOUND. THE IN FURTHERANCE ELEMENT REQUIRES THE GOVERNMENT TO PROVE THAT THE FIREARM DID MORE THAN JUST EXIST NEAR THE DRUGS. IT MUST HAVE HELPED "FURTHER, ADVANCE OR HELP" THE DRUG TRAFFICKING CRIME. THE DEFENDANTS ABSENCE IS A SIGNIFICANT FACTOR, AS IT MAKES IT MORE DIFFICULT TO PROVE THE FIREARM WAS ACTIVELY BEING USED TO ADVANCE CRIMINAL ACTIVITY. THE PROSECUTION PRESENT ADDITIONAL EVIDENCE, BEYOND MORE PROXIMITY, TO DEMONSTRATE THAT THE WEAPON HAD A STRATEGIC PURPOSE. FOR INSTANCE, BEING USED FOR PROTECTION, INTIMIDATION, OR GUARDING A DRUG STASH. THE CABELLOS-TORRES COURT FOUND THE EVIDENCE LACKING ON THIS POINT. WHILE CABELLOS-TORRES MIGHT HAVE HAD CONSTRUCTIVE POSSESSION OF THE FIREARM, THE GOVERNMENT COULD NOT SATISFY THE HIGHER EVIDENTIARY BURDEN TO PROVE THE "IN FURTHERANCE" ELEMENT. THE FIFTH CIRCUIT THEREFORE OVERTURNED THE 924 (c) CONVICTION. IN UNITED STATES V. AUGUST (5th CIR. 2025) THOUGH AUGUST CONVICTION WAS ULTIMATELY UPHELD THE CASE HIGHLIGHTS THE COMPLEX ISSUES SURROUNDING CONSTRUCTIVE POSSESSION AND SEARCHES WHEN A DEFENDANT IS ARRESTED OUTSIDE A RESIDENCE. THE CASE ILLUSTRATES THE CHALLENGE OF LINKING A DEFENDANT ARRESTED IN A CAR TO A WEAPON FOUND INSIDE A HOUSE VIA CONSTRUCTIVE POSSESSION. AUGUST WAS CHARGED UNDER 18 U.S.C. 922 (g) NOT 924 (c) (CARRYING OR USING A FIREARM DURING A CRIME OF VIOLENCE OR DRUG TRAFFICKING) THIS IS A CRUCIAL DESTINCTION. A 924 (c) CONVICTION REQUIRES THE GOVERNMENT TO PROVE THE FIREARM WAS USED "IN FURTHERANCE" OF A PREDICATE OFFENSE, WHICH IS A HIGHER STANDARD THAN MERE POSSESSION. IN THE AUGUST CASE, THE COURT DID NOT NEED TO MAKE THIS DESTINCTION. BUT IT WOULD HAVE BEEN CENTRAL TO THE ANALYSIS HAD HE BEEN CHARGED UNDER 924 (c). DUE TO THE FACTS THE DEFENDANT RESPECTFULLY REQUEST THE 924(c) CONVICTION BE VACATED AND REMANDED.

## CONCLUSION

   FOR THE ABOVE REASONS, TSATENAWA RESPECTFULLY CONTENDS THE DISTRICT COURT ERRED IN DENYING HIS MOTION TO SUPPRESS AND FINDING HIM GUILTY OF 18 U.S.C. 924 (c)(1), BOTH ON BASIS OF FOURTH AMENDMENT PRINCIPLES AND THE CONSTITUTIONAL STANDARDS GOVERNING WARRANTLESS SEARCHES AND SEIZURES.

   FIRST, WITH RESPECT TO THE ISSUES SURROUNDING THE INITIAL STOP, AND THE FRAMEWORK OF TERRY V. OHIO MAKING THE UNLAWFUL SEIZURE A CLEAR VIOLATION OF THE FOURTH AMENDMENT,

   SECOND, WITH RESPECT TO THE ISSUES SURROUNDING THE PROTECTIVE SWEEP, IT IS WELL SETTLED LAW THAT A WARRANTLESS ENTRY IS PRESUMPTIVELY INVALID, AND THE GOVERNMENT'S BURDEN TO SATISFY SUCH INTRUSIONS IS EXCEEDINGLY HIGH. HERE, THE ARREST OCCURED OUTSIDE TSATENAWA'S RESIDENCE, IN THE PARKING LOT, AND HE WAS SECURED AWAY FROM ANY REACH OF POTENTIAL WEAPONS OR EVIDENCE WITHIN HIS APARTMENT. THE SUBSEQUENT ENTRY INTO AND SEARCH OF HIS APARTMENT WENT WELL BEYOND THE PERMISSIBLE SCOPE OF A PROTECTIVE SWEEP. THE OFFICERS DID NOT DEMONSTRATE SPECIFIC, ARTICULABLE FACTS OR ANY IMMEDIATE SAFTY THREAT THAT WOULD JUSTIFY THIS EXTENDED SEARCH, MAKING IT UNREASONABLE AND VIOLATIVE OF THE FOURTH AMENDMENT

   THIRD, THE DISTRICT COURTS DENIAL FAILED TO CONSIDER THAT THERE WERE NO EXIGENT CIRCUMSTANCES

OR PARTICULARIZED FACTS THAT WOULD WARRANT BYPASSING THE REQUIREMENT FOR A SEARCH WARRANT. THE CIRCUMSTANCES SURROUNDING TSATENAWA'S ARREST DID NOT INDICATE ANY REAL OR PERCIEVED THREAT TO OFFICER SAFETY, NOR WERE THERE GROUNDS TO REASONABLY BELIEVE THAT ANYONE WITHIN THE APARTMENT POSED A DANGER OR THAT EVIDENCE OF THE OFFENSE WOULD BE FOUND. THE OFFICERS' ACTIONS THEREFORE, EXCEEDED THE NARROWLY TAILORED EXCEPTIONS TO THE FOURTH AMENDMENT'S WARRANT REQUIREMENT, RENDERING THE APARTMENT SEARCH UNCONSTITUTIONAL.

FOURTH, IN EVALUATING THE DISTRICT COURT'S DENIAL, THIS COURT SHOULD APPLY THE PRECEDENT FROM TERRY V. OHIO, MARYLAND V. BUIE, ARIZONA V. GANT, PAYTON V. NEW YORK, AND CHIMEL V. CALIFORNIA, AMONG OTHERS, WHICH COLLECTIVELY ESTABLISH THAT A PROTECTIVE SWEEP MUST REMAIN STRICTLY LIMITED TO AREAS OF IMMEDIATE CONCERN AND REQUIRE A SPECIFIC BASIS OF BELIEF IN POTENTIAL DANGER. UNDER THE FIFTH CIRCUITS ESTABLISHED JURISPRUDENCE, GENERALIZED SAFETY CONCERNS CAN NOT OVERRIDE FOURTH AMENDMENT PROTECTIONS, AND FACT-BASED CIRCUMSTANCES. WITHOUT SUCH JUSTIFICATION, THE SEARCH VIOLATED TSATENAWA'S CONSTITUTIONAL RIGHTS AND ANY EVIDENCE OBTAINED MUST BE SUPPRESSED.

FOR THESE REASONS, TSATENAWA RESPECTFULLY REQUEST THAT THIS COURT REVERSE THE DISTRICT COURTS DENIAL OF HIS MOTION TO SUPPRESS. BY GRANTING THIS RELIEF, THE COURT WILL AFFIRM THE CONSTITUTIONAL SAFEGAURDS EMBODIED IN THE FOURTH AMENDMENT AND ENSURE THAT WARRANTLESS SEARCHES REMAIN CONFINED TO THE LAW.

WHEREFORE, PREMISES CONSIDERED, TSATENAWA RESPECTFULLY REQUEST THAT THIS COURT REVERSE THE DISTRICT COURTS DENIAL OF HIS MOTION TO SUPPRESS, EXCLUDE ALL EVIDENCE OBTAINED FROM THE WARRANTLESS SEARCH OF HIS RESIDENCE, AND GRANT ALL SUCH RELIEF AS MAY BE JUST AND PROPER UNDER THE CIRCUMSTANCES.

RESPECTFULLY SUBMITTED

ASIA TSATENAWA
REG. No. 96844-280
THREE RIVERS F.C.I.
P.O. BOX 4200
THREE RIVERS TX. 78071
APPEARING PRO SE

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON DECEMBER 1, 2025, A TRUE AND CORRECT COPY OF THE ABOVE AND FOREGOING APPELANTS PRO SE PETITION FOR WRIT OF CERTICRARI IN CASE No. 5:21-CR-00073-1 WAS SENT VIA U.S. MAIL, TO SCOTT S. HARRIS, CLERK AT SUPREME COURT OF THE UNITED STATES, 1st STREET NE, WASHINGTON, DC 20543

Asia Tsatenawa

Case: 24-50034  Document: 127-1  Page: 14  Date Filed: 12/10/2025

Asia Tsatenawa #96844-280
Live Oak A-230
Three Rivers Federal Correctional Institution
P.O. Box 4200
Three Rivers Tx. 78071



"LEGAL MAIL"

⇔96844-280⇔
Fifth Circ U S Appeals Court
600 S Maestri PL
NEW Orleans, LA 70130-3408
United States